## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **ERIC ANTHONY NEPUTE**, <br> individually, and as <br> Owner of Quickwork LLC; and <br><br> **QUICKWORK LLC**, <br> a limited liability company, <br> also d/b/a WELLNESS WARRIOR, <br><br> Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER RELIEF** |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its Complaint alleges:

## NATURE OF THE CASE

1.      Defendants sell nutritional supplements containing Vitamin D and zinc, among other products. Recently, Defendants have been advertising their Vitamin D and zinc products—including "Wellness Warrior Vita D", "Wellness Warrior Zinc", and others—on social media and the internet as drugs capable of treating, or preventing COVID-19. Defendants even claim that their products are more effective than the available COVID-19 vaccines. Defendants lack valid factual or scientific bases for these claims, which are frequently accompanied by equally unsupported assertions regarding the applicable science. In short, Defendants are selling their

products by disseminating misinformation, exploiting fears in the midst of a pandemic, and posing a significant risk to public health and safety.

2.      Although the government has notified Defendants that their deceptive advertising and misrepresentations violate the Federal Trade Commission Act ("FTC Act"), as well as the COVID-19 Consumer Protection Act that was enacted in December 2020, Defendants have refused to stop. The United States therefore files this suit to seek preliminary and permanent injunctive relief, civil penalties, and other remedies in order to prevent the harms caused by Defendants' ongoing misrepresentations.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the law of the United States. It also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337(a) because it arises under an Act of Congress regulating interstate commerce or protecting trade and commerce against restraints and monopolies, and under 28 U.S.C. § 1345 because the United States is the Plaintiff.

4.      At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting interstate commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5.      The Court has personal jurisdiction over the defendants because all Defendants reside in this district and because the alleged acts giving rise to the claims occurred in this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1), and 15 U.S.C. § 53(b) because all Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

Pursuant to Local Rule 2.07, venue is proper in the Eastern Division because all defendants

reside in this Division and because the claim for relief arose in the Eastern Division.

## PARTIES

7.      Plaintiff is the United States of America.

8.      Defendant Eric Anthony Nepute ("Nepute") is a chiropractor and the owner of

Defendant Quickwork LLC ("Quickwork"). He resides in this District and, in connection with

the matters alleged herein, transacts or has transacted business in this District and throughout the

United States. Nepute is also the owner of Nepute Wellness Center, which is located in St. Louis,

Missouri. Until February 2021, Nepute maintained a Facebook page,

www.facebook.com/drericnepute, which designated him as a "public figure" and included a

"verified badge' indicating that Facebook has confirmed that the page belongs to him. From at

least 2015 until February 2021, he frequently posted videos on his Facebook page that featured

him talking about various health and wellness topics.

9.      Quickwork, formed by Nepute in January 2020, is a Missouri limited liability

company with its principal office or place of business at 1 First Missouri Center, Suite 214, St.

Louis, Missouri 63141. In June 2020, Quickwork began doing business under the trade name

"Wellness Warrior." Wellness Warrior maintains a Facebook page,

www.facebook.com/Wellnesswarrior.club, and several additional websites through which

interested customers can obtain Wellness Warrior products, including but not limited to

www.wellnesswarrior.deals, www.myfreezinc.com, www.freevitamindeal.com,

www.freevitamindeals.com, www.commonsensehealth.live, www.wellnesswarrior.org,

thewellnesswarrior.org, wellnesswarriorvitamins.com, nepute.chiroconnect.com,

teamwarrior.com, and neputewellnesscenter.com. Defendants may also maintain additional websites and may have previously maintained other websites that are now defunct.

10.     Both Nepute and Quickwork have transacted business in this District and throughout the United States. Since its formation, Quickwork has advertised, marketed, distributed, or sold products containing Vitamin D and zinc, including Wellness Warrior Vita D, Wellness Warrior Zinc, Wellness Warrior Immune Pack, Wellness Warrior Boost Pack, and Wellness Warrior Kids' Multivitamin (together, the "Wellness Warrior Products") to consumers throughout the United States. Nepute has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this complaint, including the advertising, marketing, distribution, and sale of Wellness Warrior Products.

## THE FTC ACT

11.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

12.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

13.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, each Wellness Warrior Product is a "drug" as defined in Section (c) of the FTC Act, 15 U.S.C. § 55(c).

## THE COVID-19 CONSUMER PROTECTION ACT

14.     On January 31, 2020, the Secretary of Health and Human Services declared that the 2019 novel coronavirus ("COVID-19") had caused a public health emergency. As of the date of the filing of this complaint, the public health emergency remains in effect.

15.     On December 27, 2020, the President signed the COVID-19 Consumer Protection Act.  The COVID-19 Consumer Protection Act makes it unlawful, for the duration of the ongoing novel coronavirus (COVID-19) public health emergency, for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), that is associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19. COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act ("COVID-19 Act"), Pub. L. No. 116-260, Title XIV, § 1401(b)(1).

16.     A violation of Section (b)(1) of the COVID-19 Consumer Protection Act is treated as a violation of a rule defining an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B).  COVID-19 Act, § 1401(c)(1).

17.     A violation of Section (b)(1) of the COVID-19 Consumer Protection Act made with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), is subject to monetary civil penalties of not more than $43,792 for each violation of the COVID-19 Consumer Protection Act after January 13, 2021, including penalties whose associated violation predated January 13, 2021. *See* 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Public Law 114-74, sec. 701, 129 Stat. 599 (2015); *see also* 16 C.F.R. § 1.98(d).

## DEFENDANTS' UNLAWFUL CONDUCT

**I.    Defendants Use Misrepresentations to Advertise Their Vitamin D and Zinc Products**

18.    In early April 2020, Defendants began advertising and selling Wellness Warrior Products to the public.

19.    No later than May 2020, Defendants began to advertise Wellness Warrior Products as protecting against, preventing, or treating COVID-19. Such advertising has consisted mainly of lengthy videos featuring monologues by Nepute and posted on Nepute's public figure Facebook page or the Wellness Warrior Facebook page, both of which were available to the public. Both of the Facebook pages and videos included hyperlinks that consumers could click on to visit one of Defendants' many websites and buy Wellness Warrior Products. Nepute's Facebook page also featured an "offers" section promising free bottles of Vitamin D and zinc.

20.    Defendants prepared dozens of videos that had an outsized impact, because they amplified their reach by posting and reposting them hundreds of times on Nepute's and the Wellness Warrior Facebook pages, as well as on the multiple Wellness Warrior websites. For example, an August 5, 2020 video, originally posted with the title "Eric Nepute's Video", was reposted on his various websites no fewer than 59 and possibly as many as 176 times. Defendants often posted videos multiple times a day, and some of the posts played the same video two to six consecutive times. Collectively, Defendants' marketing videos have been viewed millions of times.

21.    In February 2021, Facebook removed Nepute's public figure Facebook page from its website. In response, on February 19, 2021, Nepute created a new Facebook page, Common Sense Health Nation, https://www.facebook.com/commonsensehealthnation/. The Common Sense Health Nation page is also publicly available and includes links to Wellness Warrior websites where consumers can buy Wellness Warrior Products. Nepute has reposted to the

Common Sense Health Nation Facebook page videos that previously appeared on his public figure Facebook page. He has also continued to post lengthy videos advertising his products.

22.     In March 2021, Defendants created a new website, Common Sense Health Live, https://www.commonsensehealth.live/. The Common Sense Health Live website is publicly available to anyone who creates an account, which requires only a name and an email address. It includes links to Wellness Warrior websites where consumers can buy Wellness Warrior Products. Nepute has described the Common Sense Health Live website as "like Facebook, except for the censorship." The Common Sense Health Facebook page includes a link to the Common Sense Health Live website.

23.     Defendants have also marketed Vitamin D and zinc through posts on Nepute's Facebook page, the Wellness Warrior Facebook page, the Common Sense Health Nation Facebook page, the Common Sense Health Live website, and email advertisements sent to consumers who have purchased Wellness Warrior-branded products.

24.     Starting no later than June 2020, Defendants began advertising a protocol that customers should follow in order to protect against, prevent, or treat COVID-19. This protocol, which has varied over time, advises consumers to take, on a daily basis, substantial quantities of emulsified Vitamin D3 ("Vitamin D") and zinc, which are found in the Wellness Warrior Products.

**A.     Vitamin D:  The Truth v. Defendants' Misrepresentations**

25.     Wellness Warrior Vita D is an ingestible product sold in softgel capsule form. Each softgel of Wellness Warrior Vita D contains 5,000 IU Vitamin D3 (cholecalciferol) and unspecified amounts of "[o]rganic, extra virgin olive oil and softgel (bovine gelatin, vegetable glycerin, and purified water)." The Wellness Warrior Vita D product label directs users to "Take

one softgel daily, or as directed by your healthcare practitioner." Wellness Warrior Kids'

Multivitamin also contains Vitamin D.

### *No Studies Prove That Vitamin D Prevents or Treats COVID-19*

26.     There is no competent and reliable scientific evidence that Vitamin D protects

against, treats, or prevents COVID-19.

27.     There are no published studies that prove that Vitamin D protects against, treats,

or prevents COVID-19. The few completed randomized clinical trials investigating the efficacy

of Vitamin D in treating or preventing COVID-19 either (i) showed no benefits to patients taking

Vitamin D; or (ii) had flawed study designs and failed to conform to FDA guidelines for

scientific studies investigating the efficacy of treatments for COVID-19.

28.     Defendants have made numerous claims that explicitly or implicitly state that

daily doses of Vitamin D are effective in treating or preventing COVID-19. For example:

> a.   Vitamin D protects people from COVID-19: "So what can we do? ***You got to***
>
> ***protect yourself and protect the others*** [from COVID-19]. . . . How do we do
>
> that? Number one, ***we got to take the right vitamins*** . . . I talked about Vitamin D.
>
> It's so important to do that.  Go on that link below, click it.  . . . But ***get some D3***
>
> ***– emulsified D3***." Ex. A[1] at 21:11-23:4.
>
> b.   Vitamin D prevents COVID-19: "I'm going to tell you something ***that you need***
>
> ***to be doing at home from a preventative standpoint*** . . . . [It's] ***very, very, very***
>
> ***important [to take] [Vitamin] D as in dog, D3***." Ex. B at 6:12-9:9.

---

[1] Exhibits are identified in the Appendix to this Complaint.

c.  "Vitamin D3 will prevent [COVID-19] from infecting your body." Ex. C at 11:14-18.

d.  A daily dose of Vitamin D can effectively serve as a "***treatment for COVID-19***" by "boosting" the immune system. Ex. D at 11:2-11:17.

e.  A "high-dose" of Vitamin D would help to turn COVID-19 into a "mild illness." Ex. E at 14:14-15:1.

f.  "Vitamin D3 is ***the only chemical that's out there and that's shown to reduce the spread . . . to minimize the chances of getting infected***." Ex. F at 16:1-4.

g.  "***Vitamin D blocks the virus***. That's a fact.  Nobody can argue that." Ex. F at 16:21-22.

29.  Defendants lacked any reasonable bases for the foregoing statements, as well as many other similar statements they have made.

30.  Defendants have also made deceptive statements regarding the results of certain scientific studies to claim that Vitamin D was an effective preventative or treatment for COVID-19.

31.  Again, there are no randomized clinical trials that establish increased Vitamin D supplementation cause positive health outcomes in connection with COVID-19. Although there are observational studies that have explored correlations between low Vitamin D levels and an elevated risk of infection or severe illness from the coronavirus, such observational studies are not designed, and cannot be used, to prove causation, *i.e.*, to establish that Vitamin D supplementation cause positive health outcomes in connection with COVID-19.

32.     Defendants ignore these studies' conclusions and limitations and instead rely on them for the basis for specific, deceptive claims about the quantitative efficacy of Vitamin D in treating and/or preventing COVID-19. For example, Nepute made the following statements:

    a.  "Journal of Nature Magazine 2020, in April and May, showed that if you have the adequate amounts of Vitamin D3 in your system, then you have a 77 percent less chance of getting infected in the first place. Vitamin D3 equals 77 percent less chance of getting infected in the first place." Ex. G at 13:23-14:5.

    b.  "Boston University's Dr. Michael Holick found  . . . that people who have enough [V]itamin D are 54 percent less likely to catch coronavirus in the first place." Ex. H.

    c.  According to the work performed by Dr. Holick, "COVID-19 Patients who get enough [V]itamin D are 52% less likely to die" and "are at a 52 percent lower risk of dying of COVID-19 than people who are deficient."  Ex. H.

    d.   "[Vitamin] D3 has shown, in many studies, to cut the infection rate by sometimes up to 52 percent." Ex. E at 10:15-10:17.

33.     In fact, the cited studies do not support Defendants' claims. Both of Dr. Holick's studies explored correlations between low Vitamin D levels and adverse COVID-19 outcomes. One study concluded only that its findings "provide further rationale to explore" the putative therapeutic benefit of Vitamin D and acknowledged that the implications could be significant only "[i]f controlled trials find this relationship to be causative"—*i.e.*, only if controlled trials found that low Vitamin D levels caused adverse COVID-19 outcomes. Dr. Holick's other study observed that, because of the study design, the authors could not "explain the cause and effect relationship of Vitamin D sufficiency and the reduced risk of severity from a COVID-19

infection," concluding that "large-scale studies and randomized clinical trials (RCTs)" were necessary to evaluate any interaction between them.

34.     To support the claim that people with adequate Vitamin D have a 77 percent less chance of getting infected in the first place, Defendants may be relying on a September 2020 article in the Journal of the American Medical Association (JAMA). To the extent that Defendants are relying on this study, they are mischaracterizing its results. This study expressly stated that: "Since [V]itamin D deficiency may be increased by many factors that could be associated with COVID-19 risk, including age, obesity, diabetes, and chronic illness more generally, observed associations of [V]itamin D with outcomes in almost any observational study may fail to accurately reflect any potential causal effects of [V]itamin D on outcomes."

### Defendants Have No Bases for Their Claim That Vitamin D Prevents or Treats COVID-19 Through Particular Biological Mechanisms

35.     In addition to their claims regarding Vitamin D's efficacy, Defendants have, without any reasonable bases, made misrepresentations about the specific biological mechanisms through which Vitamin D supposedly helps prevent or treat COVID-19.

36.     SARS-CoV-2, the virus that causes COVID-19, infiltrates the cells by using a "spike protein" on the surface of its coat to bind to the "ACE2 receptor", a protein that naturally appears on the walls of human cells. This binding allows the virus's genetic material (its RNA) to infiltrate the cell, hijack its machinery, and replicate itself. If the virus cannot bind to the ACE2 receptor, however, it cannot invade the cell, cannot replicate, and cannot cause harm. In fact, the recently approved vaccines work by teaching the body's immune system to recognize the spike protein as a foreign invader and act to neutralize it.

11

37.     There are no published scientific studies establishing that Vitamin D interferes with the SARS-CoV-2 virus's ability to bind with the ACE2 receptor when Vitamin D is introduced into the human body.

38.     Nonetheless, without any competent and reliable scientific evidence, Defendants have claimed, for example, that Vitamin D "blocks the spike protein from the ACE-2 receptor," thereby preventing people from "get[ting] infected in the first place." Ex. G at 24:20-22. Defendants have further claimed that, through this mechanism, Vitamin D purportedly "stops the virus from attaching" to human cells. Ex. G at 17:23-18:2.

39.     Defendants have also asserted that Vitamin D prevents "cytokine storms," which may be provoked in certain patients by the virus that causes COVID-19. A cytokine storm is an overactive, harm-causing response by the human immune system to the infection. Specifically, when the body is infected, it releases cytokines to signal the immune system to begin its defense work. Excessive quantities of cytokines, however, can cause the immune system to attack healthy tissue, resulting in severe injury or death.

40.     There are no published scientific studies demonstrating that Vitamin D can prevent a cytokine storm in COVID-19 patients.

41.     Again, without any competent and reliable scientific evidence, Defendants have claimed that Vitamin D can prevent cytokine storms from occurring, thereby reducing the severity of a COVID-19 infection: "If you have enough [V]itamin D3 in your system, you don't have a cytokine storm." Ex. G at 35:15-25.

***Defendants Deceptively Imply That Scientific Research Supports Their Claims***

42.     To convey the impression that there is scientific evidence to support their deceptive claims, Defendants prepared and publicly posted on one of the Wellness Warrior

Product websites a "Research Page" that contained hyperlinks to some of their videos, as well as various articles discussing Vitamin D and COVID-19. This Research Page linked to retrospective observational studies, news articles, blog posts, and PowerPoint presentations, none of which constituted competent or reliable scientific evidence that Vitamin D treats or prevents COVID-19.

43.     Upon information and belief, Defendants actually knew, or had knowledge fairly implied on the basis of objective circumstances, that the materials cited on the Research Page did not demonstrate that Vitamin D protects against, treats, or prevents COVID-19.

**B.     Zinc:  The Truth v. Defendants' Misrepresentations**

44.     Wellness Warrior Zinc is an ingestible product sold in tablet form. Each tablet contains 25 milligrams of zinc (as zinc gluconate) and unspecified amounts of microcrystalline cellulose, dicalcium phosphate, stearic acid, colloidal silicon dioxide, magnesium stearate, and croscarmellose sodium. The Wellness Warrior Zinc product label directs users to "Take one tablet daily, or as directed by your healthcare practitioner." Wellness Warrior Kids' Multivitamin, Wellness Warrior Boost Pack, and Wellness Warrior Immune Pack also contain zinc.

### *No Studies Prove That Zinc Prevents or Treats COVID-19*

45.     There is no competent and reliable scientific evidence that zinc protects against, treats, or prevents COVID-19. There are no published studies that prove that zinc protects against, treats, or prevents COVID-19.  In fact, the sole completed randomized clinical trial investigating the efficacy of zinc as a preventative or treatment for COVID-19 found no therapeutic benefit.

46.     Notwithstanding this absence of supporting scientific evidence, Defendants have disseminated advertisements representing that zinc treats or prevents COVID-19. Examples of Defendants' statements include:

a.  Zinc is an effective treatment for COVID-19 because it "doesn't allow the virus to continue to proliferate" inside the body and that it "stops the cells from regenerating viruses," which in turns "stops viral proliferation." Ex. F at 17:4-5; Ex. D at 11:24-12:19; Ex. E at 9:2-9:12.

b.  Zinc should be taken as a prophylactic: "We should be preventatively loading up on zinc . . . ."  Ex. B at 6:24-6:25, 7:21-8:9.

c.  "Tak[ing] zinc every day" serves as a treatment for COVID-19 by "boosting the immune system." Ex. D at 11:2-11:13. "Washington University . . . say[s] boosting the immune system is the answer. You're damn right it is . . . I'm going to tell you how and I'm going to give you a solution . . . buy a damn bottle of zinc." Ex. D at 11:24-12:19.

47.     Although Defendants claim to have identified "over fifteen" studies relating to Zinc, they have not published a "research page" analogous to the page published relating to Vitamin D. The government has been able to find only two studies identified by Defendants as support for their claims. Neither study even relates to COVID-19, much less establishes that zinc treats or prevents COVID-19: one is an *in vitro* (petri dish) study that was not conducted on the virus that causes COVID-19, and the other is a discussion of observational studies done investigating the relationship between zinc and pneumonia, not COVID-19. Indeed, both studies were conducted years before the pandemic began.

48.     Nonetheless, Defendants deceptively claim that the *in vitro* study shows precisely how zinc purportedly prevents COVID-19: An "[i]ncrease in intercellular zinc concentrations . . . can effectively impair the replication of RNA viruses including . . . SARS coronavirus. . . .  Well, this is SARS CoV-2 is what this is." Ex. I at 14:14-14:22.

**C.     The Vaccines:  The Truth v. Defendants' Misrepresentations**

49.     To induce customers to purchase their Vitamin D and zinc products, Defendants have also disseminated advertisements that claim, without any reasonable basis, that Wellness Warrior Products were more effective at preventing or treating COVID-19 than the available vaccines or other available treatments.

50.     It is well known that several vaccines have been authorized for emergency use by the United States Food and Drug Administration because they have been proven effective to prevent infection by COVID-19 and to reduce the severity of such infections. These vaccines received emergency use authorization only after their sponsors conducted large, double-blind, randomized clinical trials that demonstrated their efficacy.

51.     Unlike the rigorous clinical trial process that led to these vaccines, no such studies have been performed for Vitamin D and zinc, either administered independently or administered together. There is no competent and reliable scientific evidence showing that Vitamin D or zinc, administered independently or in combination, is a better option for prevention of treatment of COVID-19 than the available vaccines.

52.     However, Defendants have explicitly and implicitly represented that Vitamin D and zinc provide equal or better protection against COVID-19 than do currently available vaccines.

15

53.     For example, Defendants have claimed that "Vitamin D3 is the only chemical that's out there and that's shown to reduce the spread" of COVID-19. Ex. F at 16:1-4.

54.     According to Defendants, "[t]here hasn't been one damn thing else that's shown the benefits of . . . preventing COVID-19 except for [V]itamin D3." Ex. C at 10:9-13.

55.     Defendants have also advertised, without a reasonable basis, that "vaccines do not stop the spread of the virus." Ex. G at 13:13-15.

56.     Defendants also assert that: "it's been proven by NIH, World Health Organization, CDC, the list goes on and on, that "vaccines do not stop the spread of the virus." Ex. G at 13:13-15. According to Defendants, "the NIH, the World Health Organization, the CDC . . . [have] clearly said this vaccine is not going to stop the spread of infection. Ex. J at 12:1-18. However, the National Institutes of Health ("NIH"), the World Health Organization ("WHO"), the Federal Centers for Disease Control ("CDC"), and the Surgeon General have never stated, much less proven, that vaccines do not stop the spread of COVID-19.

57.     Defendants have further stated, without any reasonable basis, that Nepute's protocol, including Vitamin D and zinc, "actually works better than . . . any vaccine," and, therefore, customers did not "really need a vaccine." Ex. F at 17:6-8.

58.     Defendants have provided no scientific proof or studies to support these claims, just as they have provided no scientific proof or studies to back up their advertising about the efficacy of Vitamin D and zinc for preventing and treating COVID-19.

## II.     Defendants' Deceptive Marketing Has Already Misled Reasonable Consumers

### A.     Defendants Have Been Selling Their Vitamin D and Zinc Products for Months

59.     Each bottle of Wellness Warrior Vita D contains 30 softgels, which Defendants have sold for $24.95 per bottle plus $9.95 shipping and handling. Defendants also have offered

16

several Vitamin D subscription plans, in most instances including one free bottle of Vitamin D with subscription enrollment.

60.     Defendants first featured Vitamin D in an April 2020 video on the Nepute Facebook page and began promoting their free Vitamin D bottle offer in July 2020, again through the Nepute Facebook page videos.

61.     Each bottle of Wellness Warrior Zinc contains 60 tablets. Defendants have advertised an offer for a free bottle of zinc without a subscription and charge consumers $9.95 for shipping and handling. They also have advertised various subscription plans for zinc, which do not include a free bottle of the product. Subscription plans start at $24 per month for one bottle of zinc.

62.     Defendants' advertising has proven to be popular. Together, the Wellness Warrior and Common Sense Health Nation Facebook pages have over 100,000 followers.

63.     Upon information and belief, Defendants have earned a substantial amount of money from selling these and other Wellness Warrior Products.

**B.    Consumers Believe Defendants' Deceptive Advertising**

64.     Dozens of posts on Defendants' own Facebook pages show that consumers have been buying Defendants' Vitamin D and zinc products with the belief that they prevent COVID-19 better than available vaccines. Nepute's videos have generated millions of consumer views. Examples of recent customer comments on the Wellness Warrior Facebook page, http://www.facebook.com/Wellnesswarrior.club/, include:

    a.    February 27, 2021 at 2:44 am, K.F.:  "Been taking Wellness Warrior duo at least 7 months. No sickness here and living life without fear. Thank you so much Dr. Eric.  Keep getting the truth out."

17

    b.   March 14, 2021 at 11:26 pm, L.S.: "I take 10,000 IU [of Vitamin D] each day . . . . I take 25 mg of zinc and upped that to 50 mg a day as my husband got covid and I got him to take it as well. But he didn't take it before he got sick. I never got sick living in the same house and breathing the same air. . . . NO gene therapy/fake vaccine."

    c.   March 22, 2021 at 1:47 pm, C.J.V.: "Just Ordered mine today. Dr. Eric thank you so much. I have been following you for a while and really appreciate all you do to inform us all."

**C.    Defendants' Deceptive Health Claims About Their Products are Material**

65.    Defendants deceptively advertise their Vitamin D and zinc products as treating or preventing COVID-19, and as superior to the current vaccines.

66.    Such baseless claims of health benefits are material because, as indicated by the sample comments above, consumers believe Defendants' claims, and appear to be taking Defendants' products in lieu of other measures to prevent COVID-19, such as getting vaccinated, social distancing, and wearing a mask.

**III.    Defendants' Ongoing Conduct Threatens Imminent Harm to Consumers**

67.    Defendants' advertising of their Vitamin D and zinc products pose significant risks to consumers who may believe or rely on these misrepresentations and deceptive claims. As noted above, Nepute's videos alone have been viewed millions of times, and Defendants amplify their deceptive advertising by posting videos and comments on multiple websites.

68.    Ingesting massive amounts of Vitamin D and zinc, rather than foregoing the social distancing, masks, and vaccination recommended by public health experts, places consumers who rely on Defendants' claims at risk of contracting COVID-19.

**IV.     Defendants Refuse To Cease Their Deceptive Advertising Despite Being on Notice**

69.     In May 2020, FTC staff sent Defendant Nepute a letter warning that his COVID-19 efficacy claims for another Vitamin C-based product were unsubstantiated and must cease. Ex. K. The warning letter also advised him to review claims for all his other products and to cease any claims not supported by competent and reliable scientific evidence. Defendant Nepute subsequently confirmed to FTC staff that he received that letter. Upon information and belief, Defendants seem to have dialed back some of their Vitamin C-related claims, but have ramped up their unsubstantiated claims regarding Vitamin D and zinc.

70.     On March 30, 2021, FTC staff sent counsel for Defendant Nepute a letter notifying him about the passage of the COVID-19 Consumer Protection Act. Ex. L-M.

71.     Based on the facts and violations of law alleged in this Complaint, the United States has reason to believe that Defendants are violating or are about to violate the FTC Act and the COVID-19 Consumer Protection Act.

## COUNT 1

### FTC Act Section 5(a) and Section 12 Violations

72.     Paragraphs 1 through 71 are incorporated as if set forth herein.

73.     On numerous occasions in connection with the advertising, promotion, offering for sale, or sale of Wellness Warrior Products, including Defendants' claims set forth in Paragraphs 25-58, Defendants have represented, directly or indirectly, expressly or by implication, that Vitamin D and zinc, and by extension Wellness Warrior Products, treat or prevent COVID-19.

74.     On numerous occasions in connection with the advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have represented, directly or indirectly, expressly or by implication, that Vitamin D and zinc, including Wellness Warrior

19

Products, provide equal or better protection against COVID-19 than do currently available vaccines.

75.     In support of their advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have made numerous additional representations, directly or indirectly, expressly or by implication, including:

    a.   That Vitamin D and zinc, including Wellness Warrior Products, are scientifically proven to treat or prevent COVID-19;

    b.   That there are studies that show that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, have a 52 percent lower risk of dying of COVID-19 than people who are deficient;

    c.   That scientific research concluded that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, are 54 percent less likely to catch COVID-19;

    d.   That scientific publications indicate that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, are 77 percent less likely to catch COVID-19;

    e.   That Vitamin D, including Wellness Warrior products containing Vitamin D, can block the COVID-19 spike protein from binding to the ACE2 receptor, thereby preventing infection; and

    f.   That Vitamin D, including Wellness Warrior products containing Vitamin D, can prevent cytokine storm.

76.     Defendants' representations are false or misleading, or Defendants lacked a reasonable basis to make them.

77.     Defendants' representations are material to consumers' decisions.

78.     Upon information and belief, Defendants continue to make similar misrepresentations regarding the efficacy of Vitamin D and zinc, including by extension Wellness Warrior Products, for treating or preventing COVID-19.

79.     Defendants' false, misleading, or unsubstantiated representations regarding Vitamin D and zinc are deceptive acts or practices and false advertisements that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

## COUNT 2

### COVID-19 Consumer Protection Act Violations

80.     Paragraphs 1 through 71 are incorporated as if set forth herein.

81.     In numerous instances since December 27, 2020, Defendants have made false, misleading, or unsubstantiated representations that Vitamin D and zinc, including Wellness Warrior Products, are effective for the treatment, cure, prevention, or mitigation of COVID-19.

82.     In numerous instances since December 27, 2020, Defendants have made false, misleading, or unsubstantiated representations that Vitamin D and zinc, including Wellness Warrior Products, provide equal or better protection against COVID-19 than do currently available vaccines.

83.     In support of their advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have made numerous additional representations, directly or indirectly, expressly or by implication, relating to a causal connection between Vitamin D and zinc and the treatment, cure, prevention, mitigation, diagnosis, contraction, and lethality of COVID-19, including:

a. That Vitamin D and zinc, including Wellness Warrior Products, are scientifically proven to treat or prevent COVID-19;

b. That there are studies that show that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, have a 52 percent lower risk of dying of COVID-19 than people who are deficient;

c. That scientific research concluded that people who have enough Vitamin D, Wellness Warrior products containing Vitamin D, are 54 percent less likely to catch COVID-19;

d. That scientific publications indicate that people who have enough Vitamin D, Wellness Warrior products containing Vitamin D, are 77 percent less likely to catch COVID-19;

e. That Vitamin D, including Wellness Warrior products containing Vitamin D, can block the COVID-19 spike protein from binding to the ACE2 receptor, thereby preventing infection; and

f. That Vitamin D, including Wellness Warrior products containing Vitamin D, can prevent cytokine storm.

84. Defendants' representations are false or misleading, or Defendants lacked a reasonable basis to make them.

85. Defendants' representations are material to consumers' decisions.

86. Defendants have been aware of the COVID-19 Consumer Protection Act since March 31, 2021 at the latest.

87.     Upon information and belief, Defendants continue to make similar misrepresentations regarding the efficacy of Vitamin D and zinc for treating or preventing COVID-19.

88.     These ongoing false, misleading, or unsubstantiated representations constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

89.     Therefore, these representations also constitute deceptive acts or practices in violation of Section 1401(b)(1) of the COVID-19 Consumer Protection Act.

90.     Each dissemination of an advertisement that makes deceptive COVID-19 related representations is a separate violation of the COVID-19 Consumer Protection Act subject to civil penalties.

## CONSUMER INJURY

91.     Consumers are suffering, have suffered, and likely will continue to suffer substantial harm as a result of Defendants' violations of the FTC Act and the COVID-19 Consumer Protection Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, pursuant to Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a)(1) and 19 of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1) and 57b, Section 1401(c)(2)(A) of the COVID-19 Act, and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction;

B.    Enter a permanent injunction to prevent future violations of the FTC Act and the COVID-19 Consumer Protection Act by the Defendants;

C.    Award such relief as the Court finds necessary to address Defendants' violations of the FTC Act and the COVID-19 Consumer Protection Act, including rescission or reformation of contracts, the refund of monies paid, restitution, the disgorgement of ill-gotten monies, and other relief necessary to redress injury to consumers resulting from Defendants' violations;

D.    Award Plaintiff monetary civil penalties from Defendants for each violation of the COVID-19 Consumer Protection Act alleged in this Complaint; and

E.    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: April 15, 2021

FOR THE UNITED STATES OF AMERICA:

SAYLER FLEMING
United States Attorney
Eastern District of Missouri

BRIAN M. BOYNTON
Acting Assistant Attorney General

SUZANNE J. MOORE  MO#45321
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Tel: (314) 539-2200

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

Fax: (314) 539-2196
Email: suzanne.moore@usdoj.gov

LISA K. HSIAO
Assistant Director
Consumer Protection Branch


  /s/ Ben Cornfeld
BEN CORNFELD 1048311(DC)
BRANDON ROBERS 1112150055(MD)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-598-7276 (Cornfeld)
Tel: 202-305-2023 (Robers)
Fax: 202-514-8742
Benjamin.A.Cornfeld2@usdoj.gov
Brandon.Robers@usdoj.gov

Of Counsel:
KRISTIN M. WILLIAMS
MARY L. JOHNSON
BRADY C. WILLIAMS
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mailstop CC-10528
Washington, D.C. 20850
Tel: 202-326-2619 (K. Williams)
Tel: 202-326-3115 (Johnson)
Tel: 202-326-3517 (B. Williams)
Fax: 202-326-3259
Kwilliams2@ftc.gov
Mjohnson1@ftc.gov
Bwilliams2@ftc.gov

**EXHIBIT APPENDIX**

| Exhibit | Document |
|---------|----------|
| A | Certified transcript of video[2] titled "C O V I D, Vitamins & Supplements", dated July 31, 2020 at 5:03 A.M. and captured from Nepute's public figure Facebook page on August 4, 2020. |
| B | Certified transcript of video titled "Please Pay Attention" dated July 23, 2020 at 2:30 P.M. and captured from Nepute's public figure Facebook page on August 11, 2020. |
| C | Certified transcript of video titled "WW WTF Internment Camps", dated January 16, 2021 at 11:30 A.M. and captured from the WellnessWarrior.club Facebook page on February 23, 2021. |
| D | Certified transcript of video titled "This is Going to Cause Issues", dated August 11, 2020 at 10:47 A.M. and captured from Nepute's public figure Facebook page on August 24, 2020. |
| E | Certified transcript of video titled "Common sense Breaking news . . . POTUS is using the Wellness Warrior protocol", dated October 3, 2020 at 5:52 A.M. and captured from Nepute's public figure Facebook page on October 5, 2020. |
| F | Certified transcript of video titled "WW Cut Me Off Again" dated January 16, 2021 at 6:18 A.M. and captured from the WellnessWarrior.club Facebook on February 23, 2021. |
| G | Certified transcript of video titled "WW Wuhan Exposed", dated January 17, 2021 at 2:03 P.M. and captured from the WellnessWarrior.club Facebook on February 23, 2021. |
| H | Email dated September 26, 2020 at 6:10 P.M. entitled "52% Less Likely To Die" |
| I | Certified transcript of video titled "Zinc Zinc Zinc" dated August 4, 2020 at 3:42 P.M. and captured from Nepute's public figure Facebook page on August 11, 2020. |
| J | Certified transcript of video titled "WW Family Ready", dated January 16, 2021 at 5:47 A.M. and captured from the WellnessWarrior.club Facebook on February 23, 2021. |

---

[2] Plaintiff will provide to Defendants copies of the videos whose transcripts are attached to the Complaint, as well as to the Court at the Court's request.

| K | Letter from Richard Quaresima, Acting Associate Director, Division of Advertising Practices, Federal Trade Commission, to Nepute, dated May 21, 2020. |
|---|---|
| L | Letter from Serena Viswanathan, Associate Director, Division of Advertising Practices, Federal Trade Commission, to Emily Park, Esq., Husch Blackwell LLP, dated March 30, 2021. |
| M | Attachment to Letter from Serena Viswanathan, Associate Director, Division of Advertising Practices, Federal Trade Commission, to Emily Park, Esq., Husch Blackwell LLP, dated March 30, 2021. |