# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **ERIC ANTHONY NEPUTE**, <br> individually, and as <br> Owner of Quickwork LLC; and <br><br> **QUICKWORK LLC**, <br> a limited liability company, <br> also d/b/a WELLNESS WARRIOR, <br><br> Defendants. | Case No.: 4:21-cv-00437 <br><br> **UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  LEGAL BACKGROUND .................................................................................................. 2

III. FACTUAL BACKGROUND ............................................................................................. 3

   A.   Defendants ................................................................................................................ 3

   B.   Defendants Have Deceptively Marketed Their Vitamin D and Zinc Products for the Prevention and Treatment of COVID-19 .................................................................. 3

   C.   Defendants' Deceptive Advertising Claims .............................................................. 4

      1.   Claims About Vitamin D .................................................................................... 4

      2.   Claims About Zinc .............................................................................................. 5

      3.   Vaccine-Related Claims ...................................................................................... 5

IV.  LEGAL STANDARD ......................................................................................................... 7

V.   ARGUMENT ...................................................................................................................... 8

   A.   The Government is Likely to Succeed on the Merits ............................................... 9

      1.   Defendants' Deceptive Advertising Is Not Based on Competent or Reliable Scientific Evidence .............................................................................................. 9

      2.   Defendants' Representations Are Likely to Mislead Consumers Acting Reasonably Under the Circumstances ............................................................... 11

      3.   Defendants' Representations Are Material ....................................................... 13

   B.   The Equities Support Granting a Preliminary Injunction ....................................... 13

   C.   The Scope of the Injunction Is Necessary and Appropriate ................................... 14

VI.  CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Cases

*Fanning v. FTC*, 821 F.3d 164 (1st Cir. 2016) ............................................................................... 13
*FTC v. BF Labs, Inc*., No. 4:14-CV-00815, 2014 WL 7238080 (W.D. Mo. Dec. 12, 2014) ......... 7
*FTC v. Business Card Experts, Inc*., No. 06-4671, 2007 WL 1266636 (D. Minn. Apr. 27, 2007) 7
*FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) .......................................... 12
*FTC v. Freeman Hosp.,* 69 F.3d 260 (8th Cir.1995) ................................................................ 7, 14
*FTC v. Garvey*, 383 F.3d 891 (9th Cir. 2004) ............................................................................. 12
*FTC v. Leadclick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) ..................................................... 2, 9
*FTC v. Nat'l Comm. on Egg Nutrition*, 517 F.2d 485 (7th Cir. 1975) .......................................... 8
*FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), *aff'd* 356 F. App'x
  358 (11th Cir. 2009) ............................................................................................... 9, 11, 12
*FTC v. Next-Gen, Inc.*, 2018 WL 5310414 (W.D. Mo. Sept. 10, 2018) ........................................ 9
*FTC v. Pantron I Corp*., 33 F.3d 1088 (9th Cir. 1994) ..................................................... 9, 10, 11, 12
*FTC v. Sec. Rare Coin & Bullion Corp*., 931 F.2d 1312 (8th Cir. 1991) ................................ 7, 15
*FTC v. Simeon Mgmt. Corp*, 532 F.2d 708 (9th Cir. 1976) ........................................................... 8
*FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003) ........................................................................ 9
*FTC v. Weyerhaeuser Co*., 665 F.2d 1072 (D.C. Cir. 1981) ....................................................... 14
*FTC v. World Wide Factors, Ltd*., 882 F.2d 344 (9th Cir. 1989) ............................................ 7, 14
*FTC* v. *Golden Sunrise Nutraceutical, Inc.*, No. 1:20-cv-1060-DAD-SKO, 2020 WL 4501968
  (E.D. Cal. Aug. 5, 2020 ................................................................................................ passim
*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) ..................................................................... 9, 13
*Harris v. Blue Cross Blue Shield of Mo.*, 995 F.2d 877 (8th Cir. 1993) ..................................... 14
*Home Instead, Inc. v. Florance*, 721 F.3d 494 (8th Cir. 2013) ..................................................... 8
*Novartis v. FTC*, 223 F.3d 783 (D.C. Cir. 2000*)* ........................................................................ 13
*POM Wonderful, LLC v. FTC*, 777 F.3d 478 (D.C. Cir. 2015) ....................................... 9, 11, 12
*FTC v. Real Wealth, Inc*., No. 10–CV–0060–FJG, 2011 WL 1930401 (W.D. Mo. May 17, 2011)
  ................................................................................................................................. 9, 11, 13
*Removatron Intern. Corp. v. FTC*, 884 F.2d 1489 (1st Cir. 1989) .............................................. 12

Statutes

15 U.S.C. § 45 ............................................................................................................................ 2, 7
15 U.S.C. § 52 ................................................................................................................................ 2
15 U.S.C. § 53 ........................................................................................................................ 1, 7, 8
15 U.S.C. § 55 ................................................................................................................................ 2
15 U.S.C. § 57a .............................................................................................................................. 3
Pub. L. No. 116-260 ....................................................................................................................... 3

Rules

Fed. R. Civ. P. 65 ........................................................................................................................... 8

I. **INTRODUCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Section 13 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53, the government seeks a preliminary injunction to stop Defendants from making deceptive and misleading statements that taking Vitamin D and zinc supplements can prevent or treat COVID-19, thus violating the FTC Act and the COVID-19 Consumer Protection Act.

In late 2019, a novel, highly contagious coronavirus began to sweep its way across the world. The disease it causes—COVID-19—has devastated communities everywhere. Tragically, as of April 2021, at least 550,000 Americans have died due to complications from COVID-19. Seeking to profit from the fear caused by this global pandemic, Defendant Eric Anthony Nepute, through his company Quickwork LLC, began marketing to the public nutritional supplements containing Vitamin D3 ("Vitamin D") and zinc, claiming—without competent and reliable scientific evidence—that Vitamin D and zinc can prevent or treat COVID-19. Defendants have even made baseless claims that their products are as or more effective than the available COVID-19 vaccines. Defendants' deceptive marketing poses a significant, ongoing risk to consumers, who may believe Defendants' claims and take their supplements instead of being vaccinated, social distancing, wearing masks, and taking other precautions recommended by public health experts to avoid contracting COVID-19. In short, Defendants' deceptive and irresponsible advertising threatens public health and safety at a crucial time in our nation's efforts to curb the pandemic, and Defendants have refused to stop, even when notified by the government.

Because Defendants lack any competent and reliable scientific evidence to support their claims regarding their Vitamin D and zinc supplements, the government will likely succeed on the merits of its case. Stopping Defendants from disseminating deceptive and misleading information

1

about the treatment and prevention of COVID-19 is indisputably in the public interest, especially as Defendants have no right to use such deceptive advertising in the first place.

## II. LEGAL BACKGROUND

In this case, the government alleges that Defendants have violated Section 5(a) and Section 12 of the FTC Act, as well as the COVID-19 Consumer Protection Act, and seeks preliminary and permanent injunctive relief, restitution, and civil penalties. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a). *See, e.g., FTC. v. Leadclick Media, LLC*, 838 F.3d 158, 168 (2d Cir. 2016).

Section 12 of the FTC Act prohibits advertisers from "disseminat[ing] any false advertisement . . . .for the purpose of inducing, or which is likely to induce . . . the purchase of . . . drugs." 15 U.S.C. § 52(a). Defendants' products are "drugs" under Section 12.[1] *See* 15 U.S.C. § 52(a). A "false advertisement" is "an advertisement, other than labeling, which is misleading in a material respect." 15 U.S.C. § 55. A Section 12 violation is also an unfair or deceptive act that violates Section 5 of the FTC Act, *see* 15 U.S.C. § 52(b).

The COVID-19 Consumer Protection Act ("COVID-19 ACT") prohibits, for the duration of the ongoing novel coronavirus (COVID-19) public health emergency, any person, partnership, or corporation from engaging in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), that is associated with the treatment, cure,

---

[1] The FTC Act defines "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man[.]" 15 U.S.C. § 55(c); *See Golden Sunrise Nutraceutical, Inc.*, 2020 WL 4501968 at *5 (defendants' dietary supplement products advertised to treat or cure COVID-19 were "drugs" within the meaning of the FTC Act).

2

prevention, mitigation, or diagnosis of COVID-19. *See* Pub. L. No. 116-260, Title XIV, § 1401(b)(1). A violation of Section (b)(1) of the COVID-19 ACT is treated as a violation of a rule defining an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B). *See* i*d*. § 1401(c)(1).

### III.   FACTUAL BACKGROUND

#### A. Defendants

Defendant Eric Anthony Nepute ("Nepute") is a chiropractor and the owner of Defendant Quickwork LLC ("Quickwork"), which does business using the trade name "Wellness Warrior." McGregor Decl. ¶ 2. Defendants maintain the Facebook pages WellnessWarrior.club and Common Sense Health Nation. *Id.* ¶¶ 6-7. Until February 2021, Nepute also maintained a public figure Facebook page, www.facebook.com/drericnepute. *Id.* ¶ 5. All three pages included links to various commercial websites maintained by Defendants, including www.wellnesswarrior.deals, through which consumers can purchase Wellness Warrior products. *Id*. ¶¶ 3-7.

#### B. Defendants Have Deceptively Marketed Their Vitamin D and Zinc Products for the Prevention and Treatment of COVID-19

Since 2020, Defendants have sold Wellness Warrior dietary supplements containing Vitamin D and zinc to the public. *Id.* ¶¶ 11-15. These supplements include Wellness Warrior Vita D, Wellness Warrior Zinc, Wellness Warrior Immune Pack, Wellness Warrior Boost Pack, and Wellness Warrior Kids' Multivitamin, among others. *Id.* ¶ 16. Since 2020, Defendants have marketed these Vitamin D and zinc products to treat and prevent COVID-19. *See generally* Compl.

Defendants' advertising has consisted mainly of dozens of lengthy videos featuring monologues by Nepute and posted on the Facebook pages of Nepute, Wellness Warrior, and/or Common Sense Health Nation. *See* Compl. Exs. A-G, I-J. Defendants amplify the impact of these videos by posting and reposting them hundreds of times on both Facebook and multiple Wellness

3

Warrior websites. *See* Au Decl. ¶¶ 4-15; Garrett Decl. ¶¶ 7-10.  Defendants have also marketed Vitamin D and zinc through posts on the Facebook pages of Nepute, Wellness Warrior, and/or Common Sense Health Nation, as well as in email advertisements sent to consumers who have purchased Wellness Warrior products. *See* Au Decl. ¶¶ 4-15; Garrett Decl. ¶¶ 7-10; Compl. Ex. H.

### C. Defendants' Deceptive Advertising Claims

Defendants have made a wide variety of misleading and deceptive claims regarding Vitamin D and zinc, and their role in preventing or treating COVID-19.

#### 1. Claims About Vitamin D

Defendants have made explicit and implicit claims that daily doses of Vitamin D are effective in treating or preventing COVID-19. Examples of Defendants' statements include:

- "Vitamin D[] will prevent [COVID-19] from infecting your body." Compl. Ex. C at 11:14-18.

- "Vitamin D blocks the virus. That's a fact. Nobody can argue that." Comp. Ex. F at 16:21-22.

- It is "very, very, very important" to take Vitamin D "from a preventative standpoint." Compl. Ex. B at 6:12-9:9.

- "Vitamin D3 is the only chemical that's out there and that's shown to reduce the spread . . . to minimize the chances of getting infected." Compl. Ex. F at 16:1-4.

- A daily dose of Vitamin D can effectively serve as a "treatment for COVID-19" by "boosting" the immune system. *See* Compl. Ex. D at 11:2-11:17.

- A "high-dose" of Vitamin D can help to turn COVID-19 into a "mild illness." Compl. Ex. E at 14:14-15:1.

Defendants have also misrepresented particular scientific studies as supporting Vitamin D's efficacy as a COVID-19 prophylactic or treatment. For example, Defendants claimed that:

- The "Journal of Nature Magazine 2020, in April and May, showed that if you have the adequate amounts of [V]itamin D3 in your system . . . then you have a 77 percent less chance of getting infected in the first place." Compl. Ex. G at 13:23-14:5.

4

- "Boston University's Dr. Michael Holick found . . . that people who have enough [V]itamin D are 54 percent less likely to catch coronavirus in the first place." Compl. Ex. H.

- Other work performed by Dr. Holick demonstrates that "COVID-19 Patients who get enough [V]itamin D are 52% less likely to die" and "are at a 52 percent lower risk of dying of COVID-19 than people who are deficient. *Id*.

These claims convey the impression that Vitamin D is scientifically proven to prevent or treat COVID-19. As set forth below and in the accompanying declaration of Dr. Richard van Breemen, these claims lack substantiation. *Infra* Part V.A.1; *see generally* Van Breemen Decl.

### 2. Claims About Zinc

Defendants have also disseminated advertisements representing that zinc treats or prevents COVID-19. Such claims include:

- Zinc is an effective treatment for COVID-19 because it "doesn't allow the virus to continue to proliferate" inside the body; it instead "stops the cells from regenerating viruses", which in turn "stops viral proliferation." Compl. Ex. F at 17:4-5; Compl. Ex. D at 11:24-12:19.

- "[T]ak[ing] zinc every day" serves as a treatment for COVID-19 by "boosting the immune system." Ex. D at 11:2-13, 11:24-12:19.

- "[W]e should be preventatively loading up on zinc" [to avoid COVID-19]. Compl. Ex. B at 6:24-6:25, 7:21-8:9.

These claims, which also convey the impression that zinc is scientifically proven to prevent or treat COVID-19, are also unsubstantiated. *See infra* Part V.A.1; Van Breemen Decl.

### 3. Vaccine-Related Claims

Defendants have also disseminated advertisements claiming that Wellness Warrior Products were more effective at preventing or treating COVID-19 than the available vaccines or other available treatments. For example, Defendants have claimed:

- "[V]accines do not stop the spread of the virus." Compl. Ex. G at 13:13-15.

5

- "[I]t's been proven by NIH, World Health Organization, the CDC, the list goes on and on, that vaccines do not stop the spread of the virus." Compl. Ex. G at 13:13-15.

- Nepute's protocol, including Vitamin D and zinc, "actually works better . . . than any vaccine," and customers do not "really need a vaccine." Compl. Ex. F at 17:6-8.

Here, too, Defendants do not support their claims with adequate scientific substantiation. *See infra* Part V.A.1.

### D. Defendants' Advertising Persuades Consumers To Buy Their Products and Forego Recommended Health Precautions

Defendants' advertising videos have generated large audiences, and online comments to those videos indicate that consumers have been receptive to their marketing claims. For example, one viewer wrote that, while taking zinc, she "never got sick" when her husband contracted COVID-19. Garrett Decl. Att. 2 at 10. Another wrote that she had "[b]een taking Wellness Warrior [products] at least 7 months," had "no sickness" and was "living life without fear." *Id.* at 7. A third wrote: "[j]ust ordered mine today. Dr. Eric thank you so much. I have been following you for a while and really appreciate all you do to inform us all." *Id.* Various viewers also expressed vaccine skepticism: one viewer wrote that she would "never take the vaccine"; another wrote: "[s]crew getting the vaccine"; and a third wrote: "[n]o shot for me . . . ." *Id.* at 13, 18, 19. Indeed, one user, a healthcare professional, wrote that she "recommend[ed] [Defendants' products to all [her] patients" and that her patients "do research on the vaccine before" making a decision as to whether to take it. *Id.* at 2.

### E. Despite Warnings, Defendants Continue Making Their Deceptive Claims

In May 2020, FTC staff warned Nepute that he was "unlawfully advertising that certain products or services treat or prevent" COVID-19. Compl. Ex. K. The warning letter advised him "to review claims for [his] products and services and immediately cease making claims that are

6

not supported by competent and reliable scientific evidence." *Id*. Defendants have nevertheless continued marketing their Vitamin D and zinc products as prophylactics and/or treatments for COVID-19. Defendants continue to post advertising videos to their various websites, and many of the videos containing the claims described in Part III.C above may still be viewed on the Wellness Warrior and/or Common Sense Health Nation Facebook page. *See* Garrett Decl. ¶ 6.

## IV. LEGAL STANDARD

Section 13 of the FTC Act, 15 U.S.C. § 53, provides two avenues for this Court to issue a preliminary injunction: Section 13(a) and Section 13(b). Under Section 13(b), the government[2] may file suit whenever it "has reason to believe that any person … is violating, or is about to violate, any provision of law enforced by the [FTC]." 15 U.S.C. 53(b)(1). A Section 5(a) violation will support an injunction under Section 13(b). *See FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991) (affirming Section 13(b) injunction based on violation of Section 5(a)). In considering a preliminary injunction motion sought under Section 13(b), the courts consider two factors: (1) the likelihood of ultimate success on the merits, and (2) a balance of the equities. *FTC v. Freeman Hosp.,* 69 F.3d 260, 267 (8th Cir.1995); *FTC v. BF Labs, Inc.*, No. 4:14-CV-00815, 2014 WL 7238080 (W.D. Mo. Dec. 12, 2014). "[U]nder § 53(b), irreparable harm is presumed . . . ." *FTC v. Business Card Experts, Inc.*, No. 06-4671, 2007 WL 1266636, at *3 (D. Minn. Apr. 27, 2007) ((citing *FTC v. World Wide Factors, Ltd*., 882 F.2d 344, 347 (9th Cir. 1989)).

Section 13(a) permits a suit in district court whenever the government "has reason to believe that any person … is engaged in, or is about to engage in, the dissemination or causing of the dissemination of any advertisement in violation of [Section 12 of the FTC Act]." The Court

---

[2] The government filed this case on notification and authorization from the FTC pursuant to 15 U.S.C. §§ 45, 56, and is exercising the authority granted to the FTC by statute.

7

"shall" grant the injunction "[u]pon proper showing." 15 U.S.C. § 53(a). While courts have differed regarding whether the 13(a) and 13(b) standards are distinct, the government submits that the better reading of Section 13(a) requires the plaintiff to show only that it has "reasonable cause" to believe that the alleged violation occurred, and also directs the Court to consider whether "an injunction would be in the best interest of the public," to obtain an injunction. *FTC v. Nat'l Comm. on Egg Nutrition*, 517 F.2d 485, 488-89 (7th Cir. 1975). *But see FTC v. Simeon Mgmt. Corp*, 532 F.2d 708, 713-14 (9th Cir. 1976) (Section 13(a) standard is same as Section 13(b) standard).

The government may also seek a preliminary injunction to enjoin violations of the law pursuant to Fed. R. Civ. P. 65(a). In determining whether to grant the injunction, the Court must consider: "(1) the threat of irreparable harm; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant: (3) the probability that movant will succeed on the merits; and (4) the public interest." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

V.     **ARGUMENT**

Since 2020, Defendants have been disseminating deceptive and misleading representations about the efficacy of Vitamin D and zinc in preventing or treating COVID-19, putting the public at risk. These representations, made without competent or reliable scientific evidence to back them up, violate Section 5(a)'s ban on unfair or deceptive acts or practices in or affecting commerce, Section 12's ban on false advertising of drugs, and the COVID-19 ACT.

Preliminary injunctive relief is appropriate, whether considered under Section 13(a), Section 13(b), or Rule 65(a). The government has reasonable cause to believe these violations occurred, as set forth in detail in the Complaint. The likelihood of success on the merits is strong: Defendants indisputably made the representations in question and lacked competent or reliable scientific bases for their claims. The equities favoring a preliminary injunction include potentially

dire and irreparable harm to consumers persuaded by Defendants claims, as well as the urgent public interest in stopping the dissemination of false or deceptive information about how to treat and prevent COVID-19. Such equities significantly outweigh any economic harm that Defendants may suffer if their nutritional supplement sales drop because they can no longer use deceptive advertising to promote them.

### A.  The Government is Likely to Succeed on the Merits

To prove Defendants violated FTC Act Sections 5 and 12, the government must show that (i) "there is a representation, omission, or practice"; that (ii) "is likely to mislead consumers acting reasonably under the circumstances"; and (iii) is material.[3] *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). The government is confident that it will prevail in this case. The filings in this case show that, to sell their Vitamin D and zinc supplements, Defendants have been making deceptive and misleading statements about how their products can treat, mitigate, or prevent COVID-19—statements that violate Sections 5 and 12 of the FTC, as well as the COVID-19 ACT.

#### 1.  Defendants' Deceptive Advertising Is Not Based on Competent or Reliable Scientific Evidence

As set forth in Section III.C above, Defendants have made numerous claims regarding Vitamin D and zinc's ability to treat COVID-19. Defendants have claimed, for example, that "Vitamin D[] will prevent [COVID-19] from infecting your body"; that zinc "stops viral proliferation"; and that Vitamin D and zinc "actually works better than any vaccine." *Supra* Section III.C. Many of Defendants' claims conflict with widely-accepted conclusions of public

---

[3] While the Eighth Circuit has not squarely addressed the elements for these claims, other circuit courts and district courts within the Eighth Circuit have held that these elements apply. *See, e.g.*, *Leadclick Media, LLC*, 838 F.3d at 168; *POM Wonderful,* 777 F.3d at 490; *FTC v. Tashman*, 318 F.3d 1273 (11th Cir. 2003); *Kraft, Inc.*, 970 F.2d at 314; *FTC v. Next-Gen, Inc.*, 2018 WL 5310414 (W.D. Mo. Sept. 10, 2018); *Real Wealth, Inc.*, 2011 WL 1930401, at *2; *Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d at 1190.

9

health experts—*e.g.*, the efficacy of the currently approved COVID-19 vaccines—and the Court may take judicial notice of such information where it deems appropriate.

The government also retained Dr. Richard van Breemen, PhD, an expert in pharmacology and medicinal chemistry from Oregon State University, to help the Court determine whether Defendants have legitimate bases for their claims regarding the efficacy and health benefits of Vitamin D and zinc supplements. Van Breemen Decl. ¶ 22. Dr. Van Breemen explains that practitioners of pharmacology and medicinal chemistry require randomized, controlled human clinical trials to show that an intervention treats, prevents, or reduces the risk of COVID- 19. *Id.* ¶ 26. Among other reasons, this is because only randomized, controlled clinical trials can differentiate between the therapeutic benefit of a particular treatment, and other factors that can also influence health outcomes (such as placebo effects or confounding factors). *Id*. For example, all of the FDA-approved COVID-19 vaccines received emergency use authorization only after their sponsors conducted large, well-designed, double-blind, randomized controlled trials. *Id.* ¶ 42. These trials were required in order to support claims that these vaccines can effectively prevent COVID-19 infection (or severe COVID-19 infection). *Id.*

Dr. van Breemen has conducted a comprehensive review of the relevant academic literature for both Vitamin and D and zinc. *Id.* ¶¶ 23-24. He has determined that there are no completed, well-designed randomized clinical trials establishing that taking Vitamin D supplements can cause positive health outcomes in connection with COVID-19. *Id.* ¶ 29. Nor are there any randomized controlled trials showing that zinc can effectively treat, prevent, or reduce the risk of COVID-19; to the contrary, the only randomized controlled trial completed so far showed that zinc had no therapeutic benefits. *Id.* ¶ 39. There are also no studies showing that vitamin D or zinc is equally or more effective in preventing or treating COVID-19 than the currently available vaccines. *Id.* ¶

10

43. In sum, there is no competent and reliable evidence to substantiate any Defendants' claims regarding the efficacy of Vitamin D or zinc as a prophylactic or treatment for COVID-19.

Moreover, Defendants' claims about the benefits of ingesting Vitamin D and zinc supplements convey the impression that those claims are backed up by science. Defendants create this false impression this by citing to actual scientific studies and by referring to specific biological mechanisms through which Vitamin D and zinc supposedly treat and/or prevent COVID-19. *Supra* Section III.C; *see also, e.g.*, Compl. Ex. G at 24:20-22 (Vitamin D "blocks the spike protein from the [human cell's] ACE-2 receptor"); *id.* 35:15-25 (Vitamin D can prevent "cytokine storm"); *compare* Van Breemen Decl. ¶¶ 36-37. "When assessing the meaning and representations conveyed by an advertisement [for Section 12 claims], the court must look to the advertisement's overall, net impression rather than the literal truth or falsity of the words in the advertisement," *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009), and determine whether "at least a significant minority of reasonable consumers would likely interpret the ad to assert the claim," *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015). Here, Defendants convey a false "net impression" that competent and reliable scientific evidence supports their claims regarding Vitamin D and zinc.

### 2. Defendants' Representations Are Likely to Mislead Consumers Acting Reasonably Under the Circumstances

"A solicitation is likely to mislead consumers acting reasonably if the express or implied representation made by the solicitation is false, or if the advertiser lacked a reasonable basis—or adequate substantiation—for asserting that the representation was true." *FTC v. Real Wealth, Inc.*, No. 10–CV–0060–FJG, 2011 WL 1930401, at *3 (W.D. Mo. May 17, 2011) (internal quotation omitted); *see also POM Wonderful,* 777 F.3d at 490; *Pantron I*, 33 F. 3d at 1096. Some of Defendants' claims are clearly false, such as the statement that "Vitamin D3 is the only chemical

11

that's out there that's shown to reduce the spread . . . to minimize the chances of getting infected." Compl. Ex. F at 16:1-4. Moreover, Defendants lack a reasonable basis for all of the deceptive claims addressed by this case. To show the advertiser lacked a "reasonable basis" for particular claims, the government must "(1) demonstrate 'what evidence would in fact establish such a claim in the relevant scientific community'; and (2) 'compare the advertisers' substantiation evidence to that required by the scientific community to see if the claims have been established." *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010) (quoting *Removatron Intern. Corp. v. FTC*, 884 F.2d 1489, 1498 (1st Cir. 1989)); *FTC v. Garvey*, 383 F.3d 891, 901 (9th Cir. 2004); see also *Pantron I*, 33 F.3d at 1096 n.23 (advertiser required to "possess some controlled clinical evidence" regarding efficacy); *Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d at 1202 (without well-designed randomized clinical trials supporting claims, advertiser lacked "reasonable basis" for dietary supplement claims).[4] The Eastern District of California recently enjoined a nutritional supplement seller from advertising its product as a COVID-19 treatment, in part because the seller lacked adequate scientific studies to substantiate its claims. *FTC* v. *Golden Sunrise Nutraceutical, Inc.*, No. 1:20-cv-1060-DAD-SKO, 2020 WL 4501968, at *6 (E.D. Cal. Aug. 5, 2020).

As Dr. Van Breemen explains, the evidence needed to establish a claim in his fields—*i.e.,* the "relevant scientific community"—would be well-designed, double-blind, placebo-controlled,

---

[4] The FTC and some courts have distinguished between "efficacy claims" (claims that convey that a product successfully performs the advertised benefit), and "establishment claims" (claims that a product's efficacy has been scientifically established). *See, e.g., POM Wonderful*, 777 F.3d at 490. Defendants' claims could be construed as efficacy claims, establishment claims, or both. However, regardless of the applicable framework, the Court must assess the level of scientific support for Defendants' claims when determining whether Defendants had a reasonable basis to make them. *See id.* (efficacy claim requires court to consider "the amount of substantiation experts in the field would agree is reasonable"; establishment claim requires advertiser to have "evidence sufficient to satisfy the relevant scientific community of the claim's truth"). Because, as set forth above, Defendants lack adequate substantiation for their claims, their statements violate Sections 5 and 12 of the FTC Act regardless of whether they are efficacy or establishment claims.

randomized controlled trials, with statistically valid results and subjected to peer review, showing that Vitamin D or zinc effectively prevent or treat COVID-19. Van Breemen Decl. ¶ 26. As set forth above, there are no such completed studies. Nor are there any completed studies showing that Vitamin D or zinc is a more effective therapeutic for COVID-19 than the currently available vaccines. Defendants therefore lack a reasonable basis for their claims to the contrary, rendering such claims deceptive under Sections 5 and 12 of the FTC Act and the COVID-19 Act.

### 3. Defendants' Representations Are Material

Defendants' claims are sales pitches that encourage consumers to buy their Vitamin D and zinc products. Such representations are material because they "involve[] information likely to affect a consumer's decision to purchase a particular product or service." *Real Wealth, Inc.*, 2011 WL 1930401 at *2; *Kraft Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992). Materiality is presumed where, among other circumstances, a defendant makes either "express claims"—*i.e.*, claims that "directly represent the fact at issue"—or "claims that significantly involve health, safety, or other areas with which reasonable consumers would be concerned." *Kraft,* 970 F.2d at 322 & n.4; *Novartis v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000*)*; *Fanning v. FTC*, 821 F.3d 164 (1st Cir. 2016); *see also Golden Sunrise Nutraceutical, Inc.*, 2020 WL 4501968 at *7 (claims that nutritional supplement product effectively treated COVID-19 "express and relate to consumer health" and are "clearly material"). The presumption of materiality should apply here as well: Defendants' claims expressly relate to COVID-19, a serious concern for most people in the world today.

### B. The Equities Support Granting a Preliminary Injunction

While courts considering a preliminary injunction motion may consider both public and private equities, "the public equities are to be given greater weight in the balance." *Freeman Hosp.*,

13

69 F.3d at 272. Where—as here—the government is likely to succeed on the merits, "the district court may 'presume ... that the public interest will be served by interim relief.'" *Id*. (quoting *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1082 (D.C. Cir. 1981). Even absent this presumption, the public interest is clearly served by a preliminary injunction here.

The public interest in stopping Defendants from continuing to disseminate deceptive and misleading advertisements is substantial. The nation remains in the grip of a pandemic that claims the lives of thousands each day. Defendants' promotion of unproven prevention and treatment strategies may discourage people from taking basic measures that have proven effective against COVID-19. Indeed, comments to Defendants' video posts demonstrate that Defendants have convinced many consumers to use Defendants' products instead of taking the highly effective vaccines. *Supra* Part III.D. Any harm to consumers who become ill or die due to Defendants' misrepresentations is irreparable. *See Harris v. Blue Cross Blue Shield of Mo.*, 995 F.2d 877, 879 (8th Cir. 1993) ("no question . . . that irreparable injury exist[s]" when the harm contemplated is a "life threatening illness"). By contrast, Defendants have no legitimate interest in being allowed to continue to deceive consumers. *See World Wide Factors, Ltd.*, 882 F.2d at 347 (defendants required to stop making fraudulent representations suffer "no oppressive hardship"). The equities therefore strongly favor granting this motion.

### C. The Scope of the Injunction Is Necessary and Appropriate

The proposed injunction is reasonably tailored to enjoin Defendants' deceptive advertising. It requires Defendants to cease their deceptive marketing and to remove all deceptive marketing from websites under their control. The Court has authority to grant ancillary equitable relief, *see Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1313-14, and courts have granted restraining orders with similar terms, *see, e.g., Golden Sunrise Nutraceutical, Inc.*, 2020 WL 4501968, at *8.

## VI. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court grant the motion for a preliminary injunction and enter the accompanying proposed order.

Dated: April 15, 2021

                Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

SAYLER FLEMING
United States Attorney
Eastern District of Missouri

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

SUZANNE J. MOORE  MO#45321
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Tel: (314)539-2200
Fax: (314)539-2196
Email: suzanne.moore@usdoj.gov

GUSTAV W. EYLER
Director
Consumer Protection Branch


LISA K. HSIAO
Assistant Director
Consumer Protection Branch


  /s/ Ben Cornfeld
BEN CORNFELD 1048311(DC)
BRANDON ROBERS 1112150055(MD)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-598-7276 (Cornfeld)
Tel: 202-305-2023 (Robers)
Fax: 202-514-8742
Benjamin.A.Cornfeld2@usdoj.gov
Brandon.Robers@usdoj.gov

Of Counsel:  
KRISTIN M. WILLIAMS  
MARY L. JOHNSON  
BRADY C. WILLIAMS  
Attorneys  
Federal Trade Commission  
600 Pennsylvania Avenue, N.W.  
Mailstop CC-10528  
Washington, D.C. 20850  
Tel: 202-326-2619 (K. Williams)  
Tel: 202-326-3115 (Johnson)  
Tel: 202-326-3517 (B. Williams)  
Fax: 202-326-3259  
Kwilliams2@ftc.gov  
Mjohnson1@ftc.gov  
Bwilliams2@ftc.gov  
