**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Case No.:  4:21-cv-00437-RLW |
| **ERIC ANTHONY NEPUTE**, individually, and as Owner of Quickwork LLC; and | |
| **QUICKWORK LLC**, a limited liability company, also d/b/a WELLNESS WARRIOR, | |
| Defendants. | |

## ANSWER OF DEFENDANT QUICKWORK LLC

Defendant Quickwork LLC ("Quickwork") states as follows for its Answer to Plaintiff's Complaint:

## NATURE OF THE CASE

1.     Defendants sell nutritional supplements containing Vitamin D and zinc, among other products. Recently, Defendants have been advertising their Vitamin D and zinc products—including "Wellness Warrior Vita D", "Wellness Warrior Zinc", and others—on social media and the internet as drugs capable of treating, or preventing COVID-19. Defendants even claim that their products are more effective than the available COVID-19 vaccines. Defendants lack valid factual or scientific bases for these claims, which are frequently accompanied by equally unsupported assertions regarding the applicable science. In short, Defendants are selling their products by

disseminating misinformation, exploiting fears in the midst of a pandemic, and posing a significant risk to public health and safety.

**Answer:**  Quickwork admits it sells a number of products under the "Wellness Warrior" tradename, including nutritional supplements containing Vitamin D and zinc, via the internet and social media. Quickwork denies the remaining allegations of this paragraph in their entirety.

2.       Although the government has notified Defendants that their deceptive advertising and misrepresentations violate the Federal Trade Commission Act ("FTC Act"), as well as the COVID-19 Consumer Protection Act that was enacted in December 2020, Defendants have refused to stop. The United States therefore files this suit to seek preliminary and permanent injunctive relief, civil penalties, and other remedies in order to prevent the harms caused by Defendants' ongoing misrepresentations.

**Answer:**  Quickwork admits Plaintiff filed the instant action in which it seeks relief as set forth in the Complaint. Quickwork further answers by stating the award of monetary civil penalties is the subject of a pending Motion to Dismiss (ECF No. 16; adopted by Quickwork at ECF No. 19). Quickwork denies the remaining allegations of this paragraph in their entirety.

## JURISDICTION AND VENUE

3.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the law of the United States. It also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337(a) because it arises under an Act of Congress regulating interstate commerce or protecting trade and commerce against restraints and monopolies, and under 28 U.S.C. § 1345 because the United States is the Plaintiff.

**Answer:**   Quickwork admits Plaintiff purports to invoke the Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1345. Quickwork further answers by stating

the Court's jurisdiction is the subject of a pending Motion to Dismiss (ECF No. 16; adopted by Quickwork at ECF No. 19). Quickwork denies the remaining allegations of this paragraph in their entirety.

4.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting interstate commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent a response is required, Quickwork denies the allegations of this paragraph in their entirety.

5.     The Court has personal jurisdiction over the defendants because all Defendants reside in this district and because the alleged acts giving rise to the claims occurred in this District.

**Answer:**  Quickwork admits Plaintiff purports to invoke personal jurisdiction in this Court. This paragraph avers legal conclusions to which no response is required. Quickwork denies the remaining allegations of this paragraph in their entirety.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(1), and 15 U.S.C. § 53(b) because all Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Pursuant to Local Rule 2.07, venue is proper in the Eastern Division because all defendants reside in this Division and because the claim for relief arose in the Eastern Division.

**Answer:**  Quickwork admits Plaintiff purports to invoke the venue of this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (c)(1), as well as 15 U.S.C. § 53(b) and Local Rule 2.07. This paragraph avers legal conclusions to which no response is required. Quickwork denies the remaining allegations of this paragraph in their entirety.

## PARTIES

7.      Plaintiff is the United States of America.

**Answer:**  Admitted.

8.      Defendant Eric Anthony Nepute ("Nepute") is a chiropractor and the owner of Defendant Quickwork LLC ("Quickwork"). He resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States. Nepute is also the owner of Nepute Wellness Center, which is located in St. Louis, Missouri. Until February 2021, Nepute maintained a Facebook page, www.facebook.com/drericnepute, which designated him as a "public figure" and included a "verified badge' indicating that Facebook has confirmed that the page belongs to him. From at least 2015 until February 2021, he frequently posted videos on his Facebook page that featured him talking about various health and wellness topics.

**Answer:**  Quickwork admits Dr. Nepute is a chiropractor and, through a wholly owned limited liability company, indirectly holds an ownership interest in Quickwork.  Quickwork admits Dr. Nepute resides and conducts business in this District. Quickwork admits Nepute is the owner of Nepute Wellness Center, which has locations in this District. Quickwork admits that Nepute maintained a Facebook page on which he discussed various health and wellness topics. Quickwork denies the remaining allegations of this paragraph in their entirety.

9.      Quickwork, formed by Nepute in January 2020, is a Missouri limited liability company with its principal office or place of business at 1 First Missouri Center, Suite 214, St. Louis, Missouri 63141. In June 2020, Quickwork began doing business under the trade name "Wellness Warrior." Wellness Warrior maintains a Facebook page, www.facebook.com/Wellnesswarrior.club, and several additional websites through which

interested customers can obtain Wellness Warrior products, including but not limited to www.wellnesswarrior.deals, www.myfreezinc.com, www.freevitamindeal.com, www.freevitamindeals.com, www.commonsensehealth.live, www.wellnesswarrior.org, thewellnesswarrior.org, wellnesswarriorvitamins.com, nepute.chiroconnect.com, teamwarrior.com, and neputewellnesscenter.com. Defendants may also maintain additional websites and may have previously maintained other websites that are now defunct.

**Answer:**  Quickwork admits Nepute participated in its formation. Quickwork admits it is a Missouri Limited Liability Company and its registered agent is located at 1 First Missouri Center, Suite 214, St. Louis, Missouri, 63141. Quickwork admits it conducts business under the name "Wellness Warrior" and that Wellness Warrior maintains a Facebook page and other websites through which customers can obtain Wellness Warrior products. Quickwork denies the remaining allegations of this paragraph in their entirety.

10.    Both Nepute and Quickwork have transacted business in this District and throughout the United States. Since its formation, Quickwork has advertised, marketed, distributed, or sold products containing Vitamin D and zinc, including Wellness Warrior Vita D, Wellness Warrior Zinc, Wellness Warrior Immune Pack, Wellness Warrior Boost Pack, and Wellness Warrior Kids' Multivitamin (together, the "Wellness Warrior Products") to consumers throughout the United States. Nepute has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this complaint, including the advertising, marketing, distribution, and sale of Wellness Warrior Products.

**Answer:**  Quickwork admits both it and Dr. Nepute have transacted business in this District and that Quickwork transacts business throughout the United States. Quickwork admits that, at some time subsequent to its formation, it began advertising, marketing, distributing, and selling

5

products, including under the Wellness Warrior tradename, that contain Vitamin D and zinc to customers throughout the United States. The remaining allegations of this paragraph aver legal conclusions to which no response is required. Quickwork denies any remaining allegations in their entirety.

## THE FTC ACT

11.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to quote or summarize 15 U.S.C. § 45(a), the text of this statute speaks for itself and Quickwork denies any allegations inconsistent therewith.

12.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to summarize 15 U.S.C. § 45(a), the text of this statute speaks for itself and Quickwork denies any allegations inconsistent therewith.

13.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, each Wellness Warrior Product is a "drug" as defined in Section (c) of the FTC Act, 15 U.S.C. § 55(c).

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to summarize 15 U.S.C. § 52, the text of this statute speaks for itself

6

and Quickwork denies any allegations inconsistent therewith. To the extent a response is required, Quickwork denies the allegations of this paragraph in their entirety.

## THE COVID-19 CONSUMER PROTECTION ACT

14.     On January 31, 2020, the Secretary of Health and Human Services declared that the 2019 novel coronavirus ("COVID-19") had caused a public health emergency. As of the date of the filing of this complaint, the public health emergency remains in effect.

**Answer:**  Quickwork is without sufficient knowledge or information so as to form a belief as to the truth of the allegations of this paragraph and therefore denies the same.

15.     On December 27, 2020, the President signed the COVID-19 Consumer Protection Act. The COVID-19 Consumer Protection Act makes it unlawful, for the duration of the ongoing novel coronavirus (COVID-19) public health emergency, for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), that is associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19. COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act ("COVID-19 Act"), Pub. L. No. 116-260, Title XIV, § 1401(b)(1).

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to summarize the COVID-19 Consumer Protection Act, Pub. L. No. 116-260, Title XIV, § 1401, ("COVID-19 Act"), the text of the Act speaks for itself and Quickwork denies any allegations inconsistent therewith.

16.     A violation of Section (b)(1) of the COVID-19 Consumer Protection Act is treated as a violation of a rule defining an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B). COVID-19 Act, § 1401(c)(1).

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to summarize the COVID-19 Act, the text of the Act speaks for itself and Quickwork denies any allegations inconsistent therewith.

17.     A violation of Section (b)(1) of the COVID-19 Consumer Protection Act made with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), is subject to monetary civil penalties of not more than $43,792 for each violation of the COVID-19 Consumer Protection Act after January 13, 2021, including penalties whose associated violation predated January 13, 2021. *See* 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Public Law 114-74, sec. 701, 129 Stat. 599 (2015); *see also* 16 C.F.R. § 1.98(d).

**Answer:**  This paragraph avers legal conclusions to which no response is required. To the extent this paragraph purports to summarize the COVID-19 Act, the text of the Act speaks for itself and Quickwork denies any allegations inconsistent therewith. Quickwork further answers that the award of monetary civil penalties is currently the subject of a pending Motion to Dismiss (ECF No. 16; adopted by Quickwork at ECF No. 19). To the extent a response is required, Quickwork denies the allegations of this paragraph in their entirety.

## DEFENDANTS' UNLAWFUL CONDUCT

**I.     Defendants Use Misrepresentations to Advertise Their Vitamin D and Zinc Products**

18.     In early April 2020, Defendants began advertising and selling Wellness Warrior Products to the public.

**Answer:**  Quickwork admits it has advertised and sold Wellness Warrior products to the public since early April 2020. Quickwork denies any remaining allegations of this paragraph in their entirety.

19.     No later than May 2020, Defendants began to advertise Wellness Warrior Products as protecting against, preventing, or treating COVID-19. Such advertising has consisted mainly of lengthy videos featuring monologues by Nepute and posted on Nepute's public figure Facebook page or the Wellness Warrior Facebook page, both of which were available to the public. Both of the Facebook pages and videos included hyperlinks that consumers could click on to visit one of Defendants' many websites and buy Wellness Warrior Products. Nepute's Facebook page also featured an "offers" section promising free bottles of Vitamin D and zinc.

**Answer:**  Quickwork admits it advertised Wellness Warrior products on its website and/or social media to assist in the prevention of suffering from illnesses with flulike symptoms and to improve the health and vitality of purchasers. Quickwork does not control, nor is it responsible for, the content on Dr. Nepute's Facebook page or his other social media. Quickwork denies the remaining allegations of this paragraph in their entirety.

20.     Defendants prepared dozens of videos that had an outsized impact, because they amplified their reach by posting and reposting them hundreds of times on Nepute's and the Wellness Warrior Facebook pages, as well as on the multiple Wellness Warrior websites. For example, an August 5, 2020 video, originally posted with the title "Eric Nepute's Video", was reposted on his various websites no fewer than 59 and possibly as many as 176 times. Defendants often posted videos multiple times a day, and some of the posts played the same video two to six consecutive times. Collectively, Defendants' marketing videos have been viewed millions of times.

**Answer:**   Quickwork admits that videos prepared by Dr. Nepute were posted on the Wellness Warrior Facebook page and website. Quickwork is without sufficient knowledge or information to form a belief as to the truth of the allegations as the number of postings or viewings of the referenced video and therefore denies the same. Quickwork denies the remaining allegations of this paragraph in their entirety.

21.     In February 2021, Facebook removed Nepute's public figure Facebook page from its website. In response, on February 19, 2021, Nepute created a new Facebook page, Common Sense Health Nation, https://www.facebook.com/commonsensehealthnation/. The Common Sense Health Nation page is also publicly available and includes links to Wellness Warrior websites where consumers can buy Wellness Warrior Products. Nepute has reposted to the Common Sense Health Nation Facebook page videos that previously appeared on his public figure Facebook page. He has also continued to post lengthy videos advertising his products.

**Answer:**   Quickwork admits Facebook de-platformed the Eric Nepute public figure Facebook page in February 2021. Quickwork denies that the Common Sense Health Nation Facebook page was created in response to the de-platforming of the Eric Nepute public Facebook page. Quickwork admits that Wellness Warrior products are advertised on the Common Sense Health Nation Facebook page. Quickwork admits that certain videos posted on the Common Sense Health Nation Facebook page contain links to Wellness Warrior websites where Wellness Warrior products can be purchased. Quickwork denies the remaining allegations of this paragraph in their entirety.

22.     In March 2021, Defendants created a new website, Common Sense Health Live, https://www.commonsensehealth.live/. The Common Sense Health Live website is publicly available to anyone who creates an account, which requires only a name and an email address. It

includes links to Wellness Warrior websites where consumers can buy Wellness Warrior Products. Nepute has described the Common Sense Health Live website as "like Facebook, except for the censorship." The Common Sense Health Facebook page includes a link to the Common Sense Health Live website.

**Answer:** Quickwork admits https://www.commonsensehealth.live/ was launched in March 2021 and is a publicly available website that includes links to buy Wellness Warrior products and to access Wellness Warrior websites. Quickwork admits the Common Sense Health Facebook page includes a link to the Common Sense Health Live website. Quickwork denies the remaining allegations of this paragraph in their entirety.

23.     Defendants have also marketed Vitamin D and zinc through posts on Nepute's Facebook page, the Wellness Warrior Facebook page, the Common Sense Health Nation Facebook page, the Common Sense Health Live website, and email advertisements sent to consumers who have purchased Wellness Warrior-branded products.

**Answer:**  Quickwork admits that it has marketed Vitamin D and zinc via websites, social media, and email. Quickwork does not control, nor is it responsible for, the content on Dr. Nepute's Facebook page or his other social media. Quickwork denies the remaining allegations of this paragraph in their entirety.

24.     Starting no later than June 2020, Defendants began advertising a protocol that customers should follow in order to protect against, prevent, or treat COVID-19. This protocol, which has varied over time, advises consumers to take, on a daily basis, substantial quantities of emulsified Vitamin D3 ("Vitamin D") and zinc, which are found in the Wellness Warrior Products.

**Answer:**  Quickwork admits it has provided information relating to an American Medical Association recognized protocol to reduce flulike symptoms through the use of supplementation

11

and lifestyle changes. Quickwork denies the remaining allegations of this paragraph in their entirety.

A.      **Vitamin D: The Truth v. Defendants' Misrepresentations**

25.       Wellness Warrior Vita D is an ingestible product sold in softgel capsule form. Each softgel of Wellness Warrior Vita D contains 5,000 IU Vitamin D3 (cholecalciferol) and unspecified amounts of "[o]rganic, extra virgin olive oil and softgel (bovine gelatin, vegetable glycerin, and purified water)." The Wellness Warrior Vita D product label directs users to "Take one softgel daily, or as directed by your healthcare practitioner." Wellness Warrior Kids' Multivitamin also contains Vitamin D.

**Answer:**  This paragraph seeks to quote from, paraphrase, and/or characterize the Wellness Warrior Vita D and Wellness Warrior Kids' Multivitamin product labels. The labels speaks for themselves and Quickwork denies the allegations to the extent they are inconsistent with the product labels. Quickwork denies the remaining allegations of this paragraph in their entirety.

*No Studies Prove That Vitamin D Prevents or Treats COVID-19*

26.       There is no competent and reliable scientific evidence that Vitamin D protects against, treats, or prevents COVID-19.

**Answer:**  Denied.

27.       There are no published studies that prove that Vitamin D protects against, treats, or prevents COVID-19. The few completed randomized clinical trials investigating the efficacy of Vitamin D in treating or preventing COVID-19 either (i) showed no benefits to patients taking Vitamin D; or (ii) had flawed study designs and failed to conform to FDA guidelines for scientific studies investigating the efficacy of treatments for COVID-19.

**Answer:**  Denied.

28.       Defendants have made numerous claims that explicitly or implicitly state that daily doses of Vitamin D are effective in treating or preventing COVID-19. For example:

a.   Vitamin D protects people from COVID-19: "So what can we do? ***You got to protect yourself and protect the others*** [from COVID-19]. . . . How do we do that? Number one, ***we got to take the right vitamins*** . . . I talked about Vitamin D. It's so important to do that. Go on that link below, click it. . . . But ***get some D3 – emulsified D3***." Ex. A[1] at 21:11-23:4.

b.   Vitamin D prevents COVID-19: "I'm going to tell you something ***that you need to be doing at home from a preventative standpoint*** . . . . [It's] ***very, very, very important [to take] [Vitamin] D as in dog, D3***." Ex. B at 6:12-9:9.

c.   "Vitamin D3 will prevent [COVID-19] from infecting your body." Ex. C at 11:14-18.

d.   A daily dose of Vitamin D can effectively serve as a "***treatment for COVID-19***" by "boosting" the immune system. Ex. D at 11:2-11:17.

e.   A "high-dose" of Vitamin D would help to turn COVID-19 into a "mild illness." Ex. E at 14:14-15:1.

f.   "Vitamin D3 is ***the only chemical that's out there and that's shown to reduce the spread . . . to minimize the chances of getting infected***." Ex. F at 16:1-4.

g.   "***Vitamin D blocks the virus***. That's a fact. Nobody can argue that." Ex. F at 16:21-22.

**Answer:**  The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the contents of posts that speak for themselves. Quickwork denies the

allegations to the extent they are inconsistent with the full content of those posts. Quickwork denies the remaining allegations of this paragraph in their entirety.

29.     Defendants lacked any reasonable bases for the foregoing statements, as well as many other similar statements they have made.

**Answer**:  Denied.

30.     Defendants have also made deceptive statements regarding the results of certain scientific studies to claim that Vitamin D was an effective preventative or treatment for COVID-19.

**Answer**:  Denied.

31.     Again, there are no randomized clinical trials that establish increased Vitamin D supplementation cause positive health outcomes in connection with COVID-19. Although there are observational studies that have explored correlations between low Vitamin D levels and an elevated risk of infection or severe illness from the coronavirus, such observational studies are not designed, and cannot be used, to prove causation, *i.e.*, to establish that Vitamin D supplementation cause positive health outcomes in connection with COVID-19.

**Answer**:  Denied.

32.     Defendants ignore these studies' conclusions and limitations and instead rely on them for the basis for specific, deceptive claims about the quantitative efficacy of Vitamin D in treating and/or preventing COVID-19. For example, Nepute made the following statements:

a. "Journal of Nature Magazine 2020, in April and May, showed that if you have the adequate amounts of Vitamin D3 in your system, then you have a 77 percent less chance of getting infected in the first place. Vitamin D3 equals 77 percent less chance of getting infected in the first place." Ex. G at 13:23-14:5.

14

b. "Boston University's Dr. Michael Holick found . . . that people who have enough [V]itamin D are 54 percent less likely to catch coronavirus in the first place." Ex. H.

c. According to the work performed by Dr. Holick, "COVID-19 Patients who get enough [V]itamin D are 52% less likely to die" and "are at a 52 percent lower risk of dying of COVID-19 than people who are deficient." Ex. H.

d. "[Vitamin] D3 has shown, in many studies, to cut the infection rate by sometimes up to 52 percent." Ex. E at 10:15-10:17.

**Answer:** The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the contents of posts that speak for themselves. Quickwork denies the allegations to the extent they are inconsistent with the full content of those posts. Quickwork denies the remaining allegations of this paragraph in their entirety.

33. In fact, the cited studies do not support Defendants' claims. Both of Dr. Holick's studies explored correlations between low Vitamin D levels and adverse COVID-19 outcomes. One study concluded only that its findings "provide further rationale to explore" the putative therapeutic benefit of Vitamin D and acknowledged that the implications could be significant only "[i]f controlled trials find this relationship to be causative"—*i.e.*, only if controlled trials found that low Vitamin D levels caused adverse COVID-19 outcomes. Dr. Holick's other study observed that, because of the study design, the authors could not "explain the cause and effect relationship of Vitamin D sufficiency and the reduced risk of severity from a COVID-19 infection," concluding that "large-scale studies and randomized clinical trials (RCTs)" were necessary to evaluate any interaction between them.

**Answer:**  The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the contents of written documents that speak for themselves. Quickwork denies the allegations to the extent they are inconsistent with the full text of those documents. Quickwork denies the remaining allegations of this paragraph in their entirety.

34.     To support the claim that people with adequate Vitamin D have a 77 percent less chance of getting infected in the first place, Defendants may be relying on a September 2020 article in the Journal of the American Medical Association (JAMA). To the extent that Defendants are relying on this study, they are mischaracterizing its results. This study expressly stated that: "Since [V]itamin D deficiency may be increased by many factors that could be associated with COVID-19 risk, including age, obesity, diabetes, and chronic illness more generally, observed associations of [V]itamin D with outcomes in almost any observational study may fail to accurately reflect any potential causal effects of [V]itamin D on outcomes."

**Answer:**  The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the content of a written document that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full text of that document. Quickwork denies the remaining allegations of this paragraph in their entirety.

***Defendants Have No Bases for Their Claim That Vitamin D Prevents or Treats COVID-19 Through Particular Biological Mechanisms***

35.     In addition to their claims regarding Vitamin D's efficacy, Defendants have, without any reasonable bases, made misrepresentations about the specific biological mechanisms through which Vitamin D supposedly helps prevent or treat COVID-19.

**Answer:**  Denied.

36.     SARS-CoV-2, the virus that causes COVID-19, infiltrates the cells by using a "spike protein" on the surface of its coat to bind to the "ACE2 receptor", a protein that naturally

16

appears on the walls of human cells. This binding allows the virus's genetic material (its RNA) to infiltrate the cell, hijack its machinery, and replicate itself. If the virus cannot bind to the ACE2 receptor, however, it cannot invade the cell, cannot replicate, and cannot cause harm. In fact, the recently approved vaccines work by teaching the body's immune system to recognize the spike protein as a foreign invader and act to neutralize it.

**Answer:**  Quickwork admits SARS-CoV-2, the virus that causes COVID-19, infiltrates the cells by using a "spike protein" on the surface of its coat to bind the "ACE2 receptor", a protein that naturally appears on the walls of human cells. Quickwork admits that if the virus cannot bind to the ACE2 receptor it cannot invade the cell, cannot replicate, and cannot cause harm. Quickwork denies the remaining allegations of this paragraph in their entirety.

37.     There are no published scientific studies establishing that Vitamin D interferes with the SARS-CoV-2 virus's ability to bind with the ACE2 receptor when Vitamin D is introduced into the human body.

**Answer:**  Denied.

38.     Nonetheless, without any competent and reliable scientific evidence, Defendants have claimed, for example, that Vitamin D "blocks the spike protein from the ACE-2 receptor," thereby preventing people from "get[ting] infected in the first place." Ex. G at 24:20-22. Defendants have further claimed that, through this mechanism, Vitamin D purportedly "stops the virus from attaching" to human cells. Ex. G at 17:23-18:2.

**Answer:**  The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the contents of a post that speaks for itself. Quickwork denies the allegations

to the extent they are inconsistent with the full content of this post. Quickwork denies the remaining allegations of this paragraph in their entirety.

39.     Defendants have also asserted that Vitamin D prevents "cytokine storms," which may be provoked in certain patients by the virus that causes COVID-19. A cytokine storm is an overactive, harm-causing response by the human immune system to the infection. Specifically, when the body is infected, it releases cytokines to signal the immune system to begin its defense work. Excessive quantities of cytokines, however, can cause the immune system to attack healthy tissue, resulting in severe injury or death.

**Answer:**   Quickwork admits multiple studies have indicated Vitamin D used as a prophylactic can lessen cytokine storm symptomatology. Quickwork admits a cytokine storm is an unregulated overexcitation of an immune system response secondary to a pathogen. Quickwork admits that excessive quantities of cytokines can cause the immune system to attack healthy tissue, resulting in severe injury or death. Quickwork denies the remaining allegations of this paragraph in their entirety.

40.     There are no published scientific studies demonstrating that Vitamin D can prevent a cytokine storm in COVID-19 patients.

**Answer:**  Denied.

41.     Again, without any competent and reliable scientific evidence, Defendants have claimed that Vitamin D can prevent cytokine storms from occurring, thereby reducing the severity of a COVID-19 infection: "If you have enough [V]itamin D3 in your system, you don't have a cytokine storm." Ex. G at 35:15-25.

**Answer:**   The allegations in this paragraph seek to selectively quote from, paraphrase, and/or characterize the contents of a post that speaks for itself. Quickwork denies the allegations

to the extent they are inconsistent with the full content of this post. Quickwork denies the remaining allegations of this paragraph in their entirety.

***Defendants Deceptively Imply That Scientific Research Supports Their Claims***

42.     To convey the impression that there is scientific evidence to support their deceptive claims, Defendants prepared and publicly posted on one of the Wellness Warrior Product websites a "Research Page" that contained hyperlinks to some of their videos, as well as various articles discussing Vitamin D and COVID-19. This Research Page linked to retrospective observational studies, news articles, blog posts, and PowerPoint presentations, none of which constituted competent or reliable scientific evidence that Vitamin D treats or prevents COVID-19.

**Answer:**   Quickwork admits that, at one point, a Wellness Warrior product website includes a page containing hyperlinks to videos and articles discussing Vitamin D and COVID-19. Quickwork denies the remaining allegations of this paragraph in their entirety.

43.     Upon information and belief, Defendants actually knew, or had knowledge fairly implied on the basis of objective circumstances, that the materials cited on the Research Page did not demonstrate that Vitamin D protects against, treats, or prevents COVID-19.

**Answer:**  Denied.

**B.     Zinc: The Truth v. Defendants' Misrepresentations**

44.     Wellness Warrior Zinc is an ingestible product sold in tablet form. Each tablet contains 25 milligrams of zinc (as zinc gluconate) and unspecified amounts of microcrystalline cellulose, dicalcium phosphate, stearic acid, colloidal silicon dioxide, magnesium stearate, and croscarmellose sodium. The Wellness Warrior Zinc product label directs users to "Take one tablet daily, or as directed by your healthcare practitioner." Wellness Warrior Kids' Multivitamin, Wellness Warrior Boost Pack, and Wellness Warrior Immune Pack also contain zinc.

**Answer:**  Quickwork admits that Wellness Warrior Zinc is an ingestible product sold in tablet form. This paragraph seeks to quote from, paraphrase, and/or characterize the product labels for Wellness Warrior Zinc, Wellness Warrior Kids' Multivitamin, Wellness Warrior Boost Pack, and Wellness Warrior Immune Pack. The product labels speak for themselves and Quickwork denies these allegations to the extent they are inconsistent with the product labels. Quickwork denies the remaining allegations of this paragraph in their entirety.

### No Studies Prove That Zinc Prevents or Treats COVID-19

45.     There is no competent and reliable scientific evidence that zinc protects against, treats, or prevents COVID-19. There are no published studies that prove that zinc protects against, treats, or prevents COVID-19. In fact, the sole completed randomized clinical trial investigating the efficacy of zinc as a preventative or treatment for COVID-19 found no therapeutic benefit.

**Answer:**  Denied.

 46.     Notwithstanding this absence of supporting scientific evidence, Defendants have disseminated advertisements representing that zinc treats or prevents COVID-19. Examples of Defendants' statements include:

a.   Zinc is an effective treatment for COVID-19 because it "doesn't allow the virus to continue to proliferate" inside the body and that it "stops the cells from regenerating viruses," which in turns "stops viral proliferation." Ex. F at 17:4-5; Ex. D at 11:24-12:19; Ex. E at 9:2-9:12.

b.   Zinc should be taken as a prophylactic: "We should be preventatively loading up on zinc . . . ." Ex. B at 6:24-6:25, 7:21-8:9.

c.   "Tak[ing] zinc every day" serves as a treatment for COVID-19 by "boosting the immune system." Ex. D at 11:2-11:13. "Washington University . . . say[s] boosting the

immune system is the answer. You're damn right it is . . . I'm going to tell you how and I'm going to give you a solution . . . buy a damn bottle of zinc." Ex. D at 11:24-12:19.

**Answer:**  The allegations in this paragraph selectively quote from, paraphrase, and/or characterize the contents of posts to Dr. Nepute's Facebook page that speak for themselves. Quickwork denies the allegations to the extent they are inconsistent with the full content of those posts. Quickwork denies the remaining allegations of this paragraph in their entirety.

47.    Although Defendants claim to have identified "over fifteen" studies relating to Zinc, they have not published a "research page" analogous to the page published relating to Vitamin D. The government has been able to find only two studies identified by Defendants as support for their claims. Neither study even relates to COVID-19, much less establishes that zinc treats or prevents COVID-19: one is an *in vitro* (petri dish) study that was not conducted on the virus that causes COVID-19, and the other is a discussion of observational studies done investigating the relationship between zinc and pneumonia, not COVID-19. Indeed, both studies were conducted years before the pandemic began.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of documents that speak for themselves. Quickwork denies the allegations to the extent they are inconsistent with the full text of those documents. Quickwork is without sufficient knowledge or information to form a belief as to the truth of the allegations of what Plaintiff has "found" and therefore denies the allegation. Quickwork denies the remaining allegations of this paragraph in their entirety.

48.    Nonetheless, Defendants deceptively claim that the *in vitro* study shows precisely how zinc purportedly prevents COVID-19: An "[i]ncrease in intercellular zinc concentrations . . .

21

can effectively impair the replication of RNA viruses including . . . SARS coronavirus. . . . Well, this is SARS CoV-2 is what this is." Ex. I at 14:14-14:22.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of posts to Dr. Nepute's Facebook page that speak for themselves. Quickwork denies the allegations to the extent they are inconsistent with the full content of the posts. Quickwork denies the remaining allegations of this paragraph in their entirety.

### C.     The Vaccines: The Truth v. Defendants' Misrepresentations

49.     To induce customers to purchase their Vitamin D and zinc products, Defendants have also disseminated advertisements that claim, without any reasonable basis, that Wellness Warrior Products were more effective at preventing or treating COVID-19 than the available vaccines or other available treatments.

**Answer:**  Denied.

50.     It is well known that several vaccines have been authorized for emergency use by the United States Food and Drug Administration because they have been proven effective to prevent infection by COVID-19 and to reduce the severity of such infections. These vaccines received emergency use authorization only after their sponsors conducted large, double-blind, randomized clinical trials that demonstrated their efficacy.

**Answer:**  Quickwork is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies the same. To the extent a response is required, Quickwork denies the allegations of this paragraph in their entirety.

51.     Unlike the rigorous clinical trial process that led to these vaccines, no such studies have been performed for Vitamin D and zinc, either administered independently or administered together. There is no competent and reliable scientific evidence showing that Vitamin D or zinc,

administered independently or in combination, is a better option for prevention of treatment of COVID-19 than the available vaccines.

**Answer:**  Quickwork admits the clinical trial process that led to the creation of the currently available COVID-19 vaccines is a process that, to date, has not been performed for Vitamin D and zinc, either independently or together. Quickwork does not claim that Vitamin D and zinc are better options for the prevention or treatment of COVID-19 than the currently available COVID-19 vaccines. Quickwork denies the remaining allegations of this paragraph in their entirety.

52.     However, Defendants have explicitly and implicitly represented that Vitamin D and zinc provide equal or better protection against COVID-19 than do currently available vaccines.

**Answer:**  Denied.

53.     For example, Defendants have claimed that "Vitamin D3 is the only chemical that's out there and that's shown to reduce the spread" of COVID-19. Ex. F at 16:1-4.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a post that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full content of the post. Quickwork denies the remaining allegations of this paragraph in their entirety.

54.     According to Defendants, "[t]here hasn't been one damn thing else that's shown the benefits of . . . preventing COVID-19 except for [V]itamin D3." Ex. C at 10:9-13.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a post that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full content of the post. Quickwork denies the remaining allegations of this paragraph in their entirety.

55.       Defendants have also advertised, without a reasonable basis, that "vaccines do not stop the spread of the virus." Ex. G at 13:13-15.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a post that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full content of the post. Quickwork denies the remaining allegations of this paragraph in their entirety.

56.       Defendants also assert that: "it's been proven by NIH, World Health Organization, CDC, the list goes on and on, that "vaccines do not stop the spread of the virus." Ex. G at 13:13-15. According to Defendants, "the NIH, the World Health Organization, the CDC . . . [have] clearly said this vaccine is not going to stop the spread of infection. Ex. J at 12:1-18. However, the National Institutes of Health ("NIH"), the World Health Organization ("WHO"), the Federal Centers for Disease Control ("CDC"), and the Surgeon General have never stated, much less proven, that vaccines do not stop the spread of COVID-19.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a post that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full content of the post. Quickwork denies the remaining allegations of this paragraph in their entirety.

57.       Defendants have further stated, without any reasonable basis, that Nepute's protocol, including Vitamin D and zinc, "actually works better than . . . any vaccine," and, therefore, customers did not "really need a vaccine." Ex. F at 17:6-8.

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a post that speaks for itself. Quickwork denies the allegations to the extent they are

inconsistent with the full content of the post. Quickwork denies the remaining allegations of this paragraph in their entirety.

58.     Defendants have provided no scientific proof or studies to support these claims, just as they have provided no scientific proof or studies to back up their advertising about the efficacy of Vitamin D and zinc for preventing and treating COVID-19.

**Answer:**  Denied.

## II.   Defendants' Deceptive Marketing Has Already Misled Reasonable Consumers

### A.     Defendants Have Been Selling Their Vitamin D and Zinc Products for Months

59.     Each bottle of Wellness Warrior Vita D contains 30 softgels, which Defendants have sold for $24.95 per bottle plus $9.95 shipping and handling. Defendants also have offered several Vitamin D subscription plans, in most instances including one free bottle of Vitamin D with subscription enrollment.

**Answer:**  Quickwork admits that each bottle of Wellness Warrior Vita D contains 30 soft gels. Quickwork admits customers had three options to receive Wellness Warrior Vita D:  (a) a free bottle with a $9.95 shipping charge; (b) $24.95 per bottle plus $9.95 shipping and handling; and (c) a subscription plan. Quickwork further admits that in most cases the individuals who receive a bottle of Wellness Warrior Vita D do not continue with their subscription. Quickwork denies the remaining allegations of this paragraph in their entirety.

60.     Defendants first featured Vitamin D in an April 2020 video on the Nepute Facebook page and began promoting their free Vitamin D bottle offer in July 2020, again through the Nepute Facebook page videos.

**Answer:**  Quickwork admits that Dr. Nepute has been promoting and selling Vitamin D since at least 2006 on his social media page. Quickwork admits that in July 2020, Dr. Nepute

promoted free bottles of Vitamin D on his social media page, but consumers still had to pay the cost of shipping and handling. Quickwork denies the remaining allegations of this paragraph in their entirety.

61.      Each bottle of Wellness Warrior Zinc contains 60 tablets. Defendants have advertised an offer for a free bottle of zinc without a subscription and charge consumers $9.95 for shipping and handling. They also have advertised various subscription plans for zinc, which do not include a free bottle of the product. Subscription plans start at $24 per month for one bottle of zinc.

**Answer:** Quickwork admits that each bottle of Wellness Warrior Zinc contains 60 tablets. Quickwork admits a free bottle of zinc without a subscription was advertised and that consumers were charged $9.95 for shipping and handling. Quickwork admits it has advertised various subscription plans for zinc that do not include a free bottle of the product. Quickwork admits zinc subscription plans start at $24 per month for one bottle of zinc. Quickwork denies the remaining allegations of this paragraph in their entirety.

62.      Defendants' advertising has proven to be popular. Together, the Wellness Warrior and Common Sense Health Nation Facebook pages have over 100,000 followers.

**Answer:**  Quickwork admits that when combined, the Wellness Warrior and Common Sense Health Nation Facebook pages have over 100,000 followers. Quickwork denies the remaining allegations of this paragraph in their entirety.

63.      Upon information and belief, Defendants have earned a substantial amount of money from selling these and other Wellness Warrior Products.

**Answer:**  Quickwork can neither admit nor deny the allegations of this paragraph as "a substantial amount of money" is too subjective and vague to permit a fair answer. To the extent an answer is required, Quickwork denies the allegations of this paragraph in their entirety.

**B.      Consumers Believe Defendants' Deceptive Advertising**

64.      Dozens of posts on Defendants' own Facebook pages show that consumers have been buying Defendants' Vitamin D and zinc products with the belief that they prevent COVID-19 better than available vaccines. Nepute's videos have generated millions of consumer views. Examples of recent customer comments on the Wellness Warrior Facebook page, http://www.facebook.com/Wellnesswarrior.club/, include:

a. February 27, 2021 at 2:44 am, K.F.: "Been taking Wellness Warrior duo at least 7 months. No sickness here and living life without fear. Thank you so much Dr. Eric. Keep getting the truth out."

b. March 14, 2021 at 11:26 pm, L.S.: "I take 10,000 IU [of Vitamin D] each day . . . . I take 25 mg of zinc and upped that to 50 mg a day as my husband got covid and I got him to take it as well. But he didn't take it before he got sick. I never got sick living in the same house and breathing the same air. . . . NO gene therapy/fake vaccine."

c. March 22, 2021 at 1:47 pm, C.J.V.: "Just Ordered mine today. Dr. Eric thank you so much. I have been following you for a while and really appreciate all you do to inform us all."

**Answer:**  This paragraph selectively quotes from, paraphrases, and/or characterizes the contents of a written document that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full text of the document. Quickwork is without sufficient knowledge

or information to form a belief as to the truth of the allegation that consumers believe that Defendants' Vitamin D and zinc products prevent COVID-19 better than available vaccines and therefore denies these allegations. Quickwork denies the remaining allegations of this paragraph in their entirety.

      **C.**      **Defendants' Deceptive Health Claims About Their Products are Material**

      65.      Defendants deceptively advertise their Vitamin D and zinc products as treating or preventing COVID-19, and as superior to the current vaccines.

      **Answer:** Denied.

      66.      Such baseless claims of health benefits are material because, as indicated by the sample comments above, consumers believe Defendants' claims, and appear to be taking Defendants' products in lieu of other measures to prevent COVID-19, such as getting vaccinated, social distancing, and wearing a mask.

      **Answer:** This paragraph avers legal conclusions to which no response is required. To the extent a response is required, Quickwork denies the allegations. Quickwork is without sufficient knowledge or information to form a belief as to the truth of the allegation that consumers appear to be taking Defendants' products in lieu of other measures to prevent COVID-19 and therefore denies that allegation. Quickwork denies the remaining allegations of this paragraph in their entirety.

**III.**      **Defendants' Ongoing Conduct Threatens Imminent Harm to Consumers**

      67.      Defendants' advertising of their Vitamin D and zinc products pose significant risks to consumers who may believe or rely on these misrepresentations and deceptive claims. As noted above, Nepute's videos alone have been viewed millions of times, and Defendants amplify their deceptive advertising by posting videos and comments on multiple websites.

**Answer:** Denied.

68.         Ingesting massive amounts of Vitamin D and zinc, rather than foregoing the social distancing, masks, and vaccination recommended by public health experts, places consumers who rely on Defendants' claims at risk of contracting COVID-19.

**Answer:** Denied.

**IV.     Defendants Refuse To Cease Their Deceptive Advertising Despite Being on Notice**

69.         In May 2020, FTC staff sent Defendant Nepute a letter warning that his COVID-19 efficacy claims for another Vitamin C-based product were unsubstantiated and must cease. Ex. K. The warning letter also advised him to review claims for all his other products and to cease any claims not supported by competent and reliable scientific evidence. Defendant Nepute subsequently confirmed to FTC staff that he received that letter. Upon information and belief, Defendants seem to have dialed back some of their Vitamin C-related claims, but have ramped up their unsubstantiated claims regarding Vitamin D and zinc.

**Answer:**   Quickwork admits the FTC sent Dr. Nepute the referenced May 2020 letter. Further answering, Quickwork states the May 2020 warning letter:   (a) is not addressed to Quickwork; (b) does not name or otherwise reference Quickwork in any way; (c) does not identify any Coronavirus treatment or prevention claims made by Quickwork through its websites, social media, or otherwise; (d) concerns Vitamin C products and treatments that Quickwork did not then (and does not now) offer—indeed, at the time of the letter, Quickwork did not sell any vitamin products; (e) predates the passage of the COVID-19 Consumer Protection Act; and (f) fails to place Quickwork on notice that it was engaged in any allegedly deceptive practice or was in violation of either the FTC Act or the COVID-19 Consumer Protection Act. Quickwork also answers that this paragraph characterizes the contents of a letter that speaks for itself. Quickwork denies the

allegations to the extent they are inconsistent with the full text of the letter. Quickwork denies the remaining allegations of this paragraph in their entirety.

70.        On March 30, 2021, FTC staff sent counsel for Defendant Nepute a letter notifying him about the passage of the COVID-19 Consumer Protection Act. Ex. L-M.

**Answer:**  Quickwork admits the FTC sent counsel for Dr. Nepute the referenced March 30, 2021 letter. Quickwork denies it received the letter, which states the FTC "request[s] that you **provide a copy to your client, Dr. Eric Nepute, D.C.**" Doc. No. 1-18 (emphasis added). Further answering, Quickwork states the March 30, 2021 letter:  (a) is not addressed to Quickwork; (b) does not name or otherwise reference Quickwork in any way; and (c) fails to place Quickwork on notice that it was engaged in any allegedly deceptive practice or was in violation of either the FTC Act or the COVID-19 Consumer Protection Act. Quickwork also answers that this paragraph characterizes the contents of a letter that speaks for itself. Quickwork denies the allegations to the extent they are inconsistent with the full text of the letter. Quickwork denies the remaining allegations of this paragraph in their entirety.

71.        Based on the facts and violations of law alleged in this Complaint, the United States has reason to believe that Defendants are violating or are about to violate the FTC Act and the COVID-19 Consumer Protection Act.

**Answer:**  Denied.

## COUNT 1

### FTC Act Section 5(a) and Section 12 Violations

72.        Paragraphs 1 through 71 are incorporated as if set forth herein.

**Answer:**  Quickwork incorporates by reference its answers to Paragraphs 1 through 71 as if fully set forth herein.

73.     On numerous occasions in connection with the advertising, promotion, offering for sale, or sale of Wellness Warrior Products, including Defendants' claims set forth in Paragraphs 25-58, Defendants have represented, directly or indirectly, expressly or by implication, that Vitamin D and zinc, and by extension Wellness Warrior Products, treat or prevent COVID-19.

**Answer**:   Quickwork admits that it has advised consumers of an American Medical Association recognized protocol to reduce flulike symptoms through the use of supplementation and lifestyle changes. Quickwork denies the remaining allegations of this paragraph in their entirety.

74.     On numerous occasions in connection with the advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have represented, directly or indirectly, expressly or by implication, that Vitamin D and zinc, including Wellness Warrior Products, provide equal or better protection against COVID-19 than do currently available vaccines.

**Answer:**  Denied.

75.    In support of their advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have made numerous additional representations, directly or indirectly, expressly or by implication, including:

a.  That Vitamin D and zinc, including Wellness Warrior Products, are scientifically proven to treat or prevent COVID-19;

b.  That there are studies that show that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, have a 52 percent lower risk of dying of COVID-19 than people who are deficient;

  c. That scientific research concluded that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, are 54 percent less likely to catch COVID-19;

  d. That scientific publications indicate that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, are 77 percent less likely to catch COVID-19;

  e. That Vitamin D, including Wellness Warrior products containing Vitamin D, can block the COVID-19 spike protein from binding to the ACE2 receptor, thereby preventing infection; and

  f. That Vitamin D, including Wellness Warrior products containing Vitamin D, can prevent cytokine storm.

**Answer:** Quickwork admits that it has advised consumers of an American Medical Association recognized protocol to reduce flulike symptoms through the use of supplementation and lifestyle changes. This paragraph appears to characterize the contents of uncited website or social media posts or other documents. Those posts and documents speaks for themselves and Quickwork denies the allegations to the extent they are inconsistent with the full content or text of these documents. Quickwork denies the remaining allegations of this paragraph in their entirety.

76. Defendants' representations are false or misleading, or Defendants lacked a reasonable basis to make them.

**Answer:** Denied.

77. Defendants' representations are material to consumers' decisions.

**Answer:** Denied.

78.     Upon information and belief, Defendants continue to make similar misrepresentations regarding the efficacy of Vitamin D and zinc, including by extension Wellness Warrior Products, for treating or preventing COVID-19.

**Answer:** Denied.

79.     Defendants' false, misleading, or unsubstantiated representations regarding Vitamin D and zinc are deceptive acts or practices and false advertisements that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

**Answer:** Denied.

## COUNT 2

### COVID-19 Consumer Protection Act Violations

80.     Paragraphs 1 through 71 are incorporated as if set forth herein.

**Answer:** Quickwork incorporates by reference its answers to Paragraphs 1 through 71 as if fully set forth herein.

81.     In numerous instances since December 27, 2020, Defendants have made false, misleading, or unsubstantiated representations that Vitamin D and zinc, including Wellness Warrior Products, are effective for the treatment, cure, prevention, or mitigation of COVID-19.

**Answer:** Denied.

82.     In numerous instances since December 27, 2020, Defendants have made false, misleading, or unsubstantiated representations that Vitamin D and zinc, including Wellness Warrior Products, provide equal or better protection against COVID-19 than do currently available vaccines.

**Answer:** Denied.

83.     In support of their advertising, promotion, offering for sale, or sale of Wellness Warrior Products, Defendants have made numerous additional representations, directly or indirectly, expressly or by implication, relating to a causal connection between Vitamin D and zinc and the treatment, cure, prevention, mitigation, diagnosis, contraction, and lethality of COVID-19, including:

    a.  That Vitamin D and zinc, including Wellness Warrior Products, are scientifically proven to treat or prevent COVID-19;

    b.  That there are studies that show that people who have enough Vitamin D, including Wellness Warrior products containing Vitamin D, have a 52 percent lower risk of dying of COVID-19 than people who are deficient;

    c.  That scientific research concluded that people who have enough Vitamin D, Wellness Warrior products containing Vitamin D, are 54 percent less likely to catch COVID-19;

    d.  That scientific publications indicate that people who have enough Vitamin D, Wellness Warrior products containing Vitamin D, are 77 percent less likely to catch COVID-19;

    e.  That Vitamin D, including Wellness Warrior products containing Vitamin D, can block the COVID-19 spike protein from binding to the ACE2 receptor, thereby preventing infection; and

    f.  That Vitamin D, including Wellness Warrior products containing Vitamin D, can prevent cytokine storm.

**<u>Answer:</u>**   Quickwork admits that it has advised consumers of an American Medical Association recognized protocol to reduce flulike symptoms through the use of supplementation

and lifestyle changes. This paragraph appears to characterize the contents of uncited website or social media posts or other documents. Those posts and documents speaks for themselves and Quickwork denies the allegations to the extent they are inconsistent with the full content or text of these documents. Quickwork denies the remaining allegations of this paragraph in their entirety.

84.     Defendants' representations are false or misleading, or Defendants lacked a reasonable basis to make them.

**Answer:**  Denied.

85.     Defendants' representations are material to consumers' decisions.

**Answer:**  Denied.

86.     Defendants have been aware of the COVID-19 Consumer Protection Act since March 31, 2021 at the latest.

**Answer:**  Quickwork denies that it received the March 30, 2021 letter. Quickwork denies the remaining allegations of this paragraph in their entirety.

87.     Upon information and belief, Defendants continue to make similar misrepresentations regarding the efficacy of Vitamin D and zinc for treating or preventing COVID-19.

**Answer:**  Denied.

88.     These ongoing false, misleading, or unsubstantiated representations constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Answer:**  Denied.

89.     Therefore, these representations also constitute deceptive acts or practices in violation of Section 1401(b)(1) of the COVID-19 Consumer Protection Act.

**Answer:**  Denied.

90.    Each dissemination of an advertisement that makes deceptive COVID-19 related representations is a separate violation of the COVID-19 Consumer Protection Act subject to civil penalties.

**Answer:**   This paragraph avers legal conclusions to which no response is required. Quickwork further answers by stating the award of monetary civil penalties is the subject of a pending Motion to Dismiss (ECF No. 16; adopted by Quickwork at ECF No. 19). To the extent a response is required, Quickwork denies the allegations of this paragraph in its entirety.

**CONSUMER INJURY**

91.    Consumers are suffering, have suffered, and likely will continue to suffer substantial harm as a result of Defendants' violations of the FTC Act and the COVID-19 Consumer Protection Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

**Answer:**   Denied.

**AFFIRMATIVE AND OTHER DEFENSES**

Quickwork asserts the following affirmative defenses and other defenses without assuming the burden of proof for issues where the burden would ordinarily be upon Plaintiffs.

1.    Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to state a claim upon which relief can be granted.

2.    The FTC did not provide Quickwork with any notice that it was allegedly in violation of either the FTC Act or the COVID-19 Consumer Protection Act. The correspondence referenced in the Complaint were sent to Dr. Nepute and/or his counsel and: (a) were not addressed to Quickwork; (b) do not name or otherwise reference Quickwork in any way; (c) do not identify

any Coronavirus treatment or prevention claims made by Quickwork through its websites, social media, or otherwise; (d) concern Vitamin C products and treatments that Quickwork did not then (and does not now) offer; (e) for the May 2020 letter, predate the passage of the COVID-19 Consumer Protection Act; and (f) fail to place Quickwork on notice that it was engaged in any allegedly deceptive practice or was in violation of either the FTC Act or the COVID-19 Consumer Protection Act.

3.      The Court lacks subject matter jurisdiction, and Plaintiff fails to allege a ripe, justiciable controversy, due to Plaintiff's failure to pursue the mandatory pre-suit administrative process under the FTC Act prior to seeking monetary relief in this Court. *See AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1347-49 (2021).

4.      Plaintiff lacks statutory authority to obtain the requested relief because Section 13(b) does not authorize Plaintiff to directly obtain court ordered monetary relief. *See AMG,* 141 S. Ct. at 1347-49.

5.      Plaintiff lacks statutory authority to obtain relief under Section 5 of the FTC Act, U.S.C. § 45. Plaintiff has statutory authority to seek civil penalties and other monetary relief in this Court only if Plaintiff has already exhausted its administrative proceedings and obtained a final cease and desist order that has been violated by the claimed violator. *See AMG,* 141 S. Ct. at 1347-49.

5.      Plaintiff lacks statutory authority to obtain relief under Section 19 of the FTC Act, U.S.C. § 57b. Plaintiff has statutory authority to seek civil penalties and other monetary relief in this Court only if Plaintiff has already exhausted its administrative proceedings and obtained a final cease and desist order that has been violated by the claimed violator. *See AMG*, 141 S. Ct. at 1347-49.

6.     Plaintiff lacks statutory authority to obtain relief under Section 16 of the FTC Act, 15 U.S.C. § 56.

7.     Plaintiff lacks statutory authority to obtain relief under the COVID-19 Consumer Protection Act, Pub. L. No. 116-260, Title XIV, § 1401. Pursuant to the express language of the COVID-19 Act, Plaintiff can only enforce its provisions "in the same manner, by the same means, and with the same jurisdiction, powers, and duties as [provided by] the Federal Trade Commission Act." Pub. L. No. 116-260, Title XIV, § 1401(c)(1).

8.     Quickwork did not make claims likely to mislead the reasonable consuming public within the meaning of Sections 5 and 12 of the FTC Act and Section (b) of the COVID-19 Act. 15 U.S.C. §§ 45, 52; Pub. L. No. 116-260, Title XIV, § 1401.

9.     In the alternative, any allegedly false claims were not material because they would not have affected a reasonable consumer's decision to make a purchase.

10.    In the alternative, any alleged false claims were not advertisements within the meaning of Section 12 of the FTC Act, 15 U.S.C. § 52.

11.    At all relevant times, Quickwork acted in good faith.

12.    At all relevant times, Quickwork acted with a reasonable basis.

13.    At all relevant times, Quickwork acted with and possessed specific substantiation.

14.    At all relevant times, Quickwork acted with and possessed evidence sufficient to satisfy the relevant scientific community of the truth of any claims it may have made.

15.    Quickwork possessed a reasonable basis for his claims considering "the type of product," "the type of claim," "the benefit of a truthful claim," "the ease of developing substantiation for the claim," "the consequences of a false claim," and "the amount of

substantiation experts in the field would consider reasonable." *See POM Wonderful, LLC v. F.T.C.*, 777 F.3d 478, 490-91 (D.C. Cir. 2015).

16.    Plaintiff does not have a basis in statutory law to declare that allegedly unsubstantiated statements constitute deceptive acts or practices under 15 U.S.C. § 45.

17.    Quickwork did not violate a rule or order within the meaning of Section 19, 15 U.S.C. § 57b.

18.    Quickwork did not violate a rule or order within the meaning of Section 5(m), 15 U.S.C. § 45(m).

19.    Quickwork did not violate a rule or order within the meaning of the COVID-19 Act.

20.    To the extent Plaintiff alleges Quickwork violated a rule within the meaning of the COVID-19 Act, a violation of that Act cannot be treated as a violation of a rule promulgated under 15 U.S.C. § 57a because Section (c)(1) of the COVID-19 Act is unconstitutionally vague and provides no standards by which a person can determine what conduct is prohibited before being subject to massive monetary penalties under Section 5(m) of the FTC Act.

21.    In the alternative, with respect to an alleged rule violation within the meaning of Section 19, redress to consumers is not necessary and Plaintiff did not plead that redress to consumers was necessary within the meaning of Section 19(b).

22.    Plaintiff cannot recover exemplary or punitive damages under Section 19(b), 15 U.S.C. § 57b.

23.    In the alternative, with respect to an alleged rule violation within the meaning of Section 5(m), Quickwork did not have actual knowledge or fairly implied knowledge that its acts were prohibited by a rule promulgated under 15 U.S.C. § 57a. No rule has been promulgated that

would prohibit Quickwork's statements, and Plaintiff cited no rule prohibiting Quickwork's statements, either in the Complaint or in the exhibits filed therewith.

24.     In the alternative, with respect to an alleged rule violation within the meaning of Section 5(m), Quickwork did not have actual knowledge or fairly implied knowledge that its acts were unfair or deceptive.

25.     Quickwork had no actual knowledge or implied knowledge that its acts were unfair or deceptive or that they were prohibited by a rule promulgated under 15 U.S.C. § 57a.

26.     Plaintiff cannot obtain a permanent injunction in this case because this is not a "proper case" concerning routine fraud within the meaning of Section 13(b). This is the first case brought under the COVID-19 Consumer Protection Act and it raises novel issues that should be submitted to the agency's expertise. Permanent injunctions under Section 13(b) are reserved for cases where courts are applying well-established legal principles based on the FTC's adjudicative and subject matter expertise.

27.     Plaintiff cannot obtain a permanent injunction in this case because Plaintiff has not filed an administrative complaint as required under Section 13(b) of the FTC Act, which states that any injunction shall be dissolved within 20 days if an administrative complaint is not filed.

28.     Plaintiff cannot obtain a permanent injunction in this case because the authority provided to the FTC under the COVID-19 Act only persists during the "duration of a public health emergency declared pursuant to section 319 of the Public Health Service Act (42 U.S.C. 247d)," Pub. L. No. 116-260, Title XIV, § 1401(b) and a permanent injunction, by definition, would exceed the duration of this declaration.

29.     Plaintiff cannot obtain a permanent injunction in this case because Plaintiff does not satisfy the equitable principles:

    a.  Plaintiff does not identify any irreparable injury and no irreparable injury has occurred or would occur because there is no dispute that Quickwork's products are beneficial for a healthy immune system.

    b.  Legal remedies are adequate to compensate for any alleged injury to consumers or Plaintiff; specifically, consumer redress is available under appropriate circumstances under Section 19(b).

    c.  Balance of hardships demonstrates a remedy in equity is not warranted: Quickwork's products are beneficial for a healthy immune system, but those products cannot be provided if Quickwork is silenced.

30.    Plaintiff's claims are barred by the doctrine of waiver.

31.    In the alternative, to the extent that any illegal, deceptive, or unfair facts or practices occurred, such acts or practices were committed by other parties or third parties without Quickwork's knowledge or consent.

32.    Plaintiff's claims are defeated by the defense that Quickwork's statements were truthful.

33.    Plaintiff's claims are defeated by the defense of puffery.

34.    The imposition of penalties in this case in the absence of a showing of malicious intent would violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, especially when Quickwork did not even have knowledge of a rule prohibiting its conduct because no such rule exists.

35.    The retroactive imposition of penalties in this case under a theory of liability recognized after some or all of the alleged conduct occurred would violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution.

36.     Quickwork is entitled to all just and lawful offsets and credits against any damages (if any) to which Plaintiff may be entitled.

37.     Quickwork is entitled to apportion liability on a proportionate basis among all persons or entities that are liable, including any settling defendant. Additionally, or alternatively, Quickwork is entitled to a credit or setoff in the amount of any settlement(s) between Plaintiff and any other defendant in this case. Quickwork reserves the right to seek contribution against any persons or entities that are liable, including any settling defendant.

38.     Quickwork reserves the right to add additional affirmative defenses that may be revealed during discovery.

## JURY DEMAND

Quickwork demands a trial by jury on all counts.

*     *     *

Having fully answered, Quickwork respectfully requests that the Court deny all relief requested by Plaintiff, enter judgment in Quickwork's favor with respect to Counts 1 and 2, award Quickwork its fees and costs, and grant such other relief as this Court deems just and proper.

Dated:  September 3, 2021                    Respectfully submitted,

                                                              THOMPSON COBURN LLP

                                                By:  /s/ Jan Paul Miller
                                                    Jan Paul Miller #58112
                                                    One U.S. Bank Plaza
                                                    St. Louis, Missouri 63101
                                                    (314)552-6000
                                                    jmiller@thompsoncoburn.com

                                                *Attorneys for Quickwork, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2021, I filed the foregoing motion via the Court's CM/ECF system, effecting service upon all counsel of record.

_____/s/ Jan Paul Miller_____