UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:21CV437 RLW |
| v. | ) |
| | ) |
| ERIC ANTHONY NEPUTE and | ) |
| QUICKWORK LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Eric Anthony Nepute's Motion to Dismiss, or in the Alternative Strike, Plaintiff's Claim seeking Monetary Relief and for Sanctions (ECF No. 16) and Defendant Quickwork LLC's Motion to Dismiss (ECF No. 19). These matters are fully briefed and ready for disposition. As discussed herein, the Court will deny the Motions to Dismiss.

## BACKGROUND

Defendant Eric Anthony Nepute is a chiropractor and the owner of Defendant Quickwork LLC ("Quickwork"). (Complaint ("Compl."), ECF No. 1, ¶ 8). In June 2020, Quickwork began doing business under the trade name "Wellness Warrior." (Compl., ¶9). Wellness Warrior maintains a Facebook page, www.facebook.com/Wellnesswarrior.club., as well as several additional website through which customers can obtain Wellness Warrior products. (Compl., ¶ 9). Defendants sell nutritional supplements containing Vitamin D and zinc, among other products. Defendants advertised their Vitamin D and zinc products, including "Wellness

Warrior Vita D", "Wellness Warrior Zinc", and others, on social media, as being able to combat COVID-19.

On January 31, 2020, the Secretary of Health and Human Services declared that the 2019 novel coronavirus ("COVID-19") had caused a public health emergency. (Compl., ¶ 14).  On December 27, 2020, the President signed the COVID-19 Consumer Protection Act.  The COVID-19 Consumer Protection Act makes it unlawful, for the duration of the ongoing novel coronavirus (COVID-19) public health emergency, for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), that is associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19.  (Compl., ¶15 (citing COVID-19 Consumer Protection Act of the 2021 Consolidated Appropriations Act ("COVID-19 Act"), Pub. L. No. 116-260, Title XIV, § 1401(b)(1)).

Beginning in May 2020, Defendants began advertising Wellness Warrior Products as protecting against, preventing, or treatment COVID-19.  (Compl., ¶ 19).  Nepute posted videos and hyperlinks advertising his products.  In February 2021, Facebook removed Nepute's public figure Facebook page from its website. (Compl, ¶ 21)  On February 19, 2021, Nepute created a new Facebook page, Common Sense Health Nation, https://www.facebook.com/commonsensehealthnation/.  In March 2021, Defendants created a new website, Common Sense Health Live, https://www.commonsensehealth.live/.  The Common Sense Health Live website includes links to Wellness Warrior websites where consumers can buy Wellness Warrior products.  (Compl., ¶ 22).  Starting no later than June 2020, Defendants began advertising a protocol for customers to follow to protect against, prevent, or treat COVID-19.  This protocol instructs consumers to take substantial quantities of emulsified Vitamin D3

("Vitamin D") and zinc daily.  (Compl., ¶ 24).  There are no published studies that prove that Vitamin D protects against, treats, or prevents COVID-19.  (Compl, ¶ 27).  Some completed randomized clinical trials investigating the efficacy of Vitamin D in treating or preventing COVD-10 with Vitamin D either (i) showed no benefits to patients taking Vitamin D; or (ii) had flawed study designs and failed to conform to FDA guidelines for scientific studies investigating the efficacy of treatments for COVID-19.  (Compl., ¶ 19).

Defendants have sold and given away bottles of zinc and Vitamin D to consumers. (Compl., ¶¶ 59-63).  Generally, consumers have been satisfied with Defendants' products and given positive reviews.  (Compl., ¶ 64).

On April 15, 2021, Plaintiff filed a Complaint for Civil Penalties, Permanent Injunction, and other Relief (ECF No. 1; hereinafter "the Complaint") against Defendants.  On June 3, 2021 Defendant filed a Motion to Dismiss, or In the Alternative, to Strike, Plaintiff's Claims Seeking Monetary Relief and for Sanctions.

On June 3, 2021, Defendant Eric Nepute filed a Motion to Dismiss, or in the Alternative Strike, Plaintiff's Claims seeking Monetary Relief and for Sanctions (ECF No. 16).

## STANDARD OF REVIEW

The parties dispute whether Fed. R. Civ. P. 12(b)(1) or 12(b)(6) applies in this case. However, because Nepute has not filed affidavits or other documents, or otherwise contested any factual allegations, the standard of review is the same under either section.  That is, the parties and the Court restrict themselves to the face of the pleadings.  (ECF No. 18 at 7-8).  Because this dispute does not affect its decision, the Court does not resolve this dispute.  Nevertheless, the Court identifies the standards of review below.

1. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007)). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556). Several principles guide the Court in determining whether a complaint meets the plausibility standard. The court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678. "This tenet does not apply, however, to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). Rather, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

2. 12(b)(1)

Fed. R. of Civ. P. 12(b)(1) provides that a party may move to dismiss an action based on lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate when subject matter jurisdiction is successfully challenged on the face of the complaint or on the facts. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Because a Rule 12(b)(1) motion addresses "the trial

4

court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack" *Osborn*, 918 F.2d at 729.

A distinction, "often overlooked, [exists] between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction *in fact*, quite apart from any pleadings." *Walls v. Bd. of Regents of Se. Mo. State Univ.*, No. 1:09 CV 35 RWS, 2009 WL 2170176, at *1, (E.D. Mo. July 20, 2009), (emphasis added) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under rule 12(b)(6)." *Osborn*, 918 F.2d at 729. Under a factual attack, however, "no presumptive truthfulness attaches to the plaintiff's allegations," and the non-moving party does not have the benefit of Rule 12(b)(6) safeguards. *Osborn*, 918 F.2d at 730; *Pundmann v. United States Postal Serv.*, No. 4:17-CV-00297 NAB, 2017 WL 5171056, at *2 (E.D. Mo. Nov. 8, 2017).

## **DISCUSSION**

### A. Motion to Dismiss

Plaintiff alleges that Dr. Nepute made video-recorded statements concerning zinc's and Vitamin D's efficacy in preventing and treating COVID-19.  Plaintiff alleges that those statements constitute "unfair or deceptive acts or practices" within the meaning of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52, and section (b) of the COVID-19 Consumer

5

Protection Act, Pub. L. No. 116-260, Title XIV, § 1401(b)(1). Plaintiff's Complaint seeks, among other relief, monetary and civil penalties up to "$43,792 for each alleged violation of the COVID-19 Consumer Protection Act." (Compl., ¶ 17). Likewise, in its ad damnum, Plaintiff seeks monetary civil injunctive relief to prevent Defendants from advertising the supposed immune-enhancing features of Vitamin D and zine, attorneys' fees, and other relief. (Compl., at 24).

In the Complaint, Plaintiff cites Section 13(b) of the FTC Act in support of its request for relief. Two weeks after Plaintiff filed this action, the United States Supreme Court came out with an opinion, elucidating that the government cannot seek monetary relief without first engaging the defendant with administrative procedures, including cease and desist:[1]

> At the same time, to read § 13(b) to mean what it says, as authorizing injunctive but not monetary relief, produces a coherent enforcement scheme: The Commission may obtain monetary relief by first invoking its administrative procedures and then § 19's redress provisions (which include limitations). And the Commission may use § 13(b) to obtain injunctive relief while administrative proceedings are foreseen or in progress, or when it seeks only injunctive relief. By contrast, the Commission's broad reading would allow it to use § 13(b) as a substitute for § 5 and § 19. For the reasons we have just stated, that could not have been Congress' intent. Cf. *Whitman v. American Trucking Assns., Inc.,* 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) ("Congress ... does not ... hide elephants in mouseholes").

*AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1349 (2021) (hereinafter "*AMG*"). Defendants argue that *AMG* forecloses Plaintiff's request for monetary relief because Plaintiff has not obtained a cease and desist order concerning any of the actions alleged in this

---

[1] The Court elucidated the legal issue in that case was "Did Congress, by enacting § 13(b)'s words, "permanent injunction," grant the Commission authority to obtain monetary relief directly from courts, thereby effectively bypassing the process set forth in § 5 and § 19?" *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1347 (2021).

case, nor has Plaintiff pursued this action through FTC's administrative process.  (ECF No. 17 at 7).

Plaintiff's claim is brought under the COVID-19 Consumer Protection Act.  Under Section (c)(1) of the COVID-19 Consumer Protection Act, the FTC can only enforce its provisions " in the same manner, by the same means, and with the same jurisdiction, powers, and duties as [provided by] the Federal Trade Commission Act."  Pub. L. No. 116-260, Title XIV, § 1401(c)(1).  Defendants contend that, under its express terms, the COVID-19 Act does not create a monetary enforcement mechanism, except as provided for under the FTC Act.  Defendants argue that, under recent United States Supreme Court precedent, the Court must dismiss Plaintiff's claims for monetary relief because Plaintiff has not obtained a cease and desist order under the FTC Act, *AMG* at 1347, or under the COVID-19 Protection Act.

In its response, Plaintiff argues that "[a]n administrative cease-and-desist order is not a prerequisite for a government enforcement action seeking monetary relief for violating an FTC rule, such as the COVID-19 Consumer Protection Act.  (ECF No. 18 at 2 (citing FTC Act Section 5(m)(1)(A), 15 U.S.C. §45(m)(1)(A), and Sections 19(a)(1) and 19(b), 15 U.S.C. §57b(a)(1) and §57b(b)).  Plaintiff contends it is not seeking equitable monetary relief pursuant to 13(b), *i.e.*, the type of monetary relief that AMG concluded the FTC Act does not allow.  Rather, Plaintiff contends Defendants are liable for civil monetary penalties and consumer redress under Section 5(m)(1)(A) and (19) of the FTC Act.  (ECF No. 29).

Plaintiff pleaded that "[a] violation of Section (b)(1) of the COVID-19 Consumer Protection Act is treated as a violation of a rule defining an unfair or deceptive act or practice proscribed under Section 18(a)(1)(B) of the FTC Act, 15 U.S.C. § 57a(a)(1)(B)."  (Compl., ¶16 (citing COVID-19 Act, §1401(c)(1); *see also* ECF No. 18 at 3).  Plaintiff contends that it seeks

7

civil penalties and other consumer refund as remedies for Defendants' violations of the FTC Act and the COVID-19 Act.  Plaintiff argues that such civil penalties and other consumer refunds are explicitly authorized by FTC Act Sections 5(m)(1)(A), 19(a), and 19(b).  Plaintiff notes that Section 5(m)(1)(A) permits the government to seek civil penalties for violations of FTC rules:

> The Commission may commence a civil action **to recover a civil pe**nalty in a district court of the United States against any person [who] **violates any rule** under this subchapter respecting unfair or deceptive acts or practices . . . In such action, such person . . . shall be liable for a civil penalty. . . . .

15 U.S.C. §45(m)(1)(A) (emphasis added).  In turn, Section 19(a)(1) permits the government to "commence a civil action against [a] person . . . for relief under subsection (b)" wherever "any person **violates any rule** . . . respecting unfair or deceptive acts or practices." *Id*. §57b(a)(1) (emphasis added).  Likewise, subsection 19(b) authorizes the Court to grant relief "necessary to redress injury to consumers," including "the refund of money" and "rescission or reformation of contracts."  *Id*., §57b(b).  Based upon this authority, the Court holds that the plain language of the FTC Act authorizes the government's suit for civil penalties and consumer refunds for Defendants' alleged COVID-19 Act violations.

The Court holds that Plaintiff was not required to obtain a cease-and-desist order before seeking monetary relief for rule violations.  As noted by Plaintiff, Nepute conflates two different sections of Section 5, which provide for two different causes of action.  Section 5(m)(1)(A) authorizes the government  to commence a civil action to recover a civil penalty against rule violators.  15 U.S.C. §45(m)(1)(A).  Section 5(m)(1)(A) does not mention administrative cease-and-desist orders.  *Id*.  In contrast, Section 5(l) permits the government to seek civil penalties if the respondent in the administrative proceeding violates the FTC's cease-and-desist order.  *See* 15 U.S.C. §45(l).   Because the government adequately alleged COVID-19 Act violations, the

Court holds that the statute likewise authorizes the government to seek civil penalties and consumer refunds under the FTC Act §§ 5(m)(l)(A) and 19(a)(l).  Since *AMG* does not address civil penalties or consumer refund claims under §§ 5(m)(l)(A) and 19(a)(l) of the FTC Act, the Court holds Plaintiff was not required to obtain a cease and desist order in the first instance. Thus, the Court holds that Plaintiff's claim for civil penalties and consumer refunds are not barred by the holding in *AMG*.  The Court denies Defendants' Motion to Dismiss.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Eric Anthony Nepute's Motion to Dismiss, or in the Alternative Strike, Plaintiff's Claim seeking Monetary Relief and for Sanctions (ECF No. 16) and Defendant Quickwork LLC's Motion to Dismiss (ECF No. 19) is **DENIED**.

Dated this 8th day of December 2021.

                                                        */s/ Ronnie L. White*
                                                      **RONNIE L. WHITE**
                                                      **UNITED STATES DISTRICT JUDGE**