UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>ERIC ANTHONY NEPUTE,<br>individually, and as<br>Owner of Quickwork LLC; and<br><br>QUICKWORK LLC,<br>a limited liability company,<br>also d/b/a WELLNESS WARRIOR,<br><br>     Defendants. | Case No.: 4:21-cv-00437-RLW |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CIVIL PENALTIES**

  Dr. Eric Nepute and Quickwork provide health related educational information and nutritional supplement products as part of their mission "to make more people less sick." Among their supplement offerings are vitamin D and zinc, two nutrients that are essential to the proper functioning of the human body and immune system.

  Dr. Nepute has created countless hours of educational content regarding vitamin D and zinc. These videos are posted to various social media and other platforms operated by Defendants. Some of these educational videos explore the beneficial effects of vitamin D and zinc, including that vitamin supplementation can "boost" the immune system thereby improving the immune system's response to pathogens such as viruses, and the resulting symptomatology they cause, including the symptoms collectively known as COVID-19. The health benefits of vitamin D and

zinc, including to the human immune system, are widely recognized and accepted in the medical establishment. For example, Dr. Anthony Fauci has stated:

> If you are deficient in vitamin D, that does have an impact on your susceptibility to infection. *So I would not mind recommending, and I do it myself, taking vitamin D supplements*.

SOF ¶¶ 10-11 (emphasis added).

In a striking overreach of federal authority, Plaintiff brought this action claiming that the educational and other content regarding the beneficial effects of vitamin D and zinc offered by Defendants (the "Disputed Statements") violates both the Federal Trade Commission Act ("FTC Act") and the recently-enacted COVID-19 Consumer Protection Act ("COVID-19 Act"). Plaintiff did so without availing itself of the FTC administrative process or even providing any pre-suit notice to Quickwork that Plaintiff believed the content posted to its platforms violated either Act. Plaintiff erroneously contends that the Disputed Statements constituted advertisements for vitamin D and zinc products. While Plaintiff seeks injunctive and monetary relief under both statutes, it seeks civil penalties only under the COVID-19 Act.

In order to prevail on its claim for civil penalties under the COVID-19 Act, Plaintiff must ultimately demonstrate more than a simple violation of the Act by Defendants. It must also demonstrate Defendants' violation was done knowingly. Plaintiff cannot meet this burden for at least two reasons. First, nearly all the Disputed Statements were made prior to the COVID-19 Act's enactment or Defendants' knowledge of it, and thus cannot have been made with the requisite *mens rea*. Second, the undisputed facts demonstrate that upon receiving the Complaint, which was the first notice Defendants received of their alleged violation of the Act (and in Quickwork's case, the first it learned of the Act's very *existence*), Defendants acted expeditiously to remove the Disputed Statements from their social media and other platforms.

The lack of substantive merit in Plaintiff's claims will be shown at trial. But Plaintiff's specious demand for civil penalties under the COVID-19 Act cannot withstand the undisputed facts. There is no evidence to support a claim that Defendants knowingly violated the COVID-19 Act and, therefore, summary judgment should be granted in Defendants' favor on Plaintiff's claim for civil penalties.

### STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 852 (8th Cir. 2012) (citation omitted). A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, "the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute." *Tucker v. Ethicon, Inc.*, No. 4:20-CV-1543 RLW, 2021 WL 410058, at *2 (E.D. Mo. Feb. 5, 2021) (citation omitted). "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture*." Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020).

### ARGUMENT

**I.     To Recover Civil Penalties Plaintiff Must Show That Defendants Had Knowledge That Their Particular Statements Violated The COVID-19 Act.**

Plaintiff claims an entitlement to civil penalties under Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A). That section provides:

> The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) *with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule*.

*Id.* (emphasis added). To Defendants' knowledge, the FTC itself has not promulgated a rule regulating statements or advertisements related to COVID-19. However, the COVID-19 Act does regulate such statements and provides that violations of the act "shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 18(a)(1)(B) of the [FTC Act]." Pub. L. No. 116-260, 134 Stat. 1182, Division FF, Title XIV, § 1401(c). In short, Plaintiff intends to enforce the COVID-19 Act as though it were a rule under Section 5(m)(1)(A), and seeks civil penalties under that Section.

Such penalties may only be assessed upon a showing both that Defendants' acts violated the COVID-19 Act and that the acts were taken "with actual knowledge or knowledge fairly implied on the basis of objective circumstances" that they were deceptive and prohibited by the Act. *See* 15 U.S.C. § 45(m)(1)(A). Courts, including the Supreme Court, have interpreted this knowledge requirement as providing a mistake of law defense to the FTC Act's civil penalties provision. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010) ("[W]hen Congress has intended to provide a mistake-of-law defense to civil liability, it has often done so more explicitly than here. In particular, the FTC Act's administrative-penalty provisions—which, as noted above, Congress expressly incorporated into the FDCPA—apply only when a debt collector acts with "actual knowledge or knowledge fairly implied on the basis of objective circumstances" that its action was "prohibited by [the FDCPA]."); *see also United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) ("Traditionally, ignorance

4

of the law is no excuse. But § 45(m)(1)(A) includes a variation on an ignorance-of-the-law defense; a business can be liable only if it either knew that the act was unlawful or if it should have known the act was unlawful ('knowledge fairly implied')."). A defendant is only liable for civil penalties under the FTC Act where the government shows that, under the circumstances, a reasonable, prudent person would have known of the existence of the rule and that his or her acts or practices violated the rule. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996).

The assignment of civil penalties therefore requires a finding of two separate types of particularized knowledge: (1) knowledge of the *particular* rule sought to be enforced (in this case, the Covid-19 Act), and (2) knowledge that the defendant's *particular* conduct violated the rule. When interpreting a similar mistake-of-law defense in a companion section of the FTC Act, the Eight Circuit has strictly applied the particularity requirement, holding that a defendant lacked knowledge and could not be subject to civil penalties where the FTC failed to give notice that its *particular* practices had been determined to be unlawful. *See United States v. Hopkins Dodge, Inc.*, 849 F.2d 311, 314 (8th Cir. 1988).

In *Hopkins Dodge,* the government sought civil penalties under 15 U.S.C. 45(m)(1)(B) from a car dealership for violations of the Truth in Lending Act (which allowed for enforcement through "the same remedial procedures that are prescribed in 15 U.S.C. 45 for enforcement of the [FTC Act]"). 849 F.2d 311, 314 (8th Cir. 1988). Section 45(m)(1)(B) permits awards of civil penalties against defendants who engage in deceptive acts that have been the subject of an FTC cease and desist order (regardless of whether the order was directed at the defendant, or at an unrelated party). *Id.* Like Section 45(m)(1)(A), Section 45(m)(1)(B) requires a showing that a defendant acted with knowledge that its conduct was unlawful.[1] *Id.* Prior to pursing an action in

---

[1] The knowledge requirements of Section 45(m)(1)(B) differ from Section 45(m)(1)(A) in that the latter allows civil penalties where a defendant either has actual knowledge *or* "knowledge fairly implied on the

5

federal court, the FTC had provided the *Hopkins Dodge* defendant with copies of four prior FTC cease and desist orders. *Id.* However, the Eighth Circuit found that none of these orders addressed the particular conduct engaged in by the defendant and thus none satisfied the FTC's burden to show that the defendant acted with knowledge that it was violating a cease and desist order. *Id.*

> For though it is established that appellees were furnished copies of those decisions, and hence are chargeable with knowledge of what is contained in those decisions, they were thereby given no knowledge that the practices engaged in by appellees were unfair or deceptive if those decisions did not contain a determination with respect to such practices holding that they were unfair or deceptive and prohibited by the terms of a final cease and desist order. Hence the F.T.C. failed to establish that appellees were liable for a civil penalty.

*Id.* at 314-15. Because the FTC had failed to produce evidence of knowledge, the Eighth Circuit affirmed the lower court's grant of summary judgment to the defendant on the FTC's claim for civil penalties. *Id.*

**II.     No Civil Penalties Can Be Imposed Because Defendants Lack The Requisite Particularized Knowledge Or, At A Minimum, Cannot Be Subject To Penalties Prior To March 30 And April 16, 2021, Respectively.**

Plaintiff appears to seek civil penalties for violations of the COVID-19 Act beginning on December 27, 2020 (the date that the Act was enacted into law).[2] The undisputed facts, however, unequivocally demonstrate that Dr. Nepute and Quickwork did not even know of the COVID-19 Act's existence until March 30 and April 16, 2021, respectively. Moreover, neither Defendant was made aware that their conduct allegedly violated the COVID-19 Act until they received the Complaint (for Quickwork these two dates are identical as it did not learn of the Act until service of the Complaint). Upon receipt of the Complaint and the entry of the Consent Order, Quickwork

---

basis of objective circumstances." However, this addition does little to alter the core holding in *Hopkins Dodge*. Regardless of whether the knowledge is actual or implied, the government must show a defendant knew that the *particular* challenged conduct was unlawful.

[2] The COVID-19 Act became law on December 27, 2020. Prior to that date, no conduct by Defendants can be seen as a knowing violation of the Act. Defendants do not read Plaintiff's Complaint to seek civil penalties for such conduct. *See* Compl. at ¶¶ 81-82 (limited to statements made "since December 27, 2020").

quickly removed the content at issue from the Defendants' social media and other platforms. From these indisputable facts it is clear that Defendants: (1) never made statements with knowledge of the particular rule (*i.e.*, the COVID-19 Act) sought to be enforced and (2) never made statements with knowledge that their particular conduct violated the rule. *See Hopkins Dodge*, 849 F.2d at 314. Because Plaintiff cannot succeed on its claims for civil penalties absent a showing of knowledge, summary judgment is appropriate on those claims as outlined below.

The dates that Defendants acquired knowledge of the COVID-19 Act, and their alleged violations thereof, cannot seriously be disputed. On or about March 30, 2021, Dr. Nepute's counsel[3] received a letter from the FTC enclosing a copy of the COVID-19 Act (the "FTC Letter"). SOF ¶¶ 12-13, 15. Prior to this date, Dr. Nepute had no knowledge of the COVID-19 Act, much less that he had allegedly violated it:

> Q: Are you familiar with the COVID-19 Consumer Protection Act?
> A: Yes. […]
> A: Yeah, I found out about the COVID Consumer Protection Act when you all sent me your letter.
> Q: … When you say the letter, were you referring to the letter your received from the Federal Trade Commission on March 30, 202[1].[4]
> A: If that was the letter that – if that was the date of the letter when the federal government said that I was – alleged that I would – violated that and they dropped a lawsuit against me, that's when I found out about it.
> Q. Before that letter, had you ever heard of the COVID-19 Consumer Protection Act?
> A: No, sir.

*Id.* at ¶¶ 18-19. Notably, the FTC Letter did not accuse Dr. Nepute of violating the COVID-19 Act. *Id.* at ¶ 12, Ex. E. No notice of his alleged violations of the COVID-19 Act occurred until service of the Complaint.

---

[3] The FTC Letter was not sent to Dr. Nepute's litigation counsel in this case, who had not been retained at that time.
[4] In the original transcript, counsel erroneously stated "March 30, 2020," but the letter in question is dated March 30, 2021.

The FTC Letter was not addressed to Quickwork, nor did Quickwork receive a copy of the letter until it was served with the Complaint (which attached the letter as an exhibit). *Id*. at ¶¶ 12, 17. To the contrary, the FTC Letter was sent to Ms. Emily Park, an attorney representing Dr. Nepute personally. *Id*. at ¶ 12. The subject line of the letter reads "Eric Nepute, D.C. (Nepute Wellness Center)." *Id*. at ¶ 14. Neither Quickwork nor any of its products are ever mentioned in the letter. *Id*. at ¶ 16. Furthermore, the letter concluded by "request[ing] that you provide a copy *to your client, Dr. Eric Nepute, D.C.*" *Id*. at ¶ 12, Ex. E (emphasis added). The plain language of the letter demonstrates that the FTC intended to provide notice to Dr. Nepute and not Quickwork. *See id*. Until it received the Complaint on or about April 16, 2021, Quickwork was unaware of the March 30, 2021 letter, the existence of the COVID-19 Act, or that its conduct alleged violated the Act. *Id.* at ¶¶ 17, 21.

Quickwork is a small company. *Id.* at ¶ 1, 6. Quickwork does not possess an in-house legal department nor had it consulted with outside counsel about the COVID-19 Act prior to service of the Complaint. *Id.* at ¶ 22. Two of its three managers possess high school educations. *Id.* at ¶ 5. Its third manager is a highly accomplished doctor, but as shown above, was unaware of the COVID-19 Act. *Id.* at ¶¶ 7, 18-19. When he was made aware of the Act, he had no reason to believe Quickwork was the subject of the FTC's inquiry or was alleged to have violated that Act. In short, there is no evidence that Quickwork had any prior knowledge of the COVID-19 Act, which was enacted only months prior to the Complaint as a few pages of a two-thousand page omnibus spending packing, prior to service of the Complaint. Nor is there any evidence that it had any particularized knowledge that it had violated the Act until service of the Complaint on or about April 16, 2021.

Neither Quickwork nor Dr. Nepute believe that the Disputed Statements were unlawful in any way, much less violative of the COVID-19 Act, either when made or at any time thereafter. *Id.* at ¶ 25. However, out of an abundance of caution and out of respect for the FTC's request and the legal process, Defendants quickly began negotiating the entry of a consent order with Plaintiff and, upon entry of the Consent Order on May 5, 2021—little more than two weeks after service of the Complaint—promptly began removing the Disputed Statements from Defendants' social media and other platforms. *Id.* at ¶ 23-25. Though the Disputed Statements necessarily remained accessible for a short period of time after Defendants' receipt of the Complaint, this brief timespan is not evidence of knowing violations of the COVID-19 Act. Quite the opposite. By undertaking in good faith the comply with the FTC's demand and with the Consent Order, Defendants demonstrated their lack of intent to violate the COVID-19 Act or any other law. Furthermore, since the entry of the Consent Order, Plaintiff has not claimed that Quickwork has engaged in any conduct that would violate the Order's terms or that would lead to liability under the COVID-19 Act.[5]

Plaintiff has not—and cannot—produce any evidence that Quickwork had any knowledge of the COVID-19 Act, much less that its alleged conduct violated the Act, prior to service of the Complaint on April 16, 2021. Similarly, Dr. Nepute had no knowledge of the Action prior to on or about March 30, 2021, and no notice of his alleged violations of the Act until service of the Complaint. Absent specific evidence of such knowledge—which does not exist—Plaintiff has failed to carry its burden to show that Defendants can be liable for civil penalties prior to those dates. Furthermore, when provided notice of the COVID-19 Act and their alleged violations

---

[5] Plaintiff filed a Motion to Show Cause relating to certain statements Dr. Nepute made on a radio show. *See* ECF No. 50. For the reasons set forth in Quickwork's opposition thereto, those statements can neither be attributed to Quickwork nor result in liability to Quickwork under the COVID-19 Act. *See* ECF No. 55 and SOF ¶¶ 26-31.

thereof, Defendants promptly removed the Disputed Statements from the social media and other platforms.

Given these indisputable facts, Defendants seek summary on Plaintiff's claim for civil penalties as follows: (1) on all civil penalties claims against Dr. Nepute based on the Disputed Statements, but at a minimum, for any Disputed Statements dated on or before March 30, 2021, or that were removed in compliance with the Consent Order; (2) on all civil penalties claims against Quickwork based on the Disputed Statements, but at a minimum for any Disputed Statements dated on or before April 16, 2021, or that were removed in compliance with the Consent Order.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment on Civil Penalties should be granted.

Dated: September 2, 2022

McCARTHY, LEONARD & KAEMMERER, L.C.

By: /s/ S. Jay Dobbs  (with consent)
    Brian E. McGovern, #34677
    S. Jay Dobbs, #40859
    Bryan M. Kaemmerer, #52998
    825 Maryville Centre Drive, Ste. 300
    St. Louis, Missouri 63017
    bmcgovern@mlklaw.com
    jdobbs@mlklaw.com
    bkaemmerer@mlklaw.com

*Attorneys for Eric Anthony Nepute*

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Jan Paul Miller
    Jan Paul Miller #58112
    Mark Mattingly #56536
    One U.S. Bank Plaza
    St. Louis, Missouri 63101
    (314)552-6000
    jmiller@thompsoncoburn.com
    mmattingly@thompsoncoburn.com

*Attorneys for Quickwork, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 2, 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

      /s/ Jan Paul Miller