# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No.: 4:21-cv-00437 |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT OF LIABILITY FOR ▓▓▓▓▓ VIOLATIONS OF THE FEDERAL TRADE COMMISSION ACT AND ▓▓▓▓▓ VIOLATIONS OF THE COVID-19 CONSUMER PROTECTION ACT** |
| **ERIC ANTHONY NEPUTE**, individually, and as Owner of Quickwork LLC; and | |
| **QUICKWORK LLC**, a limited liability company, also d/b/a WELLNESS WARRIOR, | |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND....................................................................................... 1

    A.   Defendants' Wellness Warrior Marketing ........................................................... 1

    B.   Defendants' Marketing Platforms ........................................................................ 2

    C.   Defendants' Deceptive Claims............................................................................. 3

    D.   The Federal Trade Commission's Warnings........................................................ 5

    E.   The Scientific Evidence on Vitamin D, Zinc, and the COVID-19 Vaccines.................. 6

III.  LEGAL STANDARD ................................................................................................. 6

IV.   ARGUMENT .............................................................................................................. 7

    A.   Defendants' Publications Are "Advertisements" Under The FTC Act............................ 7

    B.   Defendants' Advertisements Are Misleading, False, and Unsubstantiated .................... 8

        1.   Defendants Misleadingly Claim Vitamin D and Zinc Provide Equal or Better Protection Against COVID-19 than Available Vaccines....................................................... 10

        2.   Defendants Misleadingly Claim that Zinc is Effective for Treating and Preventing COVID-19........................................................................................................... 11

    C.   Quickwork is Liable for Nepute's Deceptive Claims ..................................................... 12

    D.   Nepute is Individually Liable for Quickwork's Deceptive Claims................................. 13

    E.   Defendants Are Liable for Civil Penalties for ▉▉▉▉▉ Violations ........................... 14

V.    CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

CASES

*FTC v. Am. Screening, LLC,*
No. 4:20-CV-1021, 2022 WL 2752750 (E.D. Mo. July 14, 2022) .....................8, 9, 11, 13

*FTC v. Bay Area Bus. Council*
423 F.3d 627 (7th Cir. 2005) ..........................................................................13

*FTC v. Direct Mktg. Concepts, Inc.*
569 F. Supp. 2d 285 (D. Mass. 2008) ..............................................................9

*FTC v. Fleetcor Techs., Inc.*
No. 1:19-CV-5727, 2022 WL 3273286 (N.D. Ga. Aug. 9, 2022) ...............................9, 10

*FTC v. Five-Star Auto Club, Inc.*
97 F. Supp. 2d 502 (S.D.N.Y. 2000).................................................................12

*FTC. v. Johnson*
96 F. Supp. 3d 1110 (D. Nev. 2015) ................................................................9

*FTC v. Nat'l Urological Grp.*
645 F. Supp. 2d 1167 (N.D. Ga. 2008) ........................................................8, 10

*FTC v. Pantron I Corp.*
33 F.3d 1088, 1095 (9th Cir. 1994) ..............................................................8, 9

*FTC v. Pharmtech Rsch., Inc.*
576 F. Supp. 294, 300 (D.D.C. 1983) ..............................................................9

*FTC v. QT*
448 F. Supp. 2d 908, 960 (N.D. Ill. 2006) ..................................................10, 11

*FTC v. Stefanchik*
559 F.3d 924 (9th Cir. 2009). ........................................................................13

*FTC v. Stefanchik*
No. 04-CV-1852, 2007 WL 1058579 (W.D. Wash. Apr. 3, 2007)...........................12, 13

*FTC v. Golden Sunrise Nutraceutical, Inc.*
No. 1:20-cv-1060-DAD, 2020 WL 4501968 (E.D. Cal. Aug. 5, 2020) ...........................11

*Goodman v. FTC*
244 F.2d 584 (9th Cir. 1957) .........................................................................12

*Nat'l Comm'n On Egg Nutrition v. FTC*
    570 F.2d 157 (7th Cir. 1977) .................................................................7, 8

*POM Wonderful, LLC v. FTC*
    777 F.3d 478 (D.C. Cir. 2015) ...................................................................9

*Tull v. United States*
    481 U.S. 412 (1987)....................................................................................15

*United States v. Dish Network*
    954 F.3d 970 (7th Cir. 2020) ....................................................................14

*United States v. Nat'l Fin. Servs.*
    98 F.3d 131 (4th Cir. 1996) ...............................................................14, 15

*United States v. Reader's Digest*
    662 F.2d 955 (3d Cir. 1981)......................................................................14

*Youngblood v. Corizon*
    No. 1:19-CV-28, 2020 WL 6392919 (E.D. Mo. Nov. 2, 2020)..........................7


STATUTES

COVID-19 Consumer Protection Act
    Pub. L. No. 116-260, Title XIV, § 1401 ....................................................1
    Pub. L. No. 116-260, Title XIV, § 1401(b)(1)...........................................7

Federal Rules of Civil Procedure
    Fed. R. Civ. P. 56(a) .............................................................................6, 7

Federal Trade Commission Act
    15 U.S.C § 45(a) ..................................................................................1, 7
    15 U.S.C. § 45(m)............................................................................14, 15
    15 U.S.C. § 52.............................................................................1, 7, 14
    15 U.S.C. § 53(b)......................................................................................15
    15 U.S.C. § 55(a)........................................................................................9
    15 U.S.C. § 55(c)........................................................................................7


REGULATIONS

16 C.F.R. § 1.98(d) ...............................................................................14

## I.     INTRODUCTION

Defendants Eric Anthony Nepute and Quickwork LLC unlawfully exploited Americans' fears to turn a profit from the coronavirus pandemic. In a concerted effort to sell their "Wellness Warrior" supplements, Defendants repeatedly misled consumers by making unsubstantiated claims that their Zinc supplements prevent and treat COVID-19 and are scientifically proven to do so.[1] Defendants even claimed without substantiation that their Vitamin D3 ("Vitamin D") and Zinc supplements are more effective at treating and preventing COVID-19 than the available vaccines. Defendants' deceptive and misleading marketing claims are unlawful under Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 52, as well as the COVID-19 Consumer Protection Act ("COVID-19 Act"), Pub. L. No. 116-260, Title XIV, § 1401.

The material facts are undisputed. Defendants have known it is unlawful to make unsubstantiated COVID-19 claims since at least May 2020. Defendants nevertheless continue to deceptively market in defiance of the FTC Act and the COVID-19 Act. Defendants have undisputedly disseminated deceptive advertisements on at least ███████ occasions since July 2020, and on at least ██████ occasions since December 27, 2020, when the COVID-19 Act was signed into law. Therefore, the United States moves for summary judgment as to liability for ████████ violations of the FTC Act and █████████ violations of the COVID-19 Act.

## II.    FACTUAL BACKGROUND

### A.      Defendants' Wellness Warrior Marketing

Nepute, is a chiropractor residing in this District. Statement of Uncontroverted Material Facts ("SUF") ¶ 1. In early 2020, Nepute and others organized Quickwork LLC "for the purpose

---

[1] Defendants also claim that their Vitamin D supplements can prevent or treat COVID-19. While the United States intends to prove that these claims violate the FTC Act and COVID-19 Act at trial, they are not the subject of this motion.

of . . . the operation of a business venture involved in marketing, sale and distribution of vitamins and related products." SUF ¶¶ 2-3. Around the time of its formation, Quickwork designated Nepute as one of its Managers and authorized him "to carry out any and all of the objects and purposes of the Company," including marketing its products. SUF ¶¶ 4-6.

Since April 2020, Defendants have publicly marketed and sold supplements nationwide under the trade name "Wellness Warrior." SUF ¶¶ 7-8. Defendants brand their Vitamin D supplement as Wellness Warrior Vita D3 and Vita D, and their Zinc supplement as Wellness Warrior Zinc. SUF ¶¶ 9-10. Defendants also offer bundled products containing Vitamin D, Zinc, or both, including the Wellness Warrior Boost Pack, Immune Pack, and Patriot Pack. SUF ¶ 11.

## B.    Defendants' Marketing Platforms

Defendants have used several platforms to tout the purported benefits of Vitamin D and Zinc and promote Wellness Warrior supplements, including: (1) videos created by Nepute and posted on Defendants' social media and websites; (2) emails circulated to Wellness Warrior subscribers; and (3) radio shows hosted by Nepute. SUF ¶¶ 60-731.

Since at least July 2020, Nepute has created numerous lengthy monologue videos promoting Wellness Warrior Vitamin D and Zinc supplements, which Defendants post on Facebook pages and websites that they control. SUF ¶ 12-14. These pages include the Wellness Warrior, Common Sense Health, Nepute Wellness, and Nepute public figure Facebook pages. SUF ¶¶ 15-17. Sometimes, Nepute directly posts a video on Facebook by going live. SUF ¶ 18. At other times, he provides the video to Quickwork's Chief Marketing Officer for posting. SUF ¶ 19. Quickwork's team "cross-posts" certain of Nepute's videos so they appear across the company's pages and websites. SUF ¶ 20. Quickwork's team also "rebroadcasts" certain videos by reposting them on the same pages at later times in order to amplify their audience. SUF ¶ 21.

Since at least September 2020, Quickwork's team has sent emails to ███████████

███Wellness Warrior subscribers from the info@wellnesswarrior.club account, with the sender identified as "Dr. Eric Nepute." SUF ¶¶ 22-28. Quickwork's team uses Nepute's videos to create these emails and includes excerpts that "stood out," including excerpts about the purported benefits of Vitamin D and Zinc. SUF ¶ 29. Nepute oversees the team that sends Wellness Warrior emails, and where an email includes new content about Vitamin D or Zinc, Nepute reviews the content. SUF ¶ 30. Often, these emails refer subscribers to Nepute's videos. SUF ¶ 31. ████████████

████████████████████████████████████████████████████

███████████████████████████████████ SUF ¶ 32.

Finally, in September 2021, Nepute began hosting a radio show called "Real Talk with Dr. Eric Nepute" on the Missouri-based Real Talk Radio Network, which airs on KRTK 93.3 FM and affiliated radio stations. SUF ¶ 33; *see also* United States' Memorandum in Support of Motion for Order to Show Cause, ECF No. 51. That show can be watched live on Real Talk's Facebook page, and the second hour can be streamed on *www.brighteonradio.com*. SUF ¶ 34. Real Talk makes audio or video recordings available for some broadcasts on its website, its CloutHub page, and its Facebook page. SUF ¶ 35. Nepute has used the radio show to discuss, among other things, the purported benefits of Vitamin D and Zinc, and during commercial breaks, the show has aired a Wellness Warrior advertisement recorded by Nepute. SUF ¶¶ 36-37.

Regardless of the platform, Quickwork has always tasked Nepute alone with ensuring scientific product claims are accurate. SUF ¶ 38.

## C.     Defendants' Deceptive Claims

Across these multiple platforms, the message that Defendants disseminate is consistent. While promoting the purchase and use of Wellness Warrior supplements, they expressly claim and clearly imply, among other messages, that: (1) Vitamin D and Zinc are more effective at treating or preventing COVID-19 than the currently available vaccines, *see* SUF ¶¶ 60-490; and (2) Zinc

is effective at preventing and treating COVID-19, *see* SUF ¶¶ 491-731. As detailed in the SUF, Defendants expressly or clearly implied these claims on countless occasions—often several times within a single publication—and they disseminated these claims on millions of occasions to the people who viewed their videos, emails, and Nepute's radio show. *See generally* SUF ¶¶ 60-731.

Alongside these claims, Defendants direct consumers to their websites—such as *freevitamindeals.com*—where they can obtain one "free" bottle of Wellness Warrior Vitamin D and/or Zinc if they pay the cost of shipping. SUF ¶¶ 14, 24, 36-37. On these websites, consumers can purchase additional bottles of Vitamin D and/or Zinc and sign up for a supplement subscription while ordering their "free" products. SUF ¶ 39. Defendants have sold ███████████████ of Wellness Warrior products, and Quickwork has distributed ██████████ to its members, which includes a limited liability company that is wholly owned by Nepute. SUF ¶¶ 40-43.

As one example, an April 8, 2021 video on Defendants' Common Sense Health Facebook page titled "Get Your Free D3 and Zinc Now" contains a variety of claims concerning Vitamin D, Zinc, and the COVID-19 vaccines, including:

> You need to take vitamin D every single day. They also don't want you to know that vitamin D is not really even a vitamin. It's a pro-hormone. It helps balance all your vitamins, minerals, nutrients, and all that kind of stuff. (Holding up product bottle.) They want you to line up for a vaccine that has no safety and no efficacy to it. That's the truth. That's what they want you to do. . . .

> (Holding up product bottle). And then zinc, why is zinc such a big deal? Zinc, zinc, zinc stops viruses from proliferating. They say that there's no evidence. Go to the Journal of Pathogen 2006, 2010, and 2016. It's all in there, you guys. It talks about how zinc and zinc iontophors can stop the proliferation of arterial viruses and COVID ninet -- or COVID -- coronaviruses. Remember, here's the deal, SARS-CoV-2 is the infection. SARS-CoV-2 is the infection. COVID-19 is the disease caused by SARS-CoV-2. The disease means you have to have symptoms. You must have symptoms. Okay? If you don't have symptoms, you don't have the disease. Do you understand what I'm saying? SARS-CoV-2, okay, is the infection virus that can be blocked. You can block viral absorbability with vitamin D3. (Holding up product bottle.) It's been proven again and again and again. . . .

They don't want you to know that vitamin D blocks viruses from being absorbed in the body. It's an ACE-2 receptor blocker. And they also don't want you to know that zinc stops viruses from multiplying. You guys, please hit that share button and share this with people. But moreover than that, I want you to go to freevitamindeals.com. That's freevitamindeals.com. So that I can really tick off these fact checkers (holding up product bottles), I want every man, woman, and child to get these for free. I'm going to give them to you for free, okay? It's what I call my Patriot Pack. So in my Patriot Pack, I'm giving away a free bottle of D3, a free bottle of zinc. All you got to do is pay shipping and handling, okay? . . .

If you go to -- go to my site, go to freevitamindeals.com, Stella. That's freevitamindeals.com. You can register for that pack, that Patriot Pack, which has two bottles. (Holding up product bottles.) I give you two bottles. One of D3 and one of zinc. . . .

SUF ¶¶ 132-43. This video was viewed at least 28,000 times, and was available to the public at least until April 15, 2021. SUF ¶¶ 144-45. Defendants made similar claims in at least 64 videos, emails, and radio shows, which were together viewed at least ▮▮▮▮▮▮ times. SUF ¶¶ 60-731.

### D.  The Federal Trade Commission's Warnings

In May 2020, the FTC sent a letter to Nepute at info@wellnesswarrior.club, indicating it had reviewed certain Facebook pages, including the Nepute public figure page, and found advertisements related to Vitamin D supplements and other products. SUF ¶ 44. The FTC's letter stated that, based on its review of these Facebook pages, Nepute was "unlawfully advertising that certain products or services treat or prevent" COVID-19. SUF ¶ 45. The FTC warned:

It is unlawful under the FTC Act, 15 U.S.C. § 41 et seq., to advertise that a product or service can prevent, treat, or cure human disease unless you possess competent and reliable scientific evidence, including, when appropriate, well-controlled human clinical studies, substantiating that the claims are true at the time they are made. For COVID-19, no such study is currently known to exist for the products and services identified above. Thus, any coronavirus-related prevention claims regarding such services are not supported by competent and reliable scientific evidence. You must immediately cease making all such claims.

SUF ¶ 46. On May 29, 2020, Nepute sent an email to the FTC stating that he had advised his marketing team of the warning and would "correct any violations." SUF ¶ 47. In addition to responding to the FTC, Nepute also held a call with Quickwork's other Managers to discuss the

warning. SUF ¶ 48. Quickwork's other managers asked whether Nepute wanted to remove a video that FTC referenced, but Nepute refused to do so. SUF ¶ 49.

On December 27, 2020, Congress enacted the COVID-19 Act. And on March 30, 2021, the FTC sent a copy of the COVID-19 Act to Nepute's attorney, informing him the Act "provides that marketers who make deceptive claims about the treatment, cure, prevention, or mitigation of COVID-19 are subject to a civil penalty[.]" SUF ¶ 50. Nepute's attorney provided a copy to him. SUF ¶ 51. Nevertheless, Defendants did not remove any of their videos until after the United States filed its Complaint on April 15, 2021. SUF ¶ 52. Even after that date, Defendants disseminated additional claims relating to Vitamin D, Zinc, and COVID-19. *See, e.g.,* SUF ¶¶ 119-31.

###### E.     The Scientific Evidence on Vitamin D, Zinc, and the COVID-19 Vaccines

The current COVID-19 vaccines were approved for sale only after extensive, properly designed, triple-blinded randomized controlled trials demonstrated their effectiveness in preventing COVID-19. SUF ¶ 53. None of Defendants' experts opine that Vitamin D or Zinc can prevent or treat COVID-19 more effectively than the vaccines. SUF ¶¶ 54-55. Simply put, there is no competent and reliable scientific evidence that Vitamin D or Zinc can prevent or treat COVID-19 more effectively than these vaccines. SUF ¶ 56.

Nor is there competent and reliable evidence that Zinc can prevent or treat COVID-19. To support claims that Zinc can prevent or treat COVID-19, Defendants offer the expert testimony of Dr. Christina Parks, currently a middle- and high-school science teacher, and Nepute himself. SUF ¶¶ 57-58. As detailed in the accompanying *Daubert* motion, the Court should exclude such testimony from both because (1) they are unqualified to give it, and (2) their opinions are not based on a reliable methodology that will assist the finder of fact. SUF ¶ 59.

### III.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). After the movant meets their initial burden, "the non-moving party may not rest on

the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts

showing that a genuine issue of material fact exists." *Youngblood v. Corizon*, No. 1:19-CV-28,

2020 WL 6392919, at *3 (E.D. Mo. Nov. 2, 2020) (White, J.) (citation omitted). The non-movant

"must do more than simply show that there is some metaphysical doubt as to the material facts."

*Id.* (citation omitted). Instead, the non-movant must point to "evidence [that] is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted).

## IV.    ARGUMENT

The Court should grant the United States' Motion for Partial Summary Judgment because

Defendants unsubstantiated COVID-19 treatment and prevention claims are undisputedly

deceptive and unlawful. Sections 5 and 12 of the FTC Act and the COVID-19 Act prohibit

deceptive advertising associated with the treatment, cure, or prevention of COVID-19. Section 5

proscribes all "deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Section

12 prohibits as deceptive the dissemination of a "false advertisement" "for the purpose of inducing,

or which is likely to induce, directly or indirectly the purchase of . . . drugs." *Id.* § 52. By promoting

their supplements for use in treating or preventing COVID-19, Defendants render their products

"drugs." *See* 15 U.S.C. § 55(c); *infra* Part IV.B. And the COVID-19 Act prohibits deception

"associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19." Pub. L.

No. 116-260, Title XIV, § 1401(b)(1).

### A.    Defendants' Publications Are "Advertisements" Under The FTC Act

Under Section 12 of the FTC Act, an "advertisement" is a publication that has the

"tendency or capability to induce the sale of [a] product." *Nat'l Comm'n On Egg Nutrition v. FTC*,

570 F.2d 157, 163 (7th Cir. 1977); *see* 15 U.S.C. § 52(a) (describing an "advertisement" as that

"which is likely to induce, directly or indirectly the purchase" of a good). "Publications designed to convey the point that consumption of a particular product [will convey a health benefit] are clearly likely to induce the purchase of that product." *Egg Nutrition*, 570 F.2d at 163. And the fact that a publication purports to be serving the "public interest" though "selected quotations" of science "does not alter the commercial character of the publication." *Id.* If anything, the misleading nature of health claims is "enhanced by casting them in [such a] guise." *Id.*

Defendants' publications—whether in the form of video broadcasts, subscriber emails, or radio shows—are plainly "advertisements" under Section 12. Quickwork was formed "for the purpose of . . . marketing, sale and distribution of vitamins and related products." SUF ¶ 3. To that end, Defendants use their platforms to proclaim the purported benefits of Vitamin D and Zinc. SUF ¶¶ 13, 29, 36. Alongside their claims, Defendants provide consumers with websites where they can obtain a "free" bottle of Vitamin D and Zinc and purchase additional bottles. SUF ¶ 39. The fact that Defendants invoke science and purport to act in the public interest does not change the fact their publications are likely to cause consumers to visit their websites and purchase their products. Thus, there can be no dispute that Defendants' publications are advertisements.

### B.    Defendants' Advertisements Are Misleading, False, and Unsubstantiated

Under the FTC Act and the COVID-19 Act, Defendants are liable for deceptive COVID-19 advertising for any (1) "representation, omission, or practice" (2) that "is likely to mislead consumers acting reasonably under the circumstances," and (3) "is material." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (citation omitted); *see FTC v. Am. Screening, LLC*, No. 4:20-CV-1021, 2022 WL 2752750, at *7 (E.D. Mo. July 14, 2022) (White, J.).

First, "[w]hen assessing the meaning and representations conveyed by an advertisement, the court must look to the advertisement's overall, net impression rather than the literal truth or falsity of the words in the advertisement." *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167,

1189 (N.D. Ga. 2008), *aff'd,* 356 F. App'x 358 (11th Cir. 2009). If an ad "(1) expressly states or (2) clearly and conspicuously implies a claim, 'the court need not look to extrinsic evidence to ascertain whether the advertisement made the claim.'" *FTC v. Fleetcor Techs., Inc.*, No. 1:19-CV-5727, 2022 WL 3273286, at *6 (N.D. Ga. Aug. 9, 2022) (citation omitted). Where an ad is amenable to more than one interpretation, it is deceptive if "at least a significant minority of reasonable consumers" would "likely" interpret the ad as making the misleading claim. *See POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015) (citation omitted).

Second, to establish that a representation is likely to mislead, the United States may proceed under a "falsity theory," a "reasonable basis theory," or both. *Pantron I*, 33 F.3d at 1096. Under a falsity theory, an "advertisement may be false by either misstating a fact or failing to disclose a material fact." *FTC v. Pharmtech Rsch., Inc.*, 576 F. Supp. 294, 300 (D.D.C. 1983); *see* 15 U.S.C. § 55(a) (explaining an ad is "false" if it "fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the commodity"). Under a reasonable basis theory, the United States must show that an advertiser lacked sufficient "substantiation for the representation prior to making it in an advertisement." *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 298 (D. Mass. 2008), *aff'd,* 624 F.3d 1 (1st Cir. 2010); *accord FTC. v. Johnson*, 96 F. Supp. 3d 1110, 1150 (D. Nev. 2015). Regardless of the theory it elects, the United States need not "prove that customers were actually deceived," nor that Defendants "intended to deceive customers." *Fleetcor*, 2022 WL 3273286, at *6.

Third and finally, a representation or omission is "material if it involves information likely to affect a customer's decision to purchase a particular product or service." *Am. Screening*, 2022 WL 2752750, at *7 (citation omitted). "Express or clearly implied representations used to induce the purchase of a particular product or service are presumptively material." *Fleetcor*, 2022 WL

9

3273286, at *7 (citation omitted). So are claims that "significantly involve health, safety, or other issues that would concern reasonable consumers." *FTC v. QT*, 448 F. Supp. 2d 908, 960 (N.D. Ill. 2006) (citation omitted); *Nat'l Urological Grp.*, 645 F. Supp. 2d at 1190.

> 1. **Defendants Misleadingly Claim Vitamin D and Zinc Provide Equal or Better Protection Against COVID-19 than Available Vaccines**

On countless occasions, the net impression of Defendants' express and implied claims is that Vitamin D and Zinc provide equal or better protection against COVID-19 than the vaccines. For example, in the April 8, 2021 video, which has at least 28,000 views, Nepute claims: "They want you to line up for a vaccine that has no safety and no efficacy to it. That's the truth. That's what they want you to do." SUF ¶ 140.b. In the same video, Nepute extols the benefits of Zinc to treat COVID-19: "Zinc, zinc, zinc stops viruses from proliferating . . . zinc and zinc iontophors can stop the proliferation of arterial viruses and COVID ninet – or COVID – coronaviruses." SUF ¶ 141.c. Nepute also lauds Vitamin D's ability to treat COVID-19: "SARS-CoV-2, okay, is the infection virus that can be blocked. You can block viral absorbability with vitamin D3." SUF ¶ 141.c. Finally, Nepute uses the video to encourage viewers to visit *freevitamindeals.com*, where they can purchase Wellness Warrior Vitamin D and Zinc supplements. SUF ¶ 138.

These claims are likely to mislead consumers. It is indisputable that at least a significant minority of consumers would likely interpret this video ad as expressly claiming—or clearly implying—that Vitamin D and Zinc are more effective at treating and/or preventing COVID-19 than the vaccines. As detailed in the SUF, at least a significant minority of consumers would likewise interpret similar claims in other ads as making the same representation. *See, e.g.*, SUF ¶ 68.a ("zinc doesn't allow the virus to continue to proliferate. So it actually works better than[] any vaccine and you don't really need a vaccine."); SUF ¶¶ 90-91 ("There hasn't been one damn thing else that's shown the benefits of – of – of preventing COVID-19 except for vitamin D3 . . . Did

10

you know the vaccine doesn't stop the prevention of the diseases"); *see generally* SUF ¶¶ 60-490.

There is also no genuine dispute that Defendants lack any reasonable basis to support these claims. Defendants have not, and cannot, proffer ***any*** evidence showing that Vitamin D or Zinc provide equal or better protection than the vaccines. Defendants' experts declined to offer that opinion. SUF ¶¶ 54-56. And Quickwork simply relied on Nepute to ensure its claims are accurate. SUF ¶ 38. Accordingly, no reasonable jury could find that Defendants have a reasonable basis to support these comparative vaccine claims.

Finally, Defendants cannot genuinely dispute that these claims are material. Express claims, clearly implied claims, and health claims are presumptively material. *See QT*, 448 F. Supp. 2d at 960. This is especially true during a global pandemic, where Americans have sought to take appropriate precautions to protect their wellbeing. *Accord Am. Screening*, 2022 WL 2752750, at *8 (finding deceptive claims promising available PPE "during a global pandemic" to be material); *FTC* v. *Golden Sunrise Nutraceutical, Inc.*, No. 1:20-cv-1060-DAD, 2020 WL 4501968, at *7 (E.D. Cal. Aug. 5, 2020) (claims that nutritional supplement product effectively treated COVID-19 "express and relate to consumer health" and are "clearly material"). Thus, any reasonable jury would find that Defendants' vaccine claims are deceptive and unlawful.

### 2.     Defendants Misleadingly Claim that Zinc is Effective for Treating and Preventing COVID-19

Defendants have also expressly claimed or clearly implied, without substantiation, that Zinc is able to treat and/or prevent COVID-19. As noted previously, in Defendants' April 8, 2021 video, Nepute asserted: "zinc stops viruses from proliferating . . . zinc and zinc iontophers can stop the proliferation of arterial viruses and . . . coronaviruses." SUF ¶ 141.c. It is indisputable that a significant minority of consumers would interpret this video ad as expressly claiming—or clearly implying—that Zinc is effective at treating and/or preventing COVID-19. As detailed in the SUF,

consumers would reach the same conclusion for similar statements appearing in Defendants' other ads. *See, e.g.*, SUF ¶ 68.a ("zinc doesn't allow the virus to continue to proliferate"); SUF ¶ 78.j ("zinc stops the virus from proliferating"); SUF ¶ 90.b ("you have to have zinc in your system because zinc stops the virus from regenerating and regrowing"); *see generally* SUF ¶ 491-731.

Defendants lack reasonable substantiation for all their Zinc claims. Defendants' sole evidence that Zinc is effective at treating and preventing COVID-19 stems from the expert testimony of Dr. Parks and Nepute interpreting certain scientific studies. But, as explained in the United States' accompanying *Daubert* motion, Dr. Parks and Nepute are unqualified to testify about the therapeutic benefits of Zinc and, in any event, failed to provide a reliable methodology that would assist the finder of fact. Finally, because these express and clearly implied Zinc claims relate to consumer health, they are presumptively material. In sum, any reasonable jury would find Defendants' claims are deceptive and unlawful.

### C.   Quickwork is Liable for Nepute's Deceptive Claims

Under the FTC Act, "a principal is liable for misrepresentations made by his/her agents (i.e., those with actual or apparent authority to make such representations) . . . ." *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 527 (S.D.N.Y. 2000). This is true "regardless of any efforts of the principal to prevent such misrepresentations." *FTC v. Stefanchik*, No. 04-CV-1852, 2007 WL 1058579, at *6 (W.D. Wash. Apr. 3, 2007), *aff'd,* 559 F.3d 924 (9th Cir. 2009). Otherwise, companies could "hold out to the public [its] salesmen as its representatives [and] reap the fruits from their acts and doings without incurring such liabilities as attach thereto." *Goodman v. FTC*, 244 F.2d 584, 592 (9th Cir. 1957) (citation omitted).

There is no genuine dispute that Nepute had actual or apparent authority to market and sell Quickwork's supplements. Since its formation, Quickwork has authorized Nepute to "to carry out any and all of the objects and purposes of the Company," including the "marketing, sale and

distribution of vitamins." SUF ¶ 5. Quickwork also tasked Nepute with creating content and monitoring claims made in connection with Quickwork products. SUF ¶ 12, 30, 38. So authorized, Nepute disseminated countless ads that extol the benefits of Vitamin D and Zinc and direct the public to websites where they can purchase Wellness Warrior supplements. SUF ¶ 12; *see also* ¶¶ 60-731. Nepute acknowledged he was authorized to market products for Quickwork. SUF ¶ 6. On this record, any reasonable factfinder would conclude that all of Nepute's deceptive claims were made with actual or apparent authority from Quickwork. *See Stefanchik*, 2007 WL 1058579, at *6.

###### D.    Nepute is Individually Liable for Quickwork's Deceptive Claims

An individual is liable for corporate violations of the FTC Act if he (1) "either participated directly in the deceptive acts or practices or had the authority to control them" and (2) "either knew or should have known about the deceptive practices." *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 636 (7th Cir. 2005). Knowledge is proven "with evidence that the individuals had 'actual knowledge of the material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of high probability of fraud along with an intentional avoidance of the truth.'" *Id.* (citation omitted); *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009).

Nepute participates in and/or has the ability to control all of Quickwork's unlawful ads. Quickwork has always tasked Nepute with ensuring all its product claims are accurate. Nepute personally makes the allegedly unlawful statements used in his videos and radio shows. SUF ¶ 12, 33. Content that Quickwork sends via email is typically based on Nepute's videos, and Nepute oversees the team that sends those emails and reviews any new content that is not from his videos. SUF ¶ 30. Considering the extent of Nepute's control, no reasonable factfinder could conclude he was unaware and unable to control Quickwork's deceptive advertising. Nepute is thus liable for Quickwork's violations and for any civil penalties award. *See American Screening*, 2022 WL 2752750, at *9; *Stefanchik*, 559 F.3d at 931.

**E.     Defendants Are Liable for Civil Penalties for ▮▮▮▮▮▮ Violations**

Section 5(m)(1)(A) of the FTC Act states that a defendant "shall be liable for a civil penalty of not more than [$46,517] for each violation" of an FTC rule "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A); *see* 16 C.F.R. § 1.98(d) (adjusting the monetary cap). The COVID-19 Act is an FTC rule under Section 5(m)(1)(A). *See* Op. Denying Motion to Dismiss, ECF No. 47. Each dissemination of a deceptive ad is a separate violation under the FTC and COVID-19 Acts. 15 U.S.C. § 52(a) ("It shall be unlawful . . . to *disseminate*, or *cause to be disseminated*, any false advertisement"); *United States v. Dish Network*, 954 F.3d 970, 976 (7th Cir. 2020) (holding "each [unlawful] call" was a separate violation under Section 5(m)(1)(A) even though the calls resulted from a larger failure to "coordinate the do-not-call lists"); *United States v. Reader's Digest*, 662 F.2d 955, 966 (3d Cir. 1981) ("each letter included as part of mass mailing constitutes a separate violation" of FTC order).

For civil penalties, the knowledge inquiry "is based on objective factors." *United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996). There is no requirement that Defendants received "actual notice that the precise language they were using violated [an FTC rule]," *Id.* Rather, a "defendant is responsible where a reasonable person under the circumstances would have known of the existence of the provision [here, the COVID-19 Act] and that the action charged [here, deceptive advertising of COVID-19 therapeutics] violated the provision." *Id.*

There is no dispute that the FTC warned Defendants in May 2020 that the FTC Act prohibits them from making false and unsubstantiated COVID-19 claims. SUF ¶¶ 44-49. Still, Defendants continued to publish such claims. *See, e.g.,* SUF ¶¶ 119-31. Given Defendants' disregard for the FTC's prior warnings and their insistence on violating the law, any reasonable jury would find that Defendants should have known that their COVID-19-related conduct was

prohibited when the COVID-19 Act became law on December 27, 2020—and at the very latest,
when Nepute's attorney received a copy of the Act on March 30, 2021. SUF ¶¶ 50-51; *see Nat'l*
*Fin. Servs.*, 98 F.3d at 139 (affirming summary judgment of civil penalties where it was
"undisputed that the defendants were aware of the relevant provisions of the [FTC rule] and had
extensive interaction with the FTC concerning how to comply").

As detailed in the SUF, the United States has identified 39 ads in which Defendants
expressly claimed or clearly implied that Vitamin D or Zinc could more effectively treat or prevent
COVID-19 than the available vaccines; and 25 additional ads in which Defendants expressly
claimed or clearly implied that zinc could effectively treat or prevent COVID-19. Collectively,
those advertisements were disseminated at least ███████ times, including at least ███████
times since the COVID-19 Act was enacted and at least ██████ times since FTC sent the March
2021 FTC Letter. There can be no genuine dispute that Defendants are liable for civil penalties for
these violations.[2]

## V.  CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to grant its motion
and enter partial summary judgment of liability for ██████ violations of the FTC Act and
██████ violations of the COVID-19 Act.

---

[2] Although the United States moves for judgment as to Defendants' liability for civil
penalties, it is not asking the Court to set the civil penalty amount at this time. The Court—not the
jury—sets the appropriate civil penalty and injunctive relief. *See* 15 U.S.C. §§ 45(m), 53(b); *Tull*
*v. United States*, 481 U.S. 412, 426-27 (1987). Because Nepute refuses to produce financial
information relating to his ability to pay—the subject of the United States' pending motion to
compel, *see* ECF No. 59-60—the government has been unable to apply the statutory civil penalties
factors, *see* 15 U.S.C. § 45(m)(1)(C). Therefore, the United States requests a hearing to determine
the appropriate civil penalty for these violations.

Dated: September 2, 2022

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

SAYLER FLEMING
United States Attorney
Eastern District of Missouri

SUZANNE J. MOORE  MO#45321
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Tel: (314)539-2200
Fax: (314)539-2196
Email: suzanne.moore@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ARUN G. RAO
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

LISA K. HSIAO
Assistant Director
Consumer Protection Branch

_/s/ Ben Cornfeld_
BRANDON ROBERS 1112150055(MD)
BEN CORNFELD 1048311(DC)
ZACHARY COWAN 53432(NC)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-598-7276 (Cornfeld)
Tel: 202-305-2023 (Robers)
Tel: 202-598-7566 (Cowan)
Fax: 202-514-8742
Benjamin.A.Cornfeld2@usdoj.gov
Brandon.Robers@usdoj.gov
Zachary.L.Cowan@usdoj.gov

Of Counsel:

KRISTIN M. WILLIAMS
MARY L. JOHNSON
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mailstop CC-10528
Washington, D.C. 20850
Tel: 202-326-2619 (K. Williams)
Tel: 202-326-3115 (Johnson)
Fax: 202-326-3259
Kwilliams2@ftc.gov
Mjohnson1@ftc.gov