UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ERIC ANTHONY NEPUTE,
individually, and as
Owner of Quickwork LLC; and

QUICKWORK LLC,
a limited liability company,
also d/b/a WELLNESS WARRIOR,

Defendants.

Case No.: 4:21-cv-00437-RLW

**DEFENDANT DR. ERIC NEPUTE'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CIVIL PENALTIES**

## INTRODUCTION

Relying on rank speculation and innuendo and otherwise misstating the record, Plaintiff seeks to unfairly impose civil penalties with a maximum fine that exceeds the GDP of all but 25 nations. Casting aside the improper and legally insufficient innuendo and speculation, the undisputed evidence shows that Defendant Dr. Eric Nepute (Dr. Nepute) had no knowledge, actual or implied, of the COVID-19 Act or that his actions somehow violated the act.[1] Knowledge is key as monetary fines cannot be levied without it. Based on the record, the imposition of a monetary penalty is legally improper and summary judgment resulting in the dismissal of the civil penalties is warranted.

## FACTUAL BACKGROUND

Plaintiff's misstatements, generalizations, and legally insufficient speculation and innuendo must be corrected. Dr. Nepute is the owner of Nepute Wellness Center, a multidiscipline center that employs doctors, nurses, and chiropractors in a holistic approach to treatment. (Defendant's Response to Plaintiff's Statement of Additional Facts ("DRAF"), ¶ 32). Its offerings include chiropractic care, pediatric care, vitamin infusion therapy, spinal decompression therapy, regenerative programs, and weight loss programs. (DRAF, ¶ 32, Decl. of Nepute, ¶ 2). Starting long prior to the COVID-19 pandemic, now endemic, Dr. Nepute regularly blogs and speaks (be it at church, radio, and/or a speaking engagement) on a variety of health topics, including nutrition, and provides videos to his patients vis-à-vis Nepute Wellness Center's social media page. (DRAF, ¶ 32, Decl. of Nepute, ¶ 3). In addition to these services, Nepute Wellness Center also offers vitamins and other supplements to its patients. (DRAF, ¶ 33, Decl. of Nepute, ¶¶ 4-7).

---

[1] Indeed, all of the Defendants maintain that their actions did not violate the COVID-19 Act.

Prior to the COVID-19 pandemic, there is no genuine dispute that in late 2019 Dr. Nepute met with Ryan Jaycox and Pastor Joseph Woods regarding the creation of Quickwork LLC with the overriding goal to make more people less sick. (Doc. #: 83, ¶¶ 1-4). Part of this involved the marketing and sale of vitamins and other supplements. (Doc. #: 83, ¶ 8). Prior to this time, these products were merely an ancillary (but in-demand) offering to Dr. Nepute's patients at his Nepute Wellness Center locations. (DRAF, ¶ 33, Decl. of Nepute, ¶¶ 4-7). Dr. Nepute's vitamin offerings were not the focus of his Nepute Wellness Center and his services. (Id.). It was only through the creation of Quickwork and the utilization of the marketing efforts of Jaycox Brands and Pastor Wood did the sales and marketing of the vitamins and other supplements come into focus. (DRAF, ¶ 41, Decl. of Nepute, ¶ 8).

On May 21, 2020, Plaintiff sent a warning letter to Dr. Nepute related to "unsubstantiated claims for Coronavirus treatment or prevention." (DRAF, ¶ 62). In this letter, Plaintiff provided eleven statements that it felt was misleading – all of which related to vitamin C. Plaintiff further stated "[i]t is unlawful under the FTC Act…to advertise that a product or service can prevent, treat, or cure human disease unless you possess competent and reliable scientific evidence, including, when appropriate, well-controlled human clinical studies." (DRAF, ¶ 63, Decl. of Nepute, ¶ 9). The letter further outlined that Dr. Nepute had 48 hours to send a message to Richard Cleland at rcleland@ftc.gov describing the specific actions he has taken to address Plaintiff's concerns and further stated that Dr. Nepute was welcomed to contact the FTC if he had any questions regarding compliance with the FTC Act. (DRAF, ¶ 64, Decl. of Nepute, ¶ 10). No other clarification was provided by the FTC in the letter regarding compliance with the FTC Act. (DRAF, ¶ 64, Decl. of Nepute, ¶¶ 11-12).

Dr. Nepute received this correspondence on May 28, 2020, and thereafter emailed Mr. Cleland as requested. (DRAF, ¶ 65). In his email, Dr. Nepute noted that his office would meet on June 1, 2020 to discuss Plaintiff's concerns and correct any alleged violations. (DRAF, ¶ 65). Dr. Nepute also requested further clarification from Plaintiff regarding the alleged violations. (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 14-16). To that end, he left a voicemail on Mr. Cleland's answering machine, provided Mr. Cleland his personal number, and requested a phone meeting so that he could "get further clarity on the concerns your office has in [r]egards to any violations we potentially caused." (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 14-16).

Dr. Nepute eventually spoke to Mr. Cleland. Mr. Cleland failed to provide any specifics regarding Dr. Nepute's alleged misstatements. (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 17-19). Instead, he told Dr. Nepute to avoid making statements without "backup". (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 17-19). Neither Plaintiff nor Mr. Cleland identified what material they believed sufficed as "backup" and/or competent and reliable scientific evidence. (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 17-19). Regardless, after receiving the letter and speaking to Mr. Cleland the allegedly offending material related to vitamin C was removed.[2] (DRAF, ¶ 67, Decl. of Nepute, ¶ 20).

Believing that any issues were now rectified, Dr. Nepute made various statements regarding the benefits of zinc and Vitamin D, all of which were supported by "backup" and competent and reliable scientific evidence. (DRAF, ¶ 71; Decl. of Nepute, ¶¶ 21-22; see also, PX 72 [ECF No. 97-11] at 22:53, 26:38, PX 89 [ECF No. 97-28] at 33:50, 35:42, PX 96 [ECF No. 97-35] at 1:08:30, PX 117 [ECF No. 97-56] at 49:50, 1:13:45, 1:22:28, 1:33:00, 1:41:51). Dr. Nepute routinely cited to the medical journal and/or study in his videos that provided the basis of his

[2] Notably, Dr. Nepute has not and does not sell vitamin C supplements. (DRAF, ¶ 67, Decl. of Nepute, ¶ 20).

statements. (Id.). "Backup" for his statements continue to this day as a report published on November 12, 2022, titled "Association between vitamin D supplementation and COVID-19 infection and mortality" reveals that vitamin D3 and vitamin D2 supplementation reduces the risk of COVID-19 infection by 33% and 25%. Gibbons, J.B., Norton, E.C., McCullough, J.S. et al., *Association between vitamin D supplementation and COVID-19 infection and mortality.* Sci Rep 12, 19397 (2022). https://doi.org/10.1038/s41598-022-24053-4 (last visited November 21, 2022). The study further found that 116,000 Americans could have been saved with supplementation of vitamin D. Dr. Fauci has also stated that vitamin D supplementation may be warranted. (Doc. #: 83, ¶¶ 10-11[3]). Dr. Nepute also commented on the public health response, including vaccines, through various forums.

After almost a year of silence from Plaintiff, on or about March 30, 2021, Plaintiff sent an email to Emily Park, Dr. Nepute's healthcare attorney, enclosing a copy of the COVID-19 Act, which was enacted on December 27, 2020. (Doc. #: 83, ¶ 12). The letter requested that a copy of the act be provided to Dr. Nepute. (Doc. #: 83, Ex. E). The letter is wholly silent as to all other matters, including any allegations that Dr. Nepute violated the COVID-19 Act. (Id.). The letter also misstates the purpose of the COVID-19 Act by making the blanket statement that it "provides that marketers who make deceptive claims about the treatment, cure, prevention, or mitigation of COVID-19 are subject to a civil penalty of up to $43,792 per violation." This blanket contention would be true subject to the caveat that the statement is made as part of an advertisement. Indeed,

[3] Plaintiff's objection to the introduction of Dr. Fauci's statement is meritless for several reasons. First, the statement is not offered for the truth of the matter asserted, but simply to demonstrate that the statement was made. As such, it is admissible. *U.S. v. Kirk*, 844 F.2d 660, 663 (9th Cir. 1988). Moreover, the statement is admissible because it is offered to demonstrate the effect on the hearer. *Id.* Certainly, Dr. Nepute can cite to Dr. Fauci's own statements to show how Dr. Fauci's recommendation affected Dr. Nepute's actions.

anything beyond that would violate the First Amendment.[4] It was only then did Dr. Nepute learn of the consumer-related COVID-19 Act. (Doc. #: 83, ¶ ¶ 18-19).

It was not until April 15, 2021, through the filing of the instant first-of-a-kind complaint, did Plaintiff outline the manner in which it believes Dr. Nepute violated the COVID-19 Act. (DRAF, ¶ 69, Decl. of Nepute, ¶¶ 23-24). Prior to that time there were no allegations or accusations that Dr. Nepute had violated the COVID-19 Act. (Id.).

Nonetheless, relying on rank speculation and innuendo Plaintiff *argues* that Dr. Nepute had to know of the COVID-19 Act on December 27, 2020, given his testimony that he keeps abreast of the medical science and knowledge of a legislative bill introduced by Representative Grothman related to vitamin D and the significant role it plays in the fight against COVID-19. *See e.g.,* https://grothman.house.gov/news/documentsingle.aspx?DocumentID=2000 (last visited November 17, 2022). Of course, Plaintiff failed to provide the context of how Dr. Nepute learned of this. As seen in the very video relied on and cited by Plaintiff, someone sent Dr. Nepute a link to a news article about this bill. (PX 31, 4:5-8). Being sent an article regarding a bill that trumpets the medical benefits of vitamin-D and then posting a video blog on it is vastly distinct from keeping abreast of a consumer protection law. The logical leaps Plaintiff makes are essentially illogical.

Regardless, the parties agreed to the entry of a consent order, which was entered on May 5, 2021. (Doc. #: 83, ¶ 23). There is no genuine dispute that the alleged offending material was thereafter removed. (Doc. #: 83, ¶¶ 24-25).

---

[4] *See e.g.*, *Scientific Mfg. Co. v. FTC*, 124 F.2d 640, 644 (3rd Cir. 1941) (stating, "In short, the Commission's intervention is limited to acts or practices in the affected trade. If the amendment were given a broader scope, the Act would relate to far more than trade practices and the Commission would become the absolute arbiter of the truth of all printed material moving in interstate commerce, even where scholars in the particular field of knowledge were in wide disagreement…Surely Congress did not intend to authorize the Federal Trade Commission to foreclose expression of honest opinion in the course of one's business of voicing opinion.").

Plaintiff now alleges that Dr. Nepute continued to violate the COVID-19 Act after notice of the COVID-19 Act and notice of the alleged offending conduct of it vis-à-vis the compliant and consent order. In particular, the only post-notice conduct raised by Plaintiff in its response brief are three episodes of Dr. Nepute's weekly radio show. (Doc. #: 106, ¶¶ 73-74).

The post-notice statements are important for what they are not…advertisements. While three radio broadcasts are identified by Plaintiff, Plaintiff only recites to a cobbled together ninety-one seconds (PX 72, ECF No. 97-11, at 22:53-23:15; 23:30-24:00[5], 26:38-27:17) of the two-hour February 4, 2022, radio program in its response. (Doc. #: 106, ¶ 74). These few seconds do not magically turn a two-hour radio program into an advertisement. The first twenty minutes of the radio program focused on the Missouri's appointment of the Director of the Missouri Department of Health and Senior Services and local school boards. (PX 72, ECF NO. 97-11). In his next segment, Dr. Nepute lambasted the government's suppression of information and cited several studies related to vitamin D and COVID-19. (Id.). It is in this segment where Plaintiff cobbles together the ninety-one seconds of "offending" speech. He also referred listeners to third-party websites to learn more information about Vitamin D in this segment. (Id.). The remainder of his program focused on the lockdown, including a John Hopkins study which found that the lockdown was ineffective, the Department of Defense datamining of servicemen's medical records, the effectiveness of masks, an interview of Dr. Jane Ruby, a Washington DC-based conservative pundit, the Pfizer lawsuit, an interview with Tristan Watson, a high school student who refused to wear a mask, and natural immunity. (Id.). Dr. Nepute's radio program is completely separate from

[5] Notably, Plaintiff's citations are cobbled together. For example, Paragraph 74 of Plaintiff's Statement of Additional Facts purports to transcribe portions of Dr. Nepute's February 4, 2022 program. The transcribed portion contained "…" which is notable for what was removed by the government, i.e., Dr. Nepute's statement that if you wish to take the vaccine, it is your right to do so.

the marketing efforts of Quickwork[6] as the program's content is controlled and distributed by a third-party for whom Dr. Nepute has no control over. (Doc. #: 83, ¶¶ 26-31; see also DRAF, ¶ 49, Decl. of Nepute, ¶¶ 25-29).

It is on this record that Plaintiff seeks to impose a historic monetary fine. While Plaintiff might disagree with Dr. Nepute's political and social commentary, Dr. Nepute has every right to engage in protected speech. The simple fact remains that the undisputed genuine evidence reveals that Dr. Nepute did not have any knowledge, be it actual or implied, of the COVID-19 Act or that his statements are somehow in violation of it until the filing of the lawsuit. Not once did Plaintiff explain or outline what was required of Dr. Nepute or how his vitamin D and zinc statements were allegedly in violation of it. Such a record does not support the imposition of a monetary fine as a matter of law.

## ARGUMENT

### I. Dr. Nepute did not have any knowledge that his conduct arguably violated the COVID-19 Act.

To recover civil penalties, the United States must prove Dr. Nepute acted "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). A person knowingly violates a FTC rule if, under the circumstances, a reasonable, prudent person would have known of the existence of the rule and that his or her acts or practices violated the rule. *See United States v. Nat'l Fin. Servs., Inc.* 98 F.3d 131, 139-40 (4th Cir. 1996). The United States Supreme Court has acknowledged that this section provides for a mistake-of-law defense to civil liability. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583-84 (2010). Here,

---

[6] For purpose of this motion, Dr. Nepute will not address the allegations related to Quickwork.

Dr. Nepute did not have any knowledge that his conduct arguably violated the COVID-19 Act making the imposition of monetary fines unsupportable as a matter of law.[7]

In the instant matter, the rule in question is the COVID-19 Consumer Protection Act, which was enacted on December 27, 2020, and then sent to Dr. Nepute on March 30, 2021. Even then, it was not until the filing of the complaint on April 15, 2021, did Plaintiff outline how it felt Defendants violated the act. Plaintiff now seeks to impugn both knowledge of the rule as well as knowledge that Dr. Nepute's actions violated the rule on Defendants. For this, Plaintiff relies on unsubstantiated speculation and innuendo that is legally insufficient as a matter of law.

First and foremost, Dr. Nepute testified that he had no knowledge of the COVID-19 Consumer Protection Act prior March 30, 2021, nor have any knowledge that he was somehow in violation of the act prior to the filing of this lawsuit. (Doc. #: 83, ¶¶ 18-19; DRAF, ¶ 69, Decl. of Nepute, ¶¶ 23-24). Indeed, while it is true that the FTC contacted Dr. Nepute a year prior regarding his statements concerning vitamin C, the FTC and/or its representatives explicitly told Dr. Nepute that future statements should be supported by backup. (DRAF, ¶ 65, Decl. of Nepute, ¶¶ 17-19). And that is precisely what he did. Each and every statement, including the "offending language" cited by Plaintiff,[8] made by Dr. Nepute regarding vitamin D and zinc is supported by medical literature, including literature found on the CDC website, and Dr. Fauci, himself, just as the

[7] Plaintiff wrongly states that Dr. Nepute "put his eggs in one basket" by failing to address whether knowledge of the COVID-19 Act is "fairly implied." Quite the opposite, Dr. Nepute addressed this very issue as recounted by Plaintiff in its response brief. (Doc. #: 105 at 8). Simply put, in order to impose a monetary fine a person must have actual or implied knowledge of both the federal law violated and that the alleged act is unfair or deceptive in violation of said federal law. *U.S. v. Corporations for Character, L.C.,* 116 F.Supp.3d 1258, 1275 (D. Utah 2015) (citing *Jerman*).

[8] In its Statement of Additional Facts Plaintiff provided an abridged portion of Dr. Nepute's February 4, 2022 radio show. In this clipped portion, Dr. Nepute identified his support for his social commentary - a "new study from Spain" and a September 2020 study published in the Journal of American Medical Association." (Doc. #. 106, ¶ 74).

Plaintiff suggested. (DRAF, ¶ 71; Decl. of Nepute, ¶¶ 21-22; see e.g., PX 72 [ECF No. 97-11] at 22:53, 26:38, PX 89 [ECF No. 97-28] at 33:50, 35:42, PX 96 [ECF No. 97-35] at 1:08:30, PX 117 [ECF No. 97-56] at 49:50, 1:13:45, 1:22:28, 1:33:00, 1:41:51).

But Plaintiff nonetheless seeks to impose harsh monetary penalties based on rank and improper speculation. For this, through the usage of innuendo and speculation Plaintiff *argues* that both knowledge of the COVID-19 Act and knowledge that Dr. Nepute knowingly violated it should be implied. (Doc. #: 105, pp. 9-12).

Relying on the unpublished opinion *FTC v. Bonnie & Co. Fashions*, No. 90-CV-4454, 1992 WL 314007, at * 7 (D. N.J. 1992), Plaintiff first argues that knowledge of the FTC rule can be fairly implied where the party had worked in the relevant industry his entire life. In the unpublished opinion, it was undisputed that the defendant possessed the requisite knowledge because she testified that it was her job that the company complied with all of the rules and regulations, that the party had specific knowledge of the FTC labeling rule in question, and that every product complied with the labeling act. *Id.* With this knowledge in hand, the court found that knowledge can be fairly implied from the objective circumstances.

Here, no such knowledge exists. While it is true that Dr. Nepute kept abreast of the science of vitamin D and zinc, Dr. Nepute has not spent his entire career in the vitamin supplantation business as the product were ancillary offering to his NWC patients. (DRAF, ¶ 33, Decl. of Nepute, ¶¶ 4-7). Instead, he has been in the wellness and chiropractic care business having only begun turning his focus, through the creation of Quickwork and the efforts of Wood and Jaycox, on the sales and marketing of vitamins. (DRAF, ¶¶ 32 and 41, Decl. of Nepute, ¶¶ 1-3, 8). Dr. Nepute's knowledge of the science and medical response to COVID-19 cannot be equated to knowledge of a consumer protection law. Plaintiff has presented no evidence that Dr. Nepute had knowledge of

the COVID-19 Act based on his knowledge of the science of vitamin D and zinc. Thus, implication vis-à-vis Dr. Nepute's history of providing products via his clinic is unavailing.

Plaintiff next argues that the warning letter provided notice that Dr. Nepute was making improper vitamin D treatment and prevention claims; thus, he would have "monitored for a monumental consumer protection statute" that had yet to be enacted and that he was violating it. But as previously outlined, the warning letter concerned claims related to vitamin C, and not vitamin D and/or zinc. The alleged offending claims found in the letter were then removed. Dr. Nepute immediately contacted Plaintiff and sought a dialogue regarding the allegations and was advised to make statements with "backup". (DRAF, ¶¶ 64-65, Decl. of Nepute, ¶¶ 14-19). Dr. Nepute did just this – essentially each statement is supported by scientific evidence – evidence he cites whenever he makes a statement regarding vitamin D or zinc. (DRAF, ¶ 71; Decl. of Nepute, ¶¶ 21-22; see e.g., PX 72 [ECF No. 97-11] at 22:53, 26:38, PX 89 [ECF No. 97-28] at 33:50, 35:42, PX 96 [ECF No. 97-35] at 1:08:30, PX 117 [ECF No. 97-56] at 49:50, 1:13:45, 1:22:28, 1:33:00, 1:41:51).

While Plaintiff now disputes Dr. Nepute's backup, that very issue is at the heart of this case. It took almost a year for Plaintiff to contact Dr. Nepute regarding the COVID-19 Act after the warning letter. If Dr. Nepute was knowingly violating the act (either FTC or COVID-19 Act), Plaintiff would have assuredly contacted Dr. Nepute much sooner. But Plaintiff did not and Dr. Nepute was lulled into a sense of security of compliance with the FTC Act. (DRAF, ¶ 71, Decl. of Nepute, ¶ 22). Such facts certainly do not give rise to imputing knowledge of the COVID-19 Act and a knowing violation on Dr. Nepute.

Plaintiff nonetheless suggests in its response to the statement of facts[9] that since Dr. Nepute kept abreast of a House Bill related to vitamin D and COVID-19, there is a reasonable implication that he kept abreast regarding a consumer protection statute. Dr. Nepute testified to the contrary and to his ignorance of the COVID-19 Act. As indicated earlier, Dr. Nepute being advised on a House Bill concerning the medical benefits of vitamin D does not implicate knowledge of other statutes. Plaintiff seemingly rests on conclusory allegations and improbable inferences; effusive rhetoric, and arguments "woven from the gossamer strands of speculation and surmise" in its attempt to forestall summary judgment, all of which it cannot do. *Ortiz v. Jimenez-Sanchez*, 98 F.Supp.3d 357, 366 (D. Puerto Rico 2015). Plaintiff failed to present any objective facts demonstrating how knowledge of a bills reflecting medical benefits of vitamin D equates to knowledge of a consumer protection bill.

Finally, Plaintiff turns to its March 30, 2021 "second warning" letter to Dr. Nepute as evidence of knowledge of both the law and his violation of the same. This letter merely advised Dr. Nepute of the COVID-19 Act and did not outline the manner in which he was allegedly in violation of it. Indeed, Dr. Nepute had been following the advice of Plaintiff by having scientific support for his statements – whether the statements were made in relation to an advertisement or as part of his right to free speech. Knowledge of both the law and that his actions were in violation

[9] Plaintiff also improperly includes legal argument in its Response to Statement of Facts, including a four-page diatribe filled with rank speculation and innuendo in response to Statement of Fact No. 18. Placing legal argument in a statement of material fact does not comport with Local Rules and is improper. *Hunter v. Ramada Worldwide, Inc.*, Case No. 2:04CV0062ERW, 2005 WL 1490053, n. 1 (E.D.Mo. 2005). Such argument should be stricken and Plaintiff's failure to properly respond to a Statement Fact should be deemed an admission of the fact. Consequently, Statement of Facts Nos. 4, 6, 10-11, 13, 18, 19, 21, 22, 24, 25, 26, 27, 29, 30, and 31 should be deemed admitted as each is predicated on a legal argument.

of it is required – the sending of a letter that encloses a copy of the COVID-19 Act and nothing more does not suffice.

Consequently, Plaintiff has elicited no facts that show either actual or implied knowledge that Dr. Nepute violated the COVID-19 Act or that he knowingly did so. Monetary fines are therefore unwarranted as a matter of law.

## II. The Post-Notice activities cited by Plaintiff are not advertisements

In a final effort to make an example out of Dr. Nepute, Plaintiff argues that Dr. Nepute continued to violate the COVD-19 Act even after the lawsuit and consent order; thus, making an award of a monetary fine appropriate. For this, Plaintiff resorts to identifying ninety-one seconds of one of Dr. Nepute's two-hour radio program[10] as the offending commercial speech. Dr. Nepute has hosted a talk show radio program on conservative airwaves for years. (DRAF, ¶ 49; Decl. of Nepute, ¶¶ 25-29). The radio program, which is unaffiliated with Quickwork and whose content is controlled and disseminated by at third-party, is not an advertisement in any sense, but a forum where Dr. Nepute discusses a wide range of topics and interviews a wide array of individuals. (Id.).

Plaintiff is not the absolute arbiter of the truth and bears the burden of demonstrating that the speech it seeks to prohibit is an advertisement beyond First Amendment protections. *See e.g.*, *Scientific Mfg. Co. v. FTC*, 124 F.2d 640, 644 (3rd Cir. 1941); *Fed. Trade Comm'n v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2010 WL 11470103, at *9 (D. Kan. June 8, 2010). Plaintiff may not foreclose expression of honest opinion in the course of Dr. Nepute's forum of voicing opinion. *Scientific Mfg.*, 124 F.2d at 644. Dr. Nepute is free to exercise his right of free speech and has done so on his radio show. Plaintiff's cobbled together transcripts of ninety-one seconds from

[10] During all relevant times, Dr. Nepute's two-hour radio show airs twice weekly. (DRAF, ¶ 49, Decl. of Nepute, ¶¶ 25-29).

one of his radio programs does not transform his social and political commentary to an advertisement.

The dystopian society of Fahrenheit 451 must be avoided. By forbidding any and all speech regarding vitamin D and zinc would turn the FTC into one of Ray Bradbury's firemen. Simply put, Plaintiff is not the arbiter of truth and cannot censor Dr. Nepute's non-commercial opinion and recitations to scientific articles regarding COVID-19, especially when the medical community is still investigating the response to the novel coronavirus. Again, the most recent study shows that vitamin D3 and vitamin D2 supplementation reduces the risk of COVID-19 infection by 33% and 25%. Plaintiff's citation to Dr. Nepute's post-lawsuit conduct on one of his radio shows does not show a willful behavior of deceptive *marketing* conduct. Instead, it merely reveals the extent of government suppression of honest thoughts and opinions.

## CONCLUSION

Based on the undisputed genuine facts, Dr. Nepute did not act "with actual knowledge or knowledge fairly implied on the basis of objective circumstances" that he was aware of the COVID-19 Act or that his actions were prohibited by it. Instead, at each and every turn he attempted to comply with the strictures of the law to the extent known - be it from contacting the FTC regarding his statements after receiving the warning letter, supporting each statement with scientific backup as requested, or by removing the allegedly offending content when requested. The imposition of a monetary fines is therefore unwarranted as a matter of law.

Dated: November 23, 2022

Respectfully submitted,

MCARTHY LEONARD KAEMMERER

By: /s/ S. Jay Dobbs
S. Jay Dobbs #40859
Brian E. McGovern, #34677
825 Maryville Centre Dr., Suite 300
Town and Country, Missouri 63017
314-392-5200 (phone)
314-392-5221 (facsimile)
jdobbs@mlklaw.com
bmcgovern@mlklaw.com

*Attorneys for Dr. Eric Nepute*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of November, 2022, I filed the foregoing motion via the Court's CM/ECF system, effecting service upon all counsel of record.

/s/ *S. Jay Dobbs*