**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**ERIC ANTHONY NEPUTE**,
individually, and as
Owner of Quickwork LLC; and

**QUICKWORK LLC**,
a limited liability company,
also d/b/a WELLNESS WARRIOR,

Defendants.

Case No.: 4:21-cv-00437

**THE UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF LIABILITY FOR 12,859,355 VIOLATIONS OF THE FEDERAL TRADE COMMISSION ACT AND 10,175,234 VIOLATIONS OF THE COVID-19 CONSUMER PROTECTION ACT**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The United States' Summary Judgment Motion Is Procedurally Proper ........ 1

B. Nepute Disseminated Advertisements That Are Misleading And Unprotected By The First Amendment ........ 2

C. Nepute Failed To Create A Genuine Dispute Of Material Fact As To The Overall Net Impression Of His Advertising Claims ........ 5

D. Nepute's Vaccine and Zinc Claims Are Not Adequately Substantiated ........ 9

E. Nepute Is Individually Liable For Quickwork's Deceptive Emails ........ 11

F. Nepute Is Liable For Civil Penalties For Each Misleading Advertisement That He Disseminated Or Caused To Be Disseminated ........ 13

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

CASES

*Arnold v. Treadwell*,
642 F. Supp. 2d 723 (E.D. Mich. 2009)....................3

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)....................3, 4

*Butler v. Mallinckrodt LLC*,
No. 4:18-CV-1701, 2022 WL 4598531 (E.D. Mo. Sept. 30, 2022) ....................9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980)....................4

*Connick v. Myers,*
461 U.S. 138 (1983)....................4

*Dryer v. Nat'l Football League*,
55 F. Supp. 3d 1181 (D. Minn. 2014)....................3

*Facenda v. NFL Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008)....................4

*FTC v. Am. Screening, LLC,*
No. 4:20-CV-1021, 2022 WL 2752750 (E.D. Mo. July 14, 2022)....................12

*FTC v. Bay Area Bus. Council*
423 F.3d 627 (7th Cir. 2005) ....................11

*FTC v. Direct Mktg. Concepts, Inc.*
569 F. Supp. 2d 285 (D. Mass. 2008) ....................4

*FTC v. DIRECTV, Inc.*,
No. 15-CV-01129, 2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) ....................8

*FTC v. Fleetcor Techs., Inc.*,
No. 1:19-CV-5727, 2022 WL 3273286 (N.D. Ga. Aug. 9, 2022) ....................5, 8, 15

*FTC v. Gill*,
265 F.3d 944 (9th Cir. 2001) ....................5

*FTC v. Grant Connect, LLC*,
763 F.3d 1094 (9th Cir. 2014) ....................12

*FTC v. LeadClick Media, LLC*,
838 F.3d 158 (2d Cir. 2016)....12

*FTC v. On Point Cap. Partners LLC*,
17 F.4th 1066 (11th Cir. 2021)....7

*FTC v. QT*,
448 F. Supp. 2d 908 (N.D. Ill. 2006)....6

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009)....11

*FTC v. Sec. Rare Coin & Bullion Corp.*,
931 F.2d 1312 (8th Cir. 1991)....15

*In re Baycol Prod. Litig.*,
596 F.3d 884 (8th Cir. 2010)....9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
227 F. Supp. 3d 452 (D.S.C. 2017)....9

*In re Viagra Prod. Liab. Litig.*,
658 F. Supp. 2d 950 (D. Minn. 2009)....9

*Junk v. Terminix Int'l Co.*,
628 F.3d 439 (8th Cir. 2010)....9

*Mo. House Dev. Comm'n v. Brice*,
919 F.2d 1306 (8th Cir. 1990)....10

*Nat'l Comm'n On Egg Nutrition v. FTC*,
570 F.2d 157 (7th Cir. 1977)....3, 4

*Nicopure Labs, LLC v. FDA*,
944 F.3d 267 (D.C. Cir. 2019)....4

*POM Wonderful, LLC v. FTC*,
777 F.3d 478 (D.C. Cir. 2015)....4, 10

*Porous Media Corp. v. Pall Corp.*,
173 F.3d 1109 (8th Cir. 1999)....3, 4

*Removatron Int'l Corp. v. FTC*,
884 F.2d 1489 (1st Cir. 1989)....7, 8

*United States v. Dish Network*,
954 F.3d 970 (7th Cir. 2020) ....................13

*United States v. ITT Cont'l Baking Co.*,
420 U.S. 223 (1975) ....................14

*United States v. Reader's Digest Ass'n, Inc.*,
662 F.2d 955 (3d Cir. 1981) ....................14, 15

*Youngblood v. Corizon*,
No. 1:19-CV-28, 2020 WL 6392919 (E.D. Mo. Nov. 2, 2020) ....................1

STATUTES

COVID-19 Consumer Protection Act
Pub. L. No. 116-260, Title XIV, § 1401(b)(1) ....................13

Federal Trade Commission Act
15 U.S.C. § 45(m)(1)(A) ....................13
15 U.S.C. § 45(m)(1)(C) ....................14
15 U.S.C. § 52 ....................2, 13
15 U.S.C. § 52(b) ....................3, 13
15 U.S.C. § 55(c) ....................13

RULES

Federal Rules of Civil Procedure
Fed. R. Civ. P. 8(c) ....................3
Fed. R. Civ. P. 56(c)(1) ....................1

Local Rules for the Eastern District of Missouri
E.D. Mo. L.R. 4.01(E) ....................1

## I. INTRODUCTION

Defendant Eric Anthony Nepute's Opposition to the United States' Motion for Partial Summary Judgment fails to identify any material factual dispute. The United States' Motion showed that Nepute caused the dissemination of millions of ads that expressly claim or clearly imply, without adequate substantiation, that Zinc can prevent or treat COVID-19, and that Zinc or Vitamin D can prevent or treat COVID-19 more effectively than the available vaccines. Because the United States has met its initial burden, Nepute may no longer rely on "'metaphysical doubt as to the material facts'" but must identify specific evidence to show "that a reasonable jury could return a verdict" in his favor. *Youngblood v. Corizon*, No. 1:19-CV-28, 2020 WL 6392919, at *3 (E.D. Mo. Nov. 2, 2020). Nepute fails to do so. Therefore, the Court should grant the United States' Motion for Partial Summary Judgment, ECF No. 94.

## II. ARGUMENT

### A. The United States' Summary Judgment Motion Is Procedurally Proper

Nepute argues that the United States' motion is both too specific and too general. He first contends that the United States "selectively excerpts" and "cherry-pick[s] a few lines" from his publications to illustrate his unlawful conduct. Then, he asserts that the United States improperly applied a "cite-the-whole record approach" and failed to identify "particular parts of materials in the record" to support its positions. *See* Defendant Nepute's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. Opp."), ECF No. 112, at 7-8. Both arguments are incorrect.

To prove a fact "cannot be . . . genuinely disputed," the movant "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *accord* E.D. Mo. L.R. 4.01(E) (requiring "appropriate supporting citation(s)" in the movant's Statement of Uncontroverted Material Facts).. Thus, the United States' Statement of Facts cites the particular publications, pages, and timestamps where Nepute expressly claimed and clearly implied that

Wellness Warrior Vitamin D and Zinc treat and prevent COVID-19 and do so more effectively than the vaccines. *See* Statement of Uncontroverted Material Facts In Support of the United States' Motion for Partial Summary Judgment of Liability ("Pl. SUF"), ECF No. 96-1. The United States' Memorandum of Law also explained how each identified claim was unsubstantiated, misleading, and violative of the FTC Act and COVID-19 Act. *See* Memorandum in Support of the United States' Motion for Partial Summary Judgment of Liability ("Pl. Mem."), ECF No. 96. The United States' Motion neither "cherry-picked' nor "cited the whole record,' but rather complies with the Federal Rules of Civil Procedure and the Local Rules.

Nepute's true complaint here is that the United States' Motion identified too many unique violations of the FTC Act and the COVID-19 Act. *See id.* at 10 (complaining it is a "herculean task" to review "each of the 64 videos, emails, and Radio Show broadcasts" and this "provides ample basis" to deny the United States' Motion). The reason there are so many violations is that Nepute engaged in so much deceptive advertising. Proving too many violations is not a basis for denying summary judgment, and Nepute has cited nothing to the contrary. The Court should reject Nepute's procedural objection.

### B. Nepute Disseminated Advertisements That Are Misleading And Unprotected By The First Amendment

Nepute also contends that his publications are not "advertisements" subject to the FTC Act, but his conduct falls solidly within the conduct prohibited by the FTC "dissemination of false advertisements" statute. *See* 15 U.S.C. § 52 (prohibiting a person from disseminating or causing to be disseminated any false advertisement "[b]y any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics"). Nepute admits he sells Wellness Warrior Vitamin D and Zinc. *See* Nepute's Response to Plaintiff's Statement of Uncontroverted Material Facts

("NRS"), ECF No. 113, ¶ 8. He admits he published numerous videos promoting those products. *Id.* ¶¶ 12-13, 15-21. He admits those videos direct viewers to Quickwork websites where they can buy those products. *Id.* ¶¶ 14, 17, 39. And he makes similar admissions regarding his radio show and the Wellness Warrior emails. *See id.* ¶¶ 24, 29, 32, 36-37. Any reasonable jury would conclude that Nepute's publications are "likely to induce, directly or indirectly, the purchase" of Wellness Warrior supplements. 15 U.S.C. § 52(b). Nepute's publications are undisputedly advertisements under the FTC Act.

Nepute contends that treating his publications as "advertisements" will raise "serious First Amendment questions" because he is engaged in "protected speech," not "strictly commercial speech." Def Opp. at 11-12. The Court should not consider this argument, as Nepute did not raise this defense in his Answer,[1] but regardless, Nepute's profession of acting in the "public interest" "does not alter the commercial character of the publication[s]." *Nat'l Comm'n On Egg Nutrition v. FTC*, 570 F.2d 157, 163 (7th Cir. 1977); *see Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983) ("Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues."); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1121 (8th Cir. 1999) (explaining "'commercial speech' need not originate *solely* from economic motives" and that a defendant's speech was commercial in nature despite his purported "nobler concerns" (emphasis in original)).

Nepute's claims are misleading commercial speech, which is not protected by the First Amendment. "The ultimate question of whether speech is commercial is a question of law." *Dryer*

[1] Nepute did not assert a First Amendment defense in his Answer, *see generally* Nepute Answer, ECF No. 32, and is precluded from raising this factually undeveloped defense at such a late stage. *See* Fed. R. Civ. P. 8(c); *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 729 (E.D. Mich. 2009) (holding that the First Amendment was an affirmative defense that should have been plead as such in an Answer so that facts could be developed on what level of protection applied).

*v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1189 (D. Minn. 2014) (citing *Connick v. Myers,* 461 U.S. 138, 148 n. 7 (1983)); *see Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008). When deciding whether speech is commercial, courts generally consider: "(i) whether the communication is an advertisement, (ii) whether it refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." *Porous Media*, 173 F.3d at 1120 (citing *Bolger,* 463 U.S. at 66–67).

Here, the undisputed facts establish that Nepute's publications are commercial speech. Nepute's publications are ads because they assert "claims [about] the advertiser's product asserted for the purpose of persuading members of the [viewing] public to buy the product." *Nat'l Comm'n On Egg Nutrition*, 570 F.2d at 163. They also "propose a commercial transaction" with respect to certain products. *Porous Media*, 173 F.3d at 1120; *see id.* at n. 8. For example, Nepute's publications direct the public to Quickwork websites that sell Wellness Warrior Vitamin D and Zinc. *See* NRS ¶¶ 14, 17, 24, 37, 39. Lastly, Nepute clearly has economic motivations for his speech, as he owns a company that receives distributions from Quickwork profits. *Id.* ¶¶ 40-43

"For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 499 (D.C. Cir. 2015) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566 (1980)). As set forth in the United States' Motion, Nepute's COVID-19 treatment and prevention claims are misleading because they are unsubstantiated and are likely to mislead at least a significant minority of reasonable consumers. *See* Pl. Mem. at 8-12; *infra* Parts II.C, D. The Court may find as a matter of law that the First Amendment does not protect such claims. *See Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 287 (D.C. Cir. 2019); *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 217 (D. Mass. 2009), *aff'd,* 624 F.3d 1 (1st Cir. 2010). The Constitution does not

give Nepute the right to make money by deceiving consumers.

### C. Nepute Failed To Create A Genuine Dispute Of Material Fact As To The Overall Net Impression Of His Advertising Claims

Nepute's effort to manufacture a factual dispute about the net impression of his advertising claims must also fail. The United States' Motion identified numerous instances where Nepute expressly claimed or clearly implied that (1) Vitamin D and Zinc are more effective at treating or preventing COVID-19 than the available vaccines; and (2) Zinc is effective at preventing and treating COVID-19. Nepute generally does not dispute that the United States "accurately excerpted" those claims. *See, e.g.,* NRS ¶ 66.

Still, Nepute asserts that the United States' Motion should be denied because, "when viewed in their entirety, [the publications] convey a substantially more nuanced picture." Def. Opp. 17-18. Talismanically invoking "nuance" is not enough to resist summary judgment. Instead, Nepute must "counter" the United States' "substantial showing that he made and created" a misleading "overall 'net impression.'" *FTC v. Gill*, 265 F.3d 944, 956 (9th Cir. 2001); *see FTC v. Fleetcor Techs., Inc.*, No. 1:19-CV-5727, 2022 WL 3273286, at *9 (N.D. Ga. Aug. 9, 2022).

Nepute makes at least five different attempts to counter the United States' factual showings, but all those efforts backfire. First, Nepute argues that "many of the excerpts contain no express comparisons between the efficacy of COVID-19 vaccines and zinc or vitamin D." Def. Opp. 16; *see generally* NRS (repeatedly arguing that statements do not convey deceptive net impressions). But express comparisons are not required; it is enough for a claim to be clearly implied. *See, e.g., Fleetcor Techs.*, 2022 WL 3273286, at *6. The advertisements that Nepute points to as lacking express misrepresentations are textbook examples of clearly implied claims.

As an example, Nepute's Opposition brief, Def. Opp. at 16, cites an ad that states: "*[h]as our government covered up the best treatment options just to help BIG PHARMA get a vax?*" and

then states that, in his video, Nepute will "expose the corruption." SUF ¶ 204. The ad then states: You need Vitamin D3 and Zinc – Click Here." NRS ¶ 208. Together, these statements indicate that the vaccine is not among the "best treatment options" and that viewers need Zinc supplements. The obvious implication is that Zinc is a better treatment option for COVID-19 than the vaccine.

As another example, fourteen of the deceptive emails contain a consumer testimonial stating that: "I've been taking your zinc and D3 for weeks and tested positive for COVID-19 a few days ago. I had a cough for 2 days and slept a lot . . . but that was it!" PX 58; *see* PXs 59, 60; 62, 64, 69, 146, 148, 150, 152, 154, 155, 157, 158. Nepute argues that this testimonial does not convey the net impression that Zinc can treat or prevent COVID-19 because it "makes it abundantly clear that vitamin D and zinc do not prevent COVID-19 as the person represents that they were taking vitamin D and zinc 'for weeks' prior to becoming infected." NRS ¶ 263; *see also id.* ¶¶ 273-274, 283-284, 293-294, 303-304, 331, 332, 610, 619, 629, 637, 646, 655, 664, 673. But this testimonial plainly implies that, by taking Wellness Warrior Zinc, the consumer will have better COVID-19 therapeutic outcomes (a brief cough and a need to sleep)—*i.e.,* that Zinc can treat COVID-19. *See FTC v. QT*, 448 F. Supp. 2d 908, 924 (N.D. Ill. 2006) (holding that certain defendants created a "strong net impression" that a product "reduces pain" "through the use of consumer testimonials"), *amended on other grounds,* 472 F. Supp. 2d 990 (N.D. Ill. 2007), *aff'd,* 512 F.3d 858 (7th Cir. 2008), and *aff'd,* 512 F.3d 858 (7th Cir. 2008).

Second, Nepute repeatedly contends that his statements about Zinc do not convey the net impression that Zinc can treat or prevent COVID-19 because Nepute "references the biological mechanism that zinc inhibits viral replication" or "proliferation" without specifically referring to COVID-19. *See* NRS ¶¶ 68, 78, 90, 390, 438, 498, 510, 522, 532, 542, 553, 561, 570, 692. There can be no genuine dispute that comments that Zinc can inhibit viral replication—made along with

publications that also address COVID-19—convey the net impression that Zinc can inhibit viral replication by the COVID-19 virus—and that this would convey health benefits.

Third, for some vaccine comparison claims, Nepute argues that otherwise deceptive ads do not convey an unlawful net impression because, during the ad, he "told listeners to get the COVID-19 vaccine if they desired" and that "vitamin supplementation [is] an option irrespective of vaccination status." Def. Op. at 16-17. But these statements do not sanitize Nepute's claim that Vitamin D and Zinc are more effective than the vaccines. Telling listeners that they can get a vaccine if they want (but should take Wellness Warrior supplements regardless) does not change the fact that, for example, Nepute also claimed that "[t]here hasn't been one damn thing else that's shown the benefits of – of – of preventing COVID-19 except for vitamin D3" and "the vaccine doesn't stop the prevention of the diseases." NRS ¶¶ 90-91.

Fourth, Nepute defends some of his Zinc claims with the observation that some publications "contain disclaimers that zinc does not treat or cure COVID-19." Def. Opp. at 17. But "[d]isclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression. Anything less is only likely to cause confusion by creating contradictory double meanings." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989); *see FTC v. On Point Cap. Partners LLC*, 17 F.4th 1066, 1080 (11th Cir. 2021). Such a contradictory double meaning is aptly illustrated by the only publication disclaimer cited in Nepute's Opposition brief, *see* Def. Opp. at 17: "Now does [Vitamin D and Zinc] mean you can't get 'it' no, *but it certainly improves your odds as a host according to almost EVERY study that's come out! Wouldn't it make sense to do what's actually been studied to help?*" PX 45, ECF No. 96-44, at 2-3 (emphasis added). Nepute's purported disclaimer in fact is juxtaposed against an

express (or at least clearly implied) claim that Zinc can help treat or prevent COVID-19. It is certainly not sufficiently prominent and unambiguous to leave an accurate impression.[2]

Finally, Nepute's relies on *FTC v. DIRECTV, Inc.* to contend that the United States inappropriately "generalized" the net impression of his claims across similar advertisements. *See* Def. Opp. at 18 (citing *FTC v. DIRECTV, Inc.*, No. 15-CV-01129, 2018 WL 3911196 (N.D. Cal. Aug. 16, 2018)). But Nepute's reliance is misplaced. There, the plaintiff sought to hold the defendant liable for misleading ads through expert testimony regarding a few ads deemed "sufficiently representative" by its expert. *DIRECTV*, 2018 WL 3911196, at *4. The Court found the extrinsic evidence was insufficient to "generalize[]" an impression across "tens of thousands" of ads, "the vast majority of which were never admitted in evidence." *Id.* at *8. Here, by contrast, *all* of Nepute's deceptive ads are part of the record. Because those ads contain express and clearly implied claims, extrinsic evidence is not needed to discern their misleading impressions. *See, e.g., Fleetcor Techs.*, 2022 WL 3273286, at *6. Thus, the Court need not "generalize" their content.

In sum, Nepute failed to counter the misleading impressions within his publications that (1) Vitamin D and Zinc are more effective at treating or preventing COVID-19 than the available vaccines; and (2) Zinc is effective at preventing and treating COVID-19.

[2] Nepute also pointed to a small disclaimer at the bottom of a web page, DRX W, ECF No. 114-23, without connecting it to any of the publications at hand. The United States has not alleged in its Motion that this webpage violated the FTC Act or COVID-19 Act. Nepute also noted brief disclaimers in a few publications. *See* NRS ¶¶ 141, 151, 498. But these small disclaimers are insufficient to correct misleading claims, especially where they are inconsistent with more prominent claims. *See Fleetcor Techs.*, 2022 WL 3273286, at *10. Regardless, even if the Court found these disclaimers created a material dispute for those few publications, he failed to carry his burden of identifying such disclaimers in every "particular ad." *Removatron*, 884 F.2d at 1497.

### D. Nepute's Vaccine and Zinc Claims Are Not Adequately Substantiated

Nepute also argues that there is a genuine dispute as to whether he can adequately substantiate his claims that Zinc can treat or prevent COVID-19, and that Zinc and Vitamin D can treat or prevent COVID-19 more effectively than the vaccines. *See* Opp. at 19-21. There is not.

As to the comparative vaccine claims, Nepute offers no admissible expert testimony that Zinc or Vitamin D can prevent or treat COVID-19 more effectively than the available vaccines. Courts routinely require a showing of "both general and specific causation by expert testimony" in cases "involving complicated questions of medical causation"—i.e., whether an exposure causes a particular health outcome. *In re Viagra Prod. Liab. Litig.*, 658 F. Supp. 2d 950, 968 (D. Minn. 2009); *see also Junk v. Terminix Int'l Co.*, 628 F.3d 439, 450 (8th Cir. 2010) (explaining "expert medical and toxicological testimony is unquestionably required" to show that exposure caused health outcome) (quotation omitted); *In re Baycol Prod. Litig.*, 596 F.3d 884, 889 (8th Cir. 2010) (requiring plaintiff to prove "medical causation through the use of a medical expert" in suit alleging that drug caused adverse health outcome). Indeed, "all fifty states typically require expert testimony to prove causation where the causal relationship is outside the common knowledge of lay jurors." *Butler v. Mallinckrodt LLC*, No. 4:18-CV-1701, 2022 WL 4598531, at *7 n. 9 (E.D. Mo. Sept. 30, 2022); *see generally In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 227 F. Supp. 3d 452, 469-77 (D.S.C. 2017) (conducting fifty state survey). This requirement flows from the commonsense observation that "a lay jury simply does not possess knowledge of the intricacies of such subject matter to reach an opinion regarding causation without assistance from an expert." *Butler,* 2022 WL 4598531, at *7.

Nepute acknowledges that this case raises "complex[] and novel[] . . scientific . . issues," including issues relating to the "level of substantiation required for certain claims regarding COVID-19." *See, e.g.,* ECF No. 62, at ¶ 7. Neither Drs. Holick nor Parks is offering expert

testimony on these issues. *See* NRS ¶¶ 54-56. Even if the Court were to deny the United States' *Daubert* motion disqualifying Nepute from serving as an expert in this case, *see* ECF Nos. 78-79, 102, Nepute's own expert report offered no opinion on whether Zinc and Vitamin D can treat or prevent COVID-19 more effectively than the available vaccines.[3] S*ee* PX 22, ECF No. 96-21.

To manufacture a factual dispute, Nepute seeks to introduce freestanding evidence suggesting that the vaccines are ineffective or unsafe, to invite the jury to draw the inference that Vitamin D and Zinc are more effective than the vaccines. *See* Opp. at 20-21; Nepute's Statement of Additional Uncontroverted Material Facts, ECF No. 114, at ¶¶ 49-63. But expert testimony addressing the issue of whether Vitamin D or Zinc treats COVID-19 more effectively than the vaccines is *required* to survive summary judgment. Because the United States has alleged that Nepute's claims are unsubstantiated, he must present competent and reliable scientific evidence, that would satisfy the relevant scientific community that his claims are true. *See POM Wonderful*, 777 F.3d at 490. Nepute provided no expert testimony to demonstrate that his "evidence" satisfies this standard.

The question of whether Zinc can effectively treat or prevent COVID-19 raises the same concerns and, again, requires expert testimony. Nepute relies on his own and Dr. Parks' opinions to support his claims. *See* Def. Opp. at 19; NRS ¶ 57. This proffered expert testimony is inadmissible: both experts are unqualified and neither reached their opinions by applying a reliable

[3] Indeed, Nepute's own testimony and pleadings show that he knows his statements about Zinc and Vitamin D with respect to COVID-19 are not true. Nepute testified that he did not "believe" that either Vitamin D or Zinc Supplementation "is more effective in the prevention of COVID-19 than the currently available vaccines." PX 3, ECF No. 96-5, at 175:14-176:11. Moreover, he *admitted in his Answer* that "he does not claim that Vitamin D and zinc are better options for the prevention or treatment of COVID-19 than currently available COVID-19 vaccines." ECF No. 32 at ¶ 51. This admission is "binding" and may "support summary judgment against" him. *Mo. House Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990).

methodology. *See* United States' Motion To Exclude Defendants' Experts, ECF Nos. 78-79, 102. Thus, Nepute has offered no admissible expert testimony to create a genuine dispute that Nepute's claims that Zinc can prevent and treat COVID-19 lack reasonable substantiation.

**E. Nepute Is Individually Liable For Quickwork's Deceptive Emails**

Nepute agrees that an individual is liable for corporate violations of the Act, so long as he (1) "either participated directly in the deceptive acts or practices *or* had the authority to control them" and (2) "either knew *or* should have known about the deceptive practices." *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 636 (7th Cir. 2005) (emphases added); *see* Def. Opp. at 22. Still, he argues that he should not be individually liable for the deceptive emails that Quickwork sent to Wellness Warrior subscribers because he "neither participated directly in the making of the emails [n]or had authority to control them." Def. Opp. at 24. Nepute is wrong on both counts.

Nepute had the ability to control the deceptive advertising in Quickwork's emails. He admits he is one of Quickwork's Managers and is authorized to "carry out any and all of the objects and purposes of the Company." NRS ¶ 5. He also admits that he alone is responsible for ensuring Quickwork's scientific product claims are accurate. *See id.* ¶ 38. Considering his plenary authority "to control the marketing activity and representations about his product[s]," any reasonable factfinder would conclude that Nepute had the ability to control the advertising claims within Quickwork's Wellness Warrior emails (even if he chose not to). *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009).

Nepute participated directly in the dissemination of the misleading emails. He admits to providing Quickwork's marketing team with videos that promote Wellness Warrior Vitamin D and Zinc. NRS ¶¶ 12-13, 19. He admits that Quickwork's team prepares its marketing emails by downloading Nepute's videos and using excerpts about Vitamin D and Zinc that "stood out." *Id.* ¶¶ 22-23, 29; *see also, e.g.,* DRX B, ECF No. 109-3, at 162:4-8 (Nepute stating "I put out videos,

I put content and educate. And they take the material and they put it into e-mails"). Furthermore, while Nepute's brief argues that he did not create the emails, Def. Opp. at 23, Quickwork's Chief Marketing Officer testified unequivocally that "99.9 percent of every e-mail was directly taken from [Nepute's] videos." *See* NRS ¶ 30 (citing PX 4, ECF No. 96-6, at 132:16-23); *see also id.* ¶ 29 (citing PX 4, ECF No. 96-6, at 130:22-131:1 (noting it "would be consistent" with Quickwork's marketing for "text in [an] email [to be] excerpts from [a video] transcript")). Tellingly, all of the emails are addressed as from "Dr. Eric Nepute." *See, e.g.,* PX 143, ECF No. 98-22 at 2. Any reasonable factfinder would conclude that Nepute participated in disseminating the deceptive emails. Nepute may not have personally transcribed and sent the marketing emails, but he was undisputedly responsible for helping create and monitor the advertising claims at issue. *See FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1103 (9th Cir. 2014) (holding a defendant liable under the FTC Act where he "participated in designing and approving" misleading content even though that content was ultimately sent while he was imprisoned).

Finally, Nepute argues that he cannot be held liable because "[t]he emails were not sent to [him] for approval prior to them being sent" and "he was not even aware when the emails were sent or to whom they were sent." Def. Opp. at 23. But Nepute need not have granular knowledge of each step of the publication. *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 169 (2d Cir. 2016) (explaining that a defendant can be liable even where they are "not solely responsible for a deceptive scheme" and reasoning that the "creation and distribution of most any good is subject to a host of sequential steps"). It is enough that Nepute knew or should have known about the deceptive practices. Considering the extent of his control, any reasonable factfinder would have to determine at the very least that Nepute should have known about the deceptive email ads, and that he is therefore individually liable for those email ads. *See FTC v. Am. Screening, LLC*, No. 4:20-

CV-1021, 2022 WL 2752750, at *9 (E.D. Mo. July 14, 2022)

**F. Nepute Is Liable For Civil Penalties For Each Misleading Advertisement That He Disseminated Or Caused To Be Disseminated**

Nepute makes two baseless arguments for why he cannot be liable for civil penalties. First, he alleges he lacked the requisite knowledge for civil penalties. *See* Def. Br. at 24-26. As the United States explained in its Memoranda in Support of its Motion for Summary Judgment, Pl. Mem. at 14-15, and in Opposition to Defendants' Motion for Summary Judgment, Pl. Opp. at 9-14, any reasonable factfinder would conclude that Nepute has had the requisite knowledge for civil penalties under the FTC Act since December 27, 2020, the date the COVID-19 Act became law.

Second, Nepute argues that the number of violations for civil penalties should be calculated based on how many deceptive claims he made—not the number of times he disseminated those claims. *See* Def. Opp. at 26-29. The text of the FTC Act forecloses this argument. It defines the "unfair or deceptive act or practice" as "[t]he *dissemination* or the *causing* to be disseminated" of a "false advertisement." 15 U.S.C. § 52(b) (emphases added).[4] Because the "unfair or deceptive act or practice"—i.e., the dissemination of an unfair advertisement—is "associated with . . . the treatment, cure, prevention, mitigation, or diagnosis of COVID–19," each dissemination is also a violation of the COVID-19 Act. *See* Pub. L. No. 116-260, Title XIV, § 1401(b)(1). The United States seeks to hold Nepute liable for civil penalties for "each violation" of the COVID-19 Act. 15 U.S.C. § 45(m)(1)(A); *see* Op. Denying Motion to Dismiss, ECF No. 47 at 7-8 (explaining that violations of the COVID-19 Act subject a defendant to civil penalties). Thus, every time a person disseminates (or causes to be disseminated) a deceptive COVID-19 prevention or treatment claim, that person is liable for civil penalties. *See United States v. Dish Network*, 954 F.3d 970, 976 (7th

[4] In his Opposition, Nepute did not contest whether the "false advertisements," as alleged, fall within Section 12 of the FTC Act. *See* Pl. Mem. at 7 (citing 15 U.S.C. §§ 52, 55(c)).

Cir. 2020) (looking to the text of an FTC Rule and concluding "each [unlawful] call" was a separate violation under Section 5(m)(1)(A) even though the calls resulted from a larger failure to "coordinate the do-not-call lists"); *see also United States v. Reader's Dig. Ass'n, Inc.*, 662 F.2d 955, 966 (3d Cir. 1981) (holding that "each letter included as part of a mass mailing constitutes a separate violation" under Section 5(*l*) of the FTC Act).

Nepute also contends it is "outrageous" for civil penalties to be calculated based on the number of times a claim is disseminated, complaining that such a calculation would be "orders of magnitude larger than the number of actual statements or advertisements at issue" and could lead to enormous civil penalties. Def. Opp. at 26. By way of background, the FTC Act gives the Court broad discretion to set civil penalties based on a host of factors, including the defendant's ability to pay and ability to continue doing business. *See* 15 U.S.C. § 45(m)(1)(C). It is not obligated to impose the statutory maximum even where the defendant committed an enormous number of infractions. Moreover, Nepute's proffered statutory interpretation would gut the use of civil penalties enforcement actions to deter wrongdoers. Under Nepute's reading, a defendant could disseminate one deceptive claim hundreds of thousands of times, pocket hundreds of thousands of dollars, then pay a relatively smaller civil penalty for the one claim. Such a "statutory penalty would be regarded by potential violators of FTC [Rules] as nothing more than an acceptable cost of violation, rather than as a deterrence to violation." *Reader's Dig. Ass'n, Inc.*, 662 F.2d at 966 (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 231 (1975)); *see id.* (holding "that each letter included as part of a mass mailing constitutes a separate violation" under Section 5(*l*) of the FTC Act and noting that a contrary ruling "would eviscerate any punitive or deterrent effective of FTC penalty proceedings").

Finally, Nepute complains that consumers might not have intentionally and fully reviewed

his various publications. But this is nothing more than a smokescreen. The FTC Act and COVID-19 Act focus on a defendant's deceptive conduct—here, Nepute's disseminating or causing the dissemination of misleading claims—not the behavior of third parties. *See Reader's Dig. Ass'n, Inc.*, 662 F.2d at 966 (focusing on whether any mailing "contain(ed) a proscribed representation"). Because it will be impossible to know in many cases whether or how many consumers fully viewed a misleading claim, liability cannot be based on consumer engagement alone. *See FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991) (explaining in the context of equitable relief that it is be "virtually impossible" to offer "proof of subjective reliance" for each consumer "and to require it would thwart and frustrate the public purposes of FTC action"); *Fleetcor Techs.*, 2022 WL 3273286, at *6 (explaining that the Government "is not required to prove that customers were actually deceived" and that it is sufficient to prove that a "representation had a 'tendency to deceive' customers"). Congress did not limit violations to those publications that were effective enough to have consumer engagement.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to grant its Motion and enter partial judgment of liability for 12,859,355 violations of the FTC Act and 10,175,234 violations of the COVID-19 Act. *See* ECF No. 94.

Dated: November 23, 2022

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

SAYLER FLEMING
United States Attorney
Eastern District of Missouri

SUZANNE J. MOORE MO#45321
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Tel: (314)539-2200
Fax: (314)539-2196
Email: suzanne.moore@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Acting Director
Consumer Protection Branch

LISA K. HSIAO
Assistant Director
Consumer Protection Branch

*/s/ Zachary L. Cowan*
BRANDON ROBERS 1112150055(MD)
BEN CORNFELD 1048311(DC)
ZACHARY COWAN 53432(NC)
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Washington, D.C. 20530
Tel: 202-598-7276 (Cornfeld)
Tel: 202-305-2023 (Robers)
Tel: 202-353-7728 (Cowan)
Fax: 202-514-8742
Benjamin.A.Cornfeld2@usdoj.gov
Brandon.Robers@usdoj.gov
Zachary.L.Cowan@usdoj.gov

Of Counsel:

KRISTIN M. WILLIAMS
MARY L. JOHNSON
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mailstop CC-10528
Washington, D.C. 20850
Tel: 202-326-2619 (Williams)
Tel: 202-326-3115 (Johnson)
Fax: 202-326-3259
Kwilliams2@ftc.gov
Mjohnson1@ftc.gov